Sandra L. Slaton, Bar No. 006454
**HORNE SLATON, PLLC**
6720 N. Scottsdale Rd., Suite 285
Scottsdale, Arizona 85253
Tel. 480-483-2178
Fax. 480-367-0691 fax
slaton@horneslaton.com
*Attorney for Plaintiff,*
*Mark Stuart*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

MARK STUART an Individual, dba as
Save Our Preserve, Inc., and SAVE OUR
PRESERVE INC., an Arizona
Corporation on behalf of its members,

Plaintiff,

V.

MARK STUART an Individual, dba as
Save Our Preserve, Inc., and SAVE OUR
PRESERVE INC., an Arizona
Corporation on behalf of its members,

Plaintiff,

V.

CITY OF SCOTTSDALE, a Municipal
Corporation and a political subdivision of
the State of Arizona, W.J. "JIM" LANE
and JANE DOE LANE husband and wife,
GUY PHILLIPS and JANE DOE
PHILLIPS husband and wife, KATHY
LITTLEFIELD and JOHN DOE
LITTLEFIELD husband and wife,
SUZANNE KLAPP and JOHN DOE
KLAPP husband and wife, LINDA
MILHAVEN and JOHN DOE

Case No.:

**VERIFIED COMPLAINT FOR
DAMAGES, DECLARATORY
AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

MILHAVEN husband and wife,
VIRGINIA KORTE and JOHN DOE
KORTE husband and wife, DAVID
SMITH and JANE DOE SMITH husband
and wife, JIM THOMPSON and JANE
DOE THOMPSON husband and wife,
ALAN RODBELL and JANE DOE
RODBELL husband and wife, BRUCE
WASHBURN and JANE DOE
WASHBURN husband and wife,
CAROLINE JAGGER and JOHN DOE
JAGGER husband and wife, LUIS
SANTAELLA and JANE DOE
SANTAELLA husband and wife, TOM
CLEARY and JANE DOE CLEARY
husband and wife, JASON GLENN and
JANE DOE GLENN husband and wife,
C. KAUFMANN and JANE DOE
KAUFMANN husband and wife, CHRIS
HALL and JANE DOE HALL husband
and wife, JASON STUMPF and JOHN
DOE SUMPF husband and wife, REED
PRYOR and JANE DOE PRYOR
husband and wife, JOHN and JANE
DOES I-X

           Defendants.

       For their Complaint against Defendants, Plaintiffs Mark Stuart ("Stuart") and

Save Our Preserve, Inc. ("SOP"), alleges the following.

       1.     This is an action seeking to redress the violation of Plaintiffs' rights to

freedom of speech, freedom of assembly, freedom of association, freedom to petition

and communicate with his elected representatives, and their due process and equal

protection of the laws under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

2.    This action also seeks redress for the violation of Plaintiffs' Arizona Constitutional and Statutory Rights.

3.    Plaintiffs assert this action against Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

4.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 and 65 of the Federal Rules of Civil Procedure.

5.    This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(4).

6.    This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(a).

7.    Venue is proper in the United State District Court for the District of Arizona under 28 U.S.C. § 1391(B).

## PARTIES

8.    Plaintiff, Mark Stuart ("Stuart"), is a citizen of the United States of America residing in Scottsdale, Maricopa County, Arizona.

9.    Plaintiff, Save Our Preserve, Inc., is an Arizona Corporation conducting its business in Scottsdale, Maricopa County, Arizona.

3

10.     Defendant, City of Scottsdale, is a municipal corporation and political subdivision of the State of Arizona.  Scottsdale is a public entity and it and its officers and division are subject to civil suit and may be held independently or vicariously liable for the wrongful conduct of its divisions, agents, officers, and employees.

11.     Defendant, W.J. "Jim" Lane ("Lane"), is the duly elected Mayor of the City of Scottsdale and at all times relevant to this complaint an agent of the City of Scottsdale. Mayor Lane is sued in his individual capacity and in his official capacity.

12.     Defendants Guy Philips, Kathy Littlefield, Suzanne Klapp, Linda Milhaven, Virginia Korte, and David Smith, are duly elected City Council Members of the City of Scottsdale and at all times relevant to this complaint agents of the City of Scottsdale.

13.      Defendant, Jim Thompson, is the Scottsdale City Manager and is named in his individual capacity and in his official capacity.

14.     Defendant, Alan Rodbell, is the Scottsdale Chief of Police and at all times relevant to this complaint an agent and employee of the City of Scottsdale. Chief Rodbell is named in his individual and official capacity.

15.     Defendant, Bruce Washburn, is the Scottsdale City Attorney and at all times relevant to this complaint an agent and employee of the City of Scottsdale. Washburn is named in his individual capacity and in his official capacity.

16.     Defendant, Caroline Jagger, is the Scottsdale City Clerk and at all times relevant to this complaint was an agent and employee of the City of Scottsdale.

4

17.    Defendant, Luis Santaella, is an Assistant Scottsdale City Attorney and upon information and belief, the police legal advisor.  At all times relevant to this complaint Santaella was an agent and employee of the City of Scottsdale and is named in his individual and official capacity.

18.    Defendant, Chris Hall, is a Commander for the Scottsdale City Police Department and at all times relevant to this complaint was an agent and employee of the City of Scottsdale.

19.    Defendant, Sergeant Jason Stumpf, is a Scottsdale City Police Officer and at all times relevant to this complaint an agent and employee of the City of Scottsdale.

20.    Defendant, C. Kaufmann, is a Scottsdale City Police Officer and at all times relevant to this complaint an agent and employee of the City of Scottsdale.

21.    Defendant, Tom Cleary, is a Scottsdale City Police Officer and at all times relevant to this complaint an agent and employee of the City of Scottsdale.

22.    Defendant, Jason Glenn, is a Scottsdale City Police Officer and at all times relevant to this complaint an agent and employee of the City of Scottsdale.

23.    Defendants Hall, Stumpf, Kaufmann, Cleary and Glenn are named in their individual capacities and in their official capacities.

24.    Defendant, Reed Pryor, is the Scottsdale Director of Parks and Recreation and at all times relevant to this Complaint an agent and employee of the City of Scottsdale.

25.     Defendants John and Jane Doe I-X are Scottsdale Police Officers whose names are not yet known but will be supplemented when learned.

26.     Upon information and belief, at all times Defendants were acting within the scope of their employment or agency.

## **FACTS**

27.     Defendants have singled out, harassed and even prosecuted Stuart because of the content of his protected speech, treated him differently than others similarly situated, and maliciously prosecuted and arrested him, but not others.

28.     Scottsdale and Defendants Lane, Washburn, Santaella, Cleary and Glenn conspired together to chill Stuart's speech culminating with his arrest for trespassing at a Scottsdale City Council meeting:

    a.  On January 24, 2017 Stuart gave his first ballot initiative update during open public comment at the Scottsdale City Council Meeting.

    b.  On January 30, 2017, Scottsdale City Attorney sent a letter to Stuart precluding him from speaking about the ballot initiative during open public comment at Scottsdale City Council Meetings, which are open to the public to attend pursuant to Arizona State Law.

    c.  Scottsdale City Attorney Washburn deemed those remarks prohibited.

    d.  This letter was also sent to Scottsdale Assistant City Attorney and Police Legal Advisor Defendant Santaella.

e.  Defendant Santaella then forwarded the letter to Scottsdale Police Officers Defendants Cleary and Glenn.

f.  Defendant Cleary received the letter on January 31, 2017 and Stuart's email reply stating that Defendant Washburn's letter was a violation of his First Amendment Rights.

g.  That same day Defendant Cleary notes in his seven (7) page police report that Stuart did not attend a City Council Work Study Session.

h.  On February 7, 2017 Defendant Cleary inquired if there were any more communications from Stuart.

i.  Defendant Cleary was given another email chain where Stuart states he will be updating the public on the Save Our Preserve Ballot Initiative and Defendant Washburn placing prior restraints on Stuart's speech and prohibiting him for using the call to the public to obtain signatures on the petition.

j.  Defendant Cleary sought out Stuart prior to the meeting to inform him that he was aware of all the emails between Stuart and Defendant Washburn, had reviewed Stuart's written presentation, and that Stuart would have to comply with the Defendant Lane's orders to leave the podium if so directed.

k.  Following Defendant Cleary's confrontation of Stuart, Cleary met with Defendant Glenn and informed Glenn that he anticipated that Stuart would go through with his remarks.

l.  Defendants Cleary and Glenn then planned that if Defendant Lane told Stuart to stop that they would wait until Lane summoned them to remove Stuart.

m.  Defendants Cleary and Glenn then decided to lie in wait and Defendant Lane while Stuart approached the podium.

n.  Defendant Lane interrupted Stuart before he could even speak.  Stuart and Lane engaged in a debate regarding Scottsdale's prior restraint on his speech.  Defendant Lane then determined that Stuart was disrupting the meeting and ordered the microphones to be turned off and Defendants Cleary and Glenn to remove Stuart.

o.  Cleary and Glenn, as planned, approached Stuart and ultimately placed Stuart under arrest for trespassing at an open public meeting of the Scottsdale City Council

p.  Defendants Cleary and Glenn escorted Stuart from the building.  Stuart requested permission to return home, but Defendant Cleary would not allow it and told him to sit on a bench.

q.  Defendant Cleary then arrested and handcuffed Stuart for not sitting on the bench, called for transport to the Scottsdale City Jail.

8

r.  Defendant Cleary then informed Defendant Sgt. Randall of the situation and Stuart was taken to jail.

s.  Defendants Cleary and Glenn returned to the auditorium and following the meeting met with Defendants Lane, Washburn, and Santaella to inform them that Stuart was arrested and taken to jail.

t.  After the City Council meeting ended, Defendant Cleary explained met with Lane, Washburn and Santaella and discussed the details that had transpired.  Defendant Cleary pointed out that he felt it best to take Stuart to jail and not give him an opportunity to disrupt the meeting.

29.   Scottsdale placed an unconstitutional prior restraint on the content of Stuart's speech in order to arrest him in an effort to chill further speech in opposition to building in the Preserve.

30.   On October 15, 2016, Stuart went to Mountain View Park to hand out flyers for a Flashlight Parade organized to raise awareness about Scottsdale's attempt to build in the McDowell Mountain Preserve ("Preserve").

a.  Stuart was harassed and badgered by City employees, and agents, and multiple police officers while peacefully engaging in his constitutional rights.  City employees and agents removed Stuart's signs and called the police to have Stuart removed from the park.

b.  Stuart was not arrested or cited on October 15, 2016.

31.    On October 22, 2016, Stuart again returned to Mountain View Park with new signs to inform the public about the Preserve issues and the upcoming Scottsdale Election.

    a.    Scottsdale employees and agents again badgered and harassed Stuart and demanded that Stuart move his signs to a "free speech zone" about 400 feet away across the park.

    b.    The "free speech zone" does not allow audio or visual contact with persons in more than 98% of the park.

    c.    Again Scottsdale employees called the police when Stuart did not move his signs.  Four officers, including Defendants Stumpf and Kaufmann, seized Stuart.

    d.    The Defendants detained Stuart for more than forty-five minutes and told him to remove his sign and property from the park.

    e.    Stuart was cited for violating a city ordinance, Scottsdale Ordinance 18-9(h).  Defendants also seized Stuart's signs.

    f.    Defendants removed Stuart from the park and issued a trespass warning preventing Stuart from entering the public park for a year.

32.    Upon information and belief, on October 23, Scottsdale police officers and/or employees seized Stuart's signs from public rights of way on Mountain View Road.

33.     On October 23, 2016, Stuart contacted the Scottsdale Police Department and was informed by Commander Hall that the trespass warning was not appealable and that he should go around the park for the next year or he would be arrested.

34.      On October 25, 2016, Stuart sent an email to City Attorney Washburn requesting the return of his signs.

35.     On October 27, 2016, Scottsdale withdrew the trespass warning following an email requesting that Scottsdale cease and desist the unconstitutional practice of violating Stuart's free speech and assembly rights.

36.     On October 28, 2016, Scottsdale returned Stuart's signs.

37.      Upon information and belief, during October and November, 2016, Scottsdale employees seized Stuart's signs from public rights of ways and warned Stuart that he would be fined for violating the Scottsdale's City Code if he continued to place his signs next to other political signs in these rights of way.

38.     Scottsdale voluntarily dismissed the sign ordinance violation of October 22, 2016 on November 15, 2016.

39.     Following the November Election, Stuart filed an application for an initiative petition for the Save Our Preserve Ballot Initiative seeking to prohibit any construction in the Preserve without explicit voter approval.

40.     Additionally, Stuart publicly requested that Scottsdale cease and desist any expenditures of public money to advocate for building in the Preserve, as it would violate Arizona statutory law.

41.    On January 25, Stuart was confronted and badgered by Erin Jones, a Scottsdale employee, and other Scottsdale employees while gathering signatures on the public property surrounding Arabian library.

  a.  Scottsdale employees informed Stuart that he could not place his signs on city property, and that he was required to stay in a fifteen (15) foot by ten (10) foot "free speech zone" at the public library.

  b.  This "free speech zone" does not permit audio or visual contact with more than 98% of the library grounds.

42.    On January 24, 2017, Stuart began presenting his bi-monthly ballot initiative update to City Council during open public comment.

43.    Upon information and belief, shortly after January 24, 2017, as described above, Defendants Washburn, Lane, Santealla, Cleary, Glenn, and possibly others, designed a scheme to suppress Stuart's free speech rights and discourage him from participating in future city council meetings and in free speech activities in Scottsdale.

44.    Following the January 24, 2017 City Council meeting, Stuart received a letter from Scottsdale City Attorney Defendant Washburn informing him that he would not be allowed to speak about the ballot initiative during open public comment.

45.    Stuart responded requesting that Defendant Washburn not attempt to place prior restraints on his speech, and that those restraints violated his federal and state constitutional rights.

46.     On February 04, 2017, Stuart was collecting signatures in a public right of way next to a public sidewalk on a public street.

    a.  Scottsdale police confronted Stuart, seized his signs and ordered him to stop collecting signatures or he would be cited for trespassing and arrested.

    b.  Stuart left this location because he feared being arrested.

47.     On February 7, 2017, Stuart sent a copy of his prepared remarks for City Council Meeting to Scottsdale City Clerk Jagger and copied City Attorney Washburn, Mayor Lane, and other members of the City Council.

    a.  City Attorney Washburn again responded and stated that Stuart was prohibited from discussing the ballot initiative.

48.     As described above, Defendants Washburn, Santaella, Lane, Cleary and Glenn had all been in correspondence with each other regarding Stuart's public comment.

49.     Stuart was called to speak during open public comment.  Stuart was then immediately interrupted by Defendant Mayor Lane who reiterated that Stuart was prohibited from giving his written presentation and the related remarks.

50.     When Stuart asserted his First Amendment and Arizona Constitutional rights, Mayor lane asked Stuart to speak about anything else or leave the podium.

51.    Stuart requested that he be allowed to give his entire public comment, Mayor Lane again explained that he could talk about anything besides the ballot initiative.

52.    Before Stuart even had the opportunity to give his public comment, Mayor Lane asked for the microphones to be turned off and order Defendants Cleary and Glenn to remove Stuart.

53.    Stuart was physically forced from the podium and escorted out of the building by Defendants Clearly and Glenn.

54.    Defendants Cleary and Glenn then falsely imprisoned Stuart by forcing him to remain at the building and forcing him to sit on the park bench when Stuart requested that he be allowed to go home.

55.    Defendant Cleary handcuffed Stuart by violently pulling up on his left arm behind his back and double locking the handcuffs around Stuart's wrist next to his elbows, behind his back.

56.    Stuart immediately informed the Defendants of the severe pain in his shoulder and requested that the handcuffs be moved to the front of his body. Defendant Cleary refused.  Stuart again asked to have the handcuffs moved to the front of his body a second time and Defendant Cleary complied.

57.    Defendants Cleary and Glenn caused Stuart to be transported to the Scottsdale City Jail where Stuart was falsely imprisoned for a number of hours.

58.     Defendant Cleary cited Stuart for trespassing and failure to obey.  Stuart is currently being prosecuted for those offenses in Scottsdale City Court (M-751-SC-2017003568).

59.     Stuart was taken from the jail to the emergency room via ambulance because of dangerously high blood pressure.

60.     Stuart has suffered injuries to his shoulder and neck, and psychological injuries, as a result of the excessive use of force and stress caused by his false imprisonment and unlawful arrest for attempting to engage in free speech and free assembly rights.

61.     Since February 7, 2017, Clerk Jagger refuses to give Stuart a Petition Card preventing him the ability to present written citizen petitions to the City Council.

62.     Since February 7, 2017, Mayor Lane and other members of the council engage in harassment, badgering and bullying of Stuart when he attempts to speak during open public comment.

63.     On May 26, 2017, Stuart attended Cactus Park, a public park located in Scottsdale in an attempt to gather signatures for his ballot initiative petition.

    a.  A large regional swim meet was underway that weekend with more than eight hundred (800) participants and a large number of Scottsdale voters.

    b.  Stuart brought two signs and attached them to a metal post in the park. City employees Katie Bitz and her supervisor Reed Pryor removed Stuart's signs and claimed that he could not post signs in that location.

c.  Stuart retrieved the signs and replaced them in their location.

d.  Defendant Pryor called the police, and three (3) police vehicles arrived at Cactus Park and the officers engaged in a discussion with City employees.

e.  The officers then approached Stuart and requested that he remove the signs.

f.  The officers' presence and harassment of Stuart prevented him from gathering signatures for his ballot initiative petition.

g.  The officers demanded that Stuart remove the sign from the post.  Stuart was then cited for unlawfully attaching a sign to a traffic control device.

h.  This charge is currently pending.

64.     On May 28, 2017, Stuart returned and followed the officers' instructions and placed the signs on large trees or bushes.

a.  Upon information and belief, Scottsdale employees removed all of Stuart's signs and placed them on his table while he was out gathering signatures.

65.      On April 08, 2017, Stuart was also harassed and badgered at the Scottsdale Culinary Festival by Scottsdale police officers and agents.

66.     In May 2017, Scottsdale has sent Stuart threatening letters, which claim that if he does not stop using the Scottsdale's image in his signs then he will be sued for trademark infringement.

16

67.     Scottsdale has actively sought to dissuade Plaintiffs from petitioning their elected officials.

68.     Scottsdale, as described above, has engaged in a pattern and practice of chilling Plaintiffs' constitutional rights.

69.     Scottsdale has engaged in this pattern and practice because of their opposition to Stuart's attempts to prevent building in the Preserve.

70.     Defendants' misconduct, as summarized above, was subjectively and objectively unreasonable and violated Plaintiffs' clearly established rights of freedom of speech, freedom of assembly, freedom of association, freedom to petition and communicate with his elected representatives and his rights to due process and equal protection of the laws under the First and Fourteenth Amendments to the Constitution of the United States.

71.     As a result of Defendant's misconduct, Plaintiffs' suffered various injuries including the loss of liberty and property, physical pain and suffering, humiliation, loss of enjoyment of life and emotional distress.

72.     Defendants' conduct was perpetrated with reckless indifference to Plaintiffs federally protected rights.

73.     Plaintiffs have sharply reduced their petition gathering in public places in Scottsdale because of the incidents of May 26 to May 28, 2017.

74.     This further misconduct by Scottsdale and its employees and agents have detracted from Plaintiffs receiving volunteer support to help gather signatures for the

17

ballot initiative petition. Volunteers express fear that they will be similarly harassed, arrested, and prosecuted.

75.    Pursuant to Federal Rule of Civil Procedure 38(d), Plaintiffs hereby demand that this dispute be tried by a jury of their peers.

## CLAIMS FOR RELIEF
## COUNT ONE
### 42 U.S.C. § 1983 VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL SEIZURE

76.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

77.    Plaintiff Stuart's detention and the related scam investigatory seizure by Defendants on October 15, 2016 was retaliation for Stuart peacefully exercising his First Amendment rights in Mountain View Park, and for refusing to cease the peaceful exercise of these rights.

78.    Plaintiff Stuart's detention and forcible removal from Mountain View Park on October 22, 2016, was retaliation for Stuart peacefully exercising his First Amendment rights that day, and for refusing to waive his constitutional rights, and for refusing to cease peacefully exercising his constitutional rights after being ordered to do so by Defendants.

79.    Plaintiff Stuart's seizure, removal from the council meeting, arrest and imprisonment of February 07, 2017, was retaliation for the First Amendment activities described above, including Stuart's refusal to submit to an unconstitutional prior restraint on his speech at the City Council Meeting.

80.    Defendants used excessive force in arresting Stuart on February 07, 2017, in order to send Stuart a message that he should obey Defendants' demands to violate his constitutional rights or he would suffer serious consequences.

81.    Defendants orchestrated and instigated Stuart's detention and seizure in Cactus Park on May 26, 2017, in retaliation for Stuart's peaceful exercise of his First Amendment rights that day. In addition, Defendants retaliated on Stuart because he told them that they were behaving unlawfully by seizing his property, and harassing him.

82.    The wrongful conduct of Defendants alleged in this Complaint constitutes violations of the United States Constitution, Amendments I, IV, V, and XIV, in that Plaintiff was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to false imprisonment and arrest, retaliatory conduct from law enforcement, and was investigated/prosecuted, arrested, and jailed without proper cause, with an unconstitutional motive, and without equal protection or due process in an attempt to chill Plaintiffs' free speech and criticism of Defendants.

83.    As the direct and proximate result of Defendants' wrongful conduct, Plaintiff's constitutional rights were violated and he has suffered harm and has been physically injured.

84.    The wrongful conduct of these Defendants alleged in this Complaint was undertaken with malice and/or with improper and unconstitutional motives in an

attempt to deter speech and conduct protected by the Constitution. Plaintiff was investigated, prosecuted, arrested, and/or jailed by Defendants for improper unconstitutional motives, was treated differently than others similarly situated, and was subjected to improper abuse of process and power for improper motives, and was arrested and jailed without proper or probable cause.

85.    Plaintiff was subjected to Defendants' wrongful and unconstitutional conduct in a particularly egregious, conscience-shocking manner.

86.    The acts and omissions of Defendants acting in their individual capacities and under color of law, were malicious, punitive, in reckless disregard of Plaintiffs' rights and were an effort to intentionally deter conduct and speech protected by the Constitution.

87.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT TWO**
**42 U.S.C. § 1983 VIOLATION OF PLAINTIFF'S**
**FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL ARREST**

88.    Plaintiffs reallege and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

89.    Plaintiff Stuart was arrested on February 07, 2017 without probable cause, without lawful justification, and for improper motives.

90.     Stuart was arrested in retaliation for the exercise of his First Amendment rights in the council meeting on Feb. 07, 2017.

91.     Plaintiff suffered serious physical injuries because of the arrest as well as injuries to his constitutional rights.

92.     Defendants Lane, Washburn, Santaella, Glenn and Cleary planned and orchestrated the unlawful arrest;

93.     As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants Scottsdale, Lane, Washburn, Santaella, Glenn and Cleary to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT THREE
### Violation of 42 U.S.C. § 1983: Plaintiff's Fourth Amendment Right to Be Free of Excessive Force.

94.     Plaintiffs reallege and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

95.     Defendants Lane, Washburn, Santaella set in motion a plan to arrest and jail Stuart on Feb. 07, 2017. This culminated in the actual use of excessive force against Stuart by Defendants Glenn and Cleary.

96.     A citation for trespassing is a petty offense.

97.     In these circumstances, no amount of force was reasonable or necessary to give Plaintiff Stuart a citation for trespassing on Feb. 07, 2017.

98.     The use of unreasonable force by Cleary in handcuffing and restraining Stuart caused plaintiff to sustain physical and emotional injuries.

99.     As a direct and proximate result of Defendants' violation of Stuart's Fourth Amendment Rights, Stuart has damaged in an amount that will be demonstrated at trial.

100.     As a result of Defendant's misconduct acting with an evil hand or consciously disregarding the risk of substantial harm to Stuart, punitive damages in an amount to be determined by a jury should be awarded against Defendants Scottsdale, Lane, Washburn, Santaella, Glenn and Cleary to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT FOUR
**Violation of 42 U.S.C. § 1983: Free Speech, Free Assembly, Prior Restraints on Free Speech and Assembly, Retaliatory Conduct, Abuse of Process, Defamation and Abuse of Power  (All Defendants)**

101.     Plaintiffs realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

102.     Defendants violated Stuart's rights to free speech and assembly by harassing him and removing his signs.

103.     Defendants violated Plaintiffs' right to free speech and assembly by asking the police to interfere with the peaceful exercise of Stuart's rights in Mountain View Park.

104.     On Oct. 22, 2016, Defendants violated Stuart's free speech and assembly rights by seizing and harassing Stuart.

105.    Defendants sought to intimidate Stuart and to chill Stuart in the future exercise of his free speech and assembly rights, and to inhibit Stuart in the effective persuasion of the public to his cause.

106.    Defendants violated Stuart's free speech by placing prior restraints on the content of his speech.

107.    Plaintiff Stuart suffered physical and psychological injuries because of Defendants' unlawful conduct listed above.

108.    Stuart suffered a deprivation of his free speech and assembly rights because of Defendants conduct listed above.

109.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants Scottsdale, Lane, Washburn, Glenn, Cleary, Santaella, and Pryor, to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT FIVE
### 42 U.S.C. 1983 Conspiracy to Violate Plaintiff Stuart's Constitutional Rights (Scottsdale, Lane, Washburn, Santaella, Cleary, Glenn.)

110.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

111.    The wrongful conduct of these Defendants as alleged herein was undertaken pursuant to an agreement or meeting of the minds among these Defendants to act in concert to violate Plaintiffs' constitutional rights, chill free speech, and to undermine the SOP Initiative efforts.

112.    Stuart has been harassed, cited, arrested, and even prosecuted as a result of Defendants' agreement to chill and suppress his Constitutional rights.

113.    As a direct and proximate cause of Defendants' conspiracy, Plaintiffs' constitutional rights were violated.

114.    The acts and the omissions of the Defendants in furtherance of their conspiracy, acting in their individual capacities and under color of law, were malicious and / or in reckless disregard of plaintiff's rights.

115.    As a result, punitive damages in an amount to be determined by a jury should be awarded against them to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT SIX**
**42 U.S.C. § 1983 Violation of Plaintiff's Fifth and**
**Fourteenth Amendment Rights to Due Process of Law**

116.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

117.    Defendants issued Stuart a trespass warning that prohibited him from using Mountain View Park and exercising his free speech, publication, assembly, association, and liberty interests for one year.

118.    Defendants enforced the Trespass Warning with threats of arrest.

119.    Defendants seized Stuart's property and deprived him of the right to possess his property and to use his property for first amendment activities without due process of law.

120.    Defendants appointed themselves judge and jury and punished Stuart without any hearing or any opportunity to contest the punishment.

121.    Defendants, acting under color of state law, have deprived, are depriving, and unless enjoined by this Court, will continue to deprive Plaintiffs of their right to due process of law in violation of Fourteenth Amendment to the United States Constitution. Plaintiffs have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

**COUNT SEVEN**
**42 U.S.C. § 1983 Violation of Plaintiff's**
**Fourteenth Amendment Right to the Equal Protection of the Law:**
**Discriminatory Enforcement, Selective Enforcement, Selective Prosecution,**
**Discriminatory Access to Public Venues**

122.    Plaintiffs realleges and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

123.    At all times material hereto, all Defendants were acting under color of law and in their capacity as officials and agents of the City of Scottsdale.

124.    The Fourteenth Amendment to the United States Constitution states in relevant part that "[nlo State shall ... deny to any person within its jurisdiction the equal protection of the laws."

125.    Defendants' enforcement of Free Speech Zones and Protest Zones in parks and other publicly owned venues, singles out for separate and unequal treatment different types of speech for discriminatory treatment based upon its content.

25

126.    Defendants selectively seized and removed signs based solely on the content of the signs and the identities of the speakers.

127.    Defendants' actions outlined in detail in the paragraphs above single Stuart out for special treatment and prosecution, while ignoring other similarly situated persons.

128.    Defendant Lane's actions interrupting, bullying and badgering plaintiff Stuart while he is speaking in city council meetings singles Stuart our for special treatment because of the content of Stuart's speech and the identity of the speaker.

129.    Defendants single out for separate and unequal treatment Stuart's signs, and deny Stuart's signs access to public venues on the same terms as other similarly situated speakers, based upon the content of the signs and the identity of the speaker.

130.    Defendants selectively enforce and prosecute Stuart for trespassing in public venues, based solely upon the content of his speech and his identity.

131.    Defendants single out Stuart for separate and unequal treatment, by having him cited, arrested, and jailed for a very minor misdemeanor.

132.    Defendants single out Stuart's signs for separate and unequal treatment, by enforcing Scottsdale Code 18-9(g) only against Stuart.

133.    Defendants have deprived, are depriving, and unless enjoined by this Court will continue to deprive plaintiff of his right to the equal protection of the law in violation of the Fourteenth Amendment to the U.S. Constitution. Plaintiff has no

adequate legal remedy by which to prevent or minimize the continuing irreparable harm to his constitutional rights.

**COUNT EIGHT**
**42 U.S.C. 1983 COUNCIL RULE OF Procedure 10.5 is Unconstitutional,**
**Scottsdale Code 18-9(g) is Unconstitutional.**
**INJUNCTIVE AND DECLRATORY RELIEF**

134.    Plaintiffs realleges and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

135.    Section 10 of the city council rules of procedure is titled, Debate and Decorum During Council Meetings.

136.    Rule 10.5 of Section 10 states,

Citizens attending Council Meetings shall also observe the same rules of order and decorum applicable to members of the Council and staff. Unauthorized remarks or demonstrations from the audience, such as applause, stamping of feet, whistles, boos, yells, and/or other demonstrations shall not be permitted.

137.    During Council meetings, Mayor Lane frequently tells members of the audience that they cannot make any sounds of any type after a speaker has finished speaking.

138.    Council Rule of Decorum 10.5 prohibits any type of First Amendment activity in the City Council chambers during council meetings by members of the audience.

139.    Rule 10.5 is a prohibition and a prior restraint on speech, and is presumptively unconstitutional.

140.   Defendants have no lawful authority to prevent citizens from peacefully exercising their free speech rights when they attend city council meetings, as members of the audience.

141.   Defendants' enforcement of Rule 10.5 suppresses free speech and chills the peaceful exercise of free speech by members of the audience in city council meetings.

142.   Scottsdale city code Section 18-9(g) states,

> No person shall attach any sign to any public utility structure, traffic control device, streetlight standard, or similar structure in the street, right-of-way or public place.

143.   Section 18-9(g) is a prior restraint and total prohibition on certain types of First Amendment activities in public places like parks and public rights of way, and is therefore presumptively unconstitutional.

144.   Defendants' enforcement of Section 18-9(g) suppresses the peaceful exercise of free speech and chills the peaceful exercise of free speech through self-censorship in public places.

145.   Defendants enforcement and threats of enforcement of the aforementioned rules and ordinances have deprived, are depriving, and unless enjoined by this Court will continue to deprive plaintiff of his First Amendment rights to freedom of speech guaranteed to him in the U.S. Constitution. Plaintiff has no

adequate legal remedy by which to prevent or minimize the continuing irreparable harm to his constitutional rights.

## COUNT NINE
**Violations of 42 U.S.C. 1983: Unconstitutional Policies, Customs and Practices, and Ratification of Unconstitutional Conduct by City Employees, and Failure to Train**
**(Lane, the Council, Washburn, Thompson and the City of Scottsdale)**

146.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

147.    Lane is an official policy maker for Scottsdale and has the authority and responsibility to establish policy for Scottsdale. His actions are the actions of Scottsdale and his office.

148.    The current members of the Scottsdale city council, Klapp, Korte, Milhaven, Smith, Littlefield and Phillips are official policy makers for the city of Scottsdale. They have the authority and responsibility to establish policy for Scottsdale. Their actions are the actions of Scottsdale and their officers.

149.    Washburn is an official policy maker for Scottsdale. The Mayor and Council have delegated to him the authority and responsibility to establish policy for Scottsdale, and to properly supervise and train the officers, agents, and employees of Scottsdale. His actions are the actions of Scottsdale.

150.    Rodbell is a policy maker for Scottsdale. The Mayor and Council have delegated to him the authority and responsibility to establish policy for Scottsdale, and

to properly supervise and train the officers, agents, and employees of the Scottsdale. His actions are the actions of Scottsdale.

151.    Defendants Lane, the Council, Washburn, and Rodbell were acting under color of state law at all times material hereto.

152.    Defendants Lane, the Council, Washburn, Thompson, and Rodbell are named in their official capacities as well as their individual capacities, pursuant to 42 U.S.C. §1983 supervisory and direct liability for their conduct as alleged herein.

153.    Scottsdale and Defendants Lane, the City Council, Washburn, and Rodbell, violated Plaintiffs' constitutional rights and were deliberately and callously indifferent to Plaintiffs in training (or failing to train) their officers, agents, and employees in (among other things and without limitation): The appropriate, lawful and constitutional policies, procedures, and protocols.

154.    Scottsdale and Defendants Lane, the City Council, Washburn, and Rodbell, were deliberately and callously indifferent to Plaintiffs through fostering, encouraging and knowingly accepting formal and informal policies, procedures, practices, or customs condoning indifference to the rights of Plaintiffs and other individuals.

155.    As alleged herein, the Defendants and Scottsdale, were deliberately and callously indifferent to Stuart through fostering, encouraging and knowingly accepting formal and informal policies, procedures practices, or customs condoning indifference to the rights of the citizens of Scottsdale.

156.    As alleged herein, the Defendants and Scottsdale, independently and in concert with one another and through their official policymakers, knew and should have known that unconstitutional policies, practices, customs, and training existed with respect to the screening, hiring, training, retaining, and supervision of officers, employees, and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control, yet failed to properly address them and/or failed to establish and implement appropriate policies, procedures, protocols, and training to remedy them.

157.    As alleged herein, the Defendants and Scottsdale, independently and in concert with one another and through their official policymakers, permitted the implementation of inappropriate, unconstitutional, *de facto* policies which: authorized, approved, condoned, and/or ratified unconstitutional civil and/or criminal investigatory and prosecutorial practices, and failed to adequately train and supervise their personnel in these and other relevant areas.

158.    The wrongful conduct of the Defendants and Scottsdale as alleged in this Complaint constitutes violations of Title 42 U.S.C. §1983, in that they deprived Stuart of the rights, privileges, and immunities secured to him by the Constitution and laws of the United States and their wrongful conduct was the moving force behind the violations of Stuart's rights by their agents, employees, officers, and personnel.

159.    The wrongful conduct of the Defendants and Scottsdale as alleged herein constitutes violations of the United States Constitution, including but not limited to

Amendments I, IV, V, and XIV, in that Stuart was subjected to retaliatory conduct by law enforcement and other Scottsdale employees and agents, was prosecuted criminally with no evidence to support the charges, with an unconstitutional motive, and without probable cause, equal protection or due process in an attempt to chill Plaintiff's free speech, and to intimidate, harass, and exact revenge for prior exercises of free speech and assembly in Scottsdale.

160.    As the direct and proximate result of the Defendants and Scottsdale's wrongful conduct, Stuart's constitutional rights were violated and he has suffered harm and has been injured.

161.    The acts and omissions of the Defendants acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Stuart's rights.

162.    As a result, punitive damages in an amount to be determined by a jury should be awarded against the Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

**COUNT TEN**
**Violation of Plaintiff's Arizona Constitutional Right to**
**Free Speech and Publication, Art. II, § 6: Prior Restraints and Actual**
**Suppression and Chilling.**
**Declaratory, Injunctive Relief, Damages**

163.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

164.    Article II, section 6 of the Arizona Constitution provides that "[e] very person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

165.    Defendants' actions as described in this complaint against Plaintiffs and others violated Stuart's right to free speech and publication guaranteed by Article II, section 6 of the Arizona Constitution.

166.    Defendants, acting under color of state law, have deprived, are now depriving, and unless enjoined by this Court, will continue to deprive, Plaintiffs of their right to free speech and expression guaranteed by Article II, section 6 of the Arizona Constitution.  Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

167.    For all of those reasons, Defendants' acts and omissions violate Plaintiffs' rights under the Arizona Constitution.

**COUNT ELEVEN**
**Violation of Plaintiffs' Arizona Constitutional**
**Right to Equal Protection of the Law-Art. II, § 13**
**Declaratory, Injunctive Relief, Damages**

168.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

169.    Article II, section 13 of the Arizona Constitution provides, "No law shall be enacted granting to any citizen, class of citizens, or corporation other than

municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

170.    As described above, Defendants single out for separate and unequal treatment different types of speech and publication based on their content, and the identity of the speaker.

171.    Defendants, acting under color of state law, have deprived, are now depriving, and unless enjoined by this Court, will continue to deprive, Stuart and others of their rights to equal protection of the laws in violation of Article II, section 13 of the Arizona Constitution.  Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

172.    For all of these reasons, Defendants' actions and omissions violate Plaintiffs' rights under the Arizona Constitution.

## COUNT TWELVE
### Violation of Plaintiffs Arizona Constitutional
### Right to Due Process of Law-Art. II, § 4

173.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

174.    Article II, section 4 of the Arizona Constitution provides, "No person shall be deprived of life, liberty, or property without due process of law."

175.    As described above, Defendants' actions have violated Stuart's right to due process of law under the Arizona Constitution.

34

176.    Defendants' actions routinely deprive Stuart and others of the ability to peacefully exercise their fundamental rights with no process at all.

177.    Defendants, acting under color of state law, have deprived, are now depriving, and unless enjoined by this Court, will continue to deprive, Stuart and others of their rights to due process of law in violation of Article II, section 4 of the Arizona Constitution.  Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

178.    For all of these reasons, Defendants' actions and omissions violate Plaintiffs' rights under the Arizona Constitution.

**COUNT THIRTEEN**
**Violation of Plaintiffs Arizona Constitutional Rights to**
**Petition and to Peacefully assemble for the common good, Art. II, § 5**
**Declaratory, Injunctive Relief, Damages**

179.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

180.    The Scottsdale City Charter contains Article II, Section 15. Consideration of Petitions. ("Art. II, Sect. 15", "Charter")

181.    Art. II, Sect. 15 is reproduced in its entirety below:

Any citizen of the city may appear before the council at any regular meeting and present a written petition; the council, in the regular course of business, shall act upon such petition within thirty (30) days.

1

2    182.    Defendants Scottsdale, Lane, Washburn, Jagger and the Officers

3    unlawfully abridged and violated Stuart's right to petition the council and to peacefully

     assemble for the common good under the Ariz. Const. Art. II, Sect. 5.

4
     **COUNT FOURTEEN**
5    **Violations of Arizona Law: Abuse of Process, Common Law Wrongful Arrest –**
     **Wrongful Imprisonment**
6    **February 07, 2017**

7    183.    Plaintiff realleges and incorporates by reference the allegations set forth

8    in each of the preceding paragraphs of the Complaint as if set forth fully herein.

9    184.    The wrongful conduct of these Defendants alleged herein constitutes

10   violations of Arizona law, in that Defendants unlawfully detained Plaintiffs without

11   consent, without lawful authority, without valid legal process, and without probable or

12   proper cause; and willfully used the judicial process and/or criminal proceedings

13   against Plaintiffs for a punitive, improper, and ulterior purpose not proper in the

14   regular conduct of such process and proceedings.

15
     185.    As a direct and proximate result of Defendants' acts and omissions
16
     alleged herein, Plaintiffs have been damaged in an amount to be proven at trial.
17

18   186.    Defendants' acts and omissions herein were undertaken with malice, in

19   bad faith, and with the requisite evil mind sufficient to warrant the imposition of

20   punitive damage to deter their conduct and that of others in the future.

21
     **COUNT FIFTEEN**
22   **Violation of Arizona Law:  Intentional Infliction of Emotional Distress**
     **(All Defendants)**

23

24
     36

187.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

188.    The conduct of Defendants targeted at Stuart was extreme and outrageous.

189.    Defendants intended to cause emotion distress for Stuart, and recklessly disregarded the near certainty that such distress would result from their conduct.

190.    The community of Scottsdale reacted with outrage to Stuart's arrest and imprisonment on Feb. 07, 2017.

191.    Stuart has suffered severe emotional distress as a result of Defendants actions.

192.    Defendants' acts and/or omissions, including such things as (among others and without limitation) their vindictive, retaliatory, extortionate, defamatory, threatening, intimidating under the color of state law, conduct, constituted extreme and outrageous conduct that inflicted emotional distress and physical injury on plaintiff Stuart and his wife.

193.    Defendants' acts and omissions were extreme, outrageous, and beyond all possible realms of decency and shock the conscience.

194.    Defendants' acts and omissions constitute negligent, reckless, and/or intentional infliction of emotional distress.

195.    As a direct and proximate cause of Defendants' intentional, reckless, and/or negligent infliction of emotional distress, Stuart has suffered severe emotional

distress, adverse physical maladies and manifestations, physical injury and/or harm in an amount to be determined by trial.

196.    The acts and omissions of Scottsdale, Lane, Washburn, Thompson, Santealla, Rodbell and Jagger acting in their individual capacity and under color of law as alleged herein, were malicious, punitive, and in reckless disregard of Plaintiffs' rights.

## COUNT SEVENTEEN
### Arizona Law: Common Law Conspiracy

197.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

198.    The wrongful conduct of Defendants was undertaken pursuant to an agreement or meeting of the minds among the Defendants to act in concert to violate Plaintiffs' well-established federal and state constitutional rights, chill his free speech and retaliate against his exercise thereof, prohibit anticipated future free speech, and to intimidate, harass, and exact revenge for prior free speech and political activities in Scottsdale.

199.    As a direct and proximate cause of the Defendants' conspiracy, plaintiff Stuart was damaged as set forth herein and his constitutional rights were violated.

200.    The acts and omissions of the Defendants in furtherance of their conspiracy, acting in their individual and official capacities and under color of law, were malicious and/or in reckless disregard of plaintiff Stuart's rights.

201.    As a result, punitive damages in an amount to be determined by a jury should be awarded against Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

### COUNT EIGHTEEN
**Arizona Law: NEGLIGENCE (All Defendants)**

202.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

203.    Defendants have both statutory and common law duties of care to Plaintiffs and all citizens when performing the functions of their positions.  Defendants owe a duty of care to Plaintiffs with respect to conducting criminal and/or civil investigations and prosecutions.

204.    Defendants are legally responsible for the management of the civil and/or criminal investigation system in Scottsdale, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control. Their responsibility includes making certain that such policies, procedures, and protocols satisfy all federal and state standards.

205.    Defendants are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control. This responsibility includes making

certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards.

206.    Defendants breached their duties owed to Plaintiff Stuart, as alleged in this Complaint, by (inter alia), failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and agents who have responsibility for the investigation, processing, handling, and management of criminal investigations and prosecutions in their control.

207.    Defendants' breaches of their duties owed to Plaintiff Stuart directly and proximately caused Plaintiffs to suffer damages in an amount to be proven at trial.

208.    The acts and omissions of Lane, Thompson, Washburn, Jagger, the Council, Rodbell, and Pryor acting in their individual capacity and under color of law as alleged herein were malicious, punitive, and in reckless disregard of Plaintiffs rights.

**COUNT NINETEEN**
**Arizona Law: GROSS NEGLIGENCE**

209.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the Complaint as if set forth fully herein.

210.    Defendants have both statutory and common law duties of care to plaintiff Stuart and all citizens when performing the functions of their positions.

Defendants owe a duty of care to Plaintiff Stuart with respect to conducting criminal and/or civil investigations and prosecutions.

211.    Defendants are legally responsible for the management of the civil and/or criminal investigation system in Scottsdale, and the establishment and implementation of policies, procedures, and protocols that govern the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control. Their responsibility includes making certain that such policies, procedures, and protocols satisfy all federal and state standards.

212.    Defendants are legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control. This responsibility includes making certain that such screening, hiring, training, retaining, and supervision of such employees and agents satisfy all federal and state standards.

213.    Defendants were grossly negligent in breaching their duties owed to Plaintiff Stuart, as alleged in this Complaint, by (inter alia), failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures, and protocols governing the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control; and failing to properly screen, hire, train, retain, and supervise employees and

agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control.

214.    Defendants' breached their duties with actual or constructive knowledge, or with reckless disregard that their acts and/or omissions would result in harm to Plaintiff Stuart.

215.    Defendants' gross negligence directly and proximately caused Plaintiffs damages in an amount to be proven at trial.

216.    The acts and omissions of Lane, Thompson, Washburn, Jagger, the Council, Rodbell, and Pryor acting in their individual capacity and under color of law as alleged herein were malicious, punitive, and in reckless disregard of Plaintiffs rights.

**WHEREFORE**, Plaintiffs respectfully request this Court to:

a.      Issue a declaratory judgment that the conduct of Defendants' as described above violated Plaintiffs' rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983;

b.      Issue a declaratory judgment that the conduct of Defendants as described above violated Plaintiffs rights under the Arizona Constitution, Article II, Sections 4, 5, 6 and 13.

c.       Issue preliminary and permanent injunctions prohibiting Defendants from violating Plaintiffs' rights in the future;

d.      Award Plaintiffs nominal damages against each Defendant, jointly and severally, in the amount of $1.00;

e.    Award Plaintiffs compensatory damages against each Defendant, jointly and severally, in an amount to be determined at trial;

f.    Award Plaintiffs punitive damages against each Defendant, jointly and severally, in an amount to be determined at trial;

g.    Award Plaintiffs their reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and

h.    Award Plaintiffs all other relief that is just and appropriate under the circumstances.

Respectfully submitted, this 14th day of June, 2017.

**HORNE SLATON, PLLC**

By: /s/ Sandra Slaton
Sandra Slaton, Esq.
Attorney for Plaintiffs Mark Stuart
and Save Our Preserve, Inc.

**HORNE SLATON, PLLC**
**Sandra Slaton (AZ BAR No. 006454)**
6720 N. Scottsdale Rd., Suite 285
Scottsdale, Arizona 85253
Tel. 480-483-2178
Fax. 480-367-0691 fax
slaton@horneslaton.com
*Attorney for Plaintiffs,*
*Mark Stuart and Save Our Preserve, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARK STUART an Individual, dba as Save Our Preserve, Inc., and SAVE OUR PRESERVE INC., an Arizona Corporation on behalf of its members, | Civil Action No.: _____ |
| Plaintiff, | **DECLARATION OF MARK STUART IN SUPPORT OF VERIFIED COMPLAINT AND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |
| V. | |
| CITY OF SCOTTSDALE, a Municipal Corporation and a political subdivision of the State of Arizona, W.J. "JIM" LANE and JANE DOE LANE husband and wife, GUY PHILLIPS and JANE DOE PHILLIPS husband and wife, KATHY LITTLEFIELD and JOHN DOE LITTLEFIELD husband and wife, SUZANNE KLAPP and JOHN DOE KLAPP husband and wife, LINDA MILHAVEN and JOHN DOE MILHAVEN husband and wife, VIRGINIA KORTE and JOHN DOE KORTE husband and wife, DAVID SMITH and JANE DOE SMITH husband | **AFFIDAVIT**

(ASSIGNED TO Honorable _____) |

1

and wife, JIM THOMPSON and JANE DOE THOMPSON husband and wife, ALAN RODBELL and JANE DOE RODBELL husband and wife, BRUCE WASHBURN and JANE DOE WASHBURN husband and wife, CAROLINE JAGGER and JOHN DOE JAGGER husband and wife, LUIS SANTAELLA and JANE DOE SANTAELLA husband and wife, TOM CLEARY and JANE DOE CLEARY husband and wife, JASON GLENN and JANE DOE GLENN husband and wife, C. KAUFMANN and JANE DOE KAUFMANN husband and wife, CHRIS HALL and JANE DOE HALL husband and wife, JASON STUMPF and JOHN DOE SUMPF husband and wife, REED PRYOR and JANE DOE PRYOR husband and wife, JOHN and JANE DOES I-X

                    Defendants.

I, Mark Stuart, do hereby swear under penalty of perjury the following:

1.      I have read both the foregoing Complaint and Motion for Temporary Restraining Order, and that the facts set forth therein are true and correct based upon my own personal knowledge, except as to those facts based upon my information and belief, and as to those facts I believe them to be true to the best of my knowledge.

2.      The City of Scottsdale, through its agents, employees and police officers has badgered, harassed and placed prior restraints on my freedoms of speech, assembly,

2

and petition as well as other federal and state constitutional rights.

3.      Beginning in October, 2015, the City of Scottsdale has chilled my speech through the imposition of prior restraints, selective enforcement of Scottsdale City Code violations, false imprisonment, and the seizure of my property.

4.      Scottsdale has further chilled my speech through threatened and actual prosecution of trespassing for attempting to advocate for the Save Our Preserve Initiative.

5.      Scottsdale's harassment and prosecution has chilled my speech.

6.      Without a temporary restraining order, or other injunctive relief, I will continue to fear attending Scottsdale City Council meetings and being arrested for advocating for the SOP Initiative in public places.

7.      I have a legitimate fear that because of my advocacy I will be arrested and placed in jail again.

8.      Scottsdale's harassment and tactic of surrounding me with police officers in public has reduced the legitimacy of the Save Our Preserve Initiative and voters are less likely to sign the petition.

9.      The Save Our Preserve Initiative must have the required number of signatures submitted by July 1, 2018.

10.     Defendants misconduct has placed the chance to get signatures in danger as anytime I attempt to get signatures I am hounded, harassed, and badgered by the police.

11. I have noticed a large reduction in volunteer support to gather signatures.

12. Volunteers have informed me they will no longer participate out of fear of retaliation from Scottsdale similar to the way I have been treated.

13. I, together with many volunteers, had been planning on displaying signs and wearing clothing for the Save Our Preserve Initiative to Fourth of July, 2017 weekend community events to gather signatures and inform voters about the petition.

14. Volunteers have refused to go through with plans to gather signatures at planned community events for the Fourth of July weekend based on Scottsdale's actions.

15. The events at Cactus Park are the most recent in a sequence of events orchestrated by Scottsdale to use police force to attempt to stop and/or suppress signature collection efforts.

16. Scottsdale has planned and will further plan to manufacture a confrontation with me while I am gather signatures, as a means to undermine or stop the SOP Initiative.

17. I no longer go to public venues owned by Scottsdale to collect signatures without an escort or witness and two video cameras to record all interactions with the public.

18. Because of the ongoing sequence of actions taken against me by the city of Scottsdale, my signature collection and volunteer recruiting efforts has been reduced and severely limited.

19.     SOP Initiative volunteers and I desire to gather signatures at public events on the Fourth of July, 2017 that routinely have a high attendance.  Unless there is a temporary restraining order to ensure that Scottsdale will not interfere, harass, or infringe on free speech rights, many volunteers have stated they will not be available for these events.

20.     Unless this Court steps in to issue a temporary restraining order, I along with other volunteers will continue to have our free speech suppressed and participation in the SOP Initiative will drop dramatically.

21.     The passage of time and loss of volunteers places the risk of reaching the required number of signatures (over 23,000), by the required date (July 1, 2018) in serious danger.

22.    Unless a temporary restraining order is issued, the SOP Petition will never reach the voters even just for their signature to place it on the ballot, let alone for them to vote on.

23.    Unless a temporary restraining order is issued, my First Amendment rights will continue to be chilled and suppressed by the city of Scottsdale together with its representatives and agents.

Further affiant sayeth not.

Dated the 14th day of June , 2017.

_____
Mark Stuart ,   in his individual capacity and as
Chairman of the SOP Initiative

STATE OF ARIZONA        )
                        ) ss:
County of Maricopa      )

SUBSCRIBED AND SWORN TO BEFORE ME BY MARK STUART THIS 14th DAY OF JUNE, 2017

_____
NOTARY PUBLIC

My Commission Expires: July 28, 2019

Notary Public State of Arizona
Maricopa County
Dale Ann Andrade
My Commission Expires 07/28/2019

6