**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Stuart, | No. CV-17-01848-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Renewed Motion to Dismiss the First Amended Complaint (Doc. 158). Following this Court's September 27, 2018, Order (Doc. 124) on Defendants' initial Motion to Dismiss (Doc. 86), Plaintiff submitted two Motions to Amend the First Amended Complaint ("FAC"), both of which the Court denied. Following these efforts, and following near complete resolution of related state court matters, Defendants filed the present renewed Motion to Dismiss (Doc. 158). Plaintiff submitted a Response (Doc. 161), and Defendants submitted a Reply (Doc. 162).

**A. Background**

This action was initially filed by Plaintiff Mark Stuart and Save Our Preserve, Inc.[1] on June 15, 2017 (Doc. 1), with an amended complaint being filed on June 16, 2017 (Doc. 5) ("FAC"). The allegations in the FAC focused on a dispute between Mr. Stuart and the City of Scottsdale regarding Mr. Stuart's advocacy efforts to prohibit development in the

---

[1] In addition to Mr. Stuart, Save Our Preserve, Inc. was originally a plaintiff in this action. It was dismissed from the action on October 5, 2017, per order of this Court, based on failure to secure legal representation by the appointed deadline of August 1, 2018. (Doc. 91).

McDowell Sonoran Preserve. (Doc. 124 at 2; Doc. 5). That 19-count, 45-page FAC alleged various violations of Mr. Stuart's constitutional and statutory rights, including freedom of speech, freedom of assembly, freedom of association, due process, malicious prosecution, and 42 U.S.C. § 1983. (Doc. 5). Defendants included the City of Scottsdale, the Mayor of Scottsdale, City Council Members, the Scottsdale City Manager, members of the Scottsdale City Attorneys' Office, members of the Scottsdale Police Department, and the Scottsdale Director of Parks and Recreation. (Doc. 5).

As noted in this Court's September 27, 2018, Order on Defendants' Motion to Dismiss, the majority of the allegations in the FAC arose out of Mr. Stuart's arrest for trespass at a February 7, 2017, Scottsdale City Council meeting and a May 26, 2017, civil citation for placing signs on posts in a public park. (Doc. 5; Doc. 124 at 2). Additional related allegations arose from other sign incidents, as well as the City of Scottsdale's enforcement of "free-speech zones." (*Id.*)

Defendants filed a Motion to Dismiss (Doc. 86), which this Court granted in part and denied in part. The Court first found that *Younger* abstention applied to Plaintiff's claims that arose out of his February 7, 2017, arrest for trespass during a Scottsdale City Council meeting (the "Trespass Action") and to Plaintiff's claims that arose out of his May 26, 2017, citation for unlawfully attaching a sign to a traffic control device (the "Sign Citation Action"). (Doc. 124 at 5-16). Based upon *Younger* abstention, the Court abstained from Counts Six, Seven, Eight, Ten, Eleven, Twelve, and Thirteen,[2] all of which sought injunctive relief, and the Court stayed Counts One, Two, Three, Five, Nine, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen, which sought damages for injuries related to the Trespass Action and the Sign Citation Action. (Doc. 124 at 11-14).

In addition to applying *Younger* abstention, the Court also partially granted the Motion to Dismiss based upon Rule 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure. (Doc. 124 at 18-20). The Court found that "the majority of the Counts are

---

[2] The Court abstained in full from Counts Eight and Thirteen; for Counts Six, Seven, Ten, Eleven, and Twelve, the Court abstained only from the portions of those counts directly related to the Trespass Action or the Sign Citation Action. (Doc. 124 at 11-13).

unclear regarding which Defendants are alleged to have caused which particular harms." (Doc. 124 at 20). The Court also recognized that "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges because they can cause confusion and unnecessary expense of judicial and attorney resources." (Doc. 124 at 20 (internal citations omitted)). Therefore, the Court dismissed Counts One, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen, without prejudice and to the extent that they were not already dismissed or stayed pursuant to *Younger* abstention. (Doc. 124 at 20).

Following the Court's ruling on the Motion to Dismiss, Plaintiff filed a Motion for Leave to Amend Complaint. (Doc. 129). In its November 18, 2019, Order, the Court denied this Motion, finding that the 532-paragraph proposed second amended complaint was "prolix, confusing, and filled with a myriad of cross-references that are scattered throughout the document." (Doc. 137 at 6). The Court, however, granted Plaintiff an additional 30 days to submit a revised proposed second amended complaint in order to cure the deficiencies. (Doc. 137 at 7). The Court stated that, if Plaintiff elected to file a renewed proposed second amended complaint, but failed to comply with the Court's instructions in the Order, the FAC (Doc. 5) would remain the operative complaint. (Doc. 137 at 7).

On February 2, 2020, Plaintiff filed a revised proposed Second Amended Complaint. (Doc. 147). The Court again denied the Motion to Amend, finding that the proposed complaint, although an improvement on the prior version, maintained too many ambiguities regarding the identities of defendants and corresponding allegations. (Doc. 150 at 8). Accordingly, the Court stated that the FAC would remain the operative complaint. (*Id.*) In the Order on the Motion to Amend, the Court also set a Rule 16 Scheduling Conference and requested additional briefing from the parties regarding the status of the state court actions that were subject to abstention at the outset of this matter. (Doc. 150 at 8-9).

At the Rule 16 Scheduling Conference, Plaintiff indicated his intent to submit another attempted Second Amended Complaint. (Doc. 157). The Court denied the request,

- 3 -

finding that "permitting Plaintiff to file a third motion seeking permission to file a second amended complaint would not be fruitful and would instead only serve to further delay resolution of this matter." (Doc. 157 at 1). The Court granted permission for Defendants to file a renewed Motion to Dismiss to clarify the issues. (Doc. 157). In order to address the issues raised in the Motion to Dismiss, the Court lifts the stay it had previously placed on Counts One, Two, Three, Five, Nine, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen.

### B. Discussion

In the present Motion to Dismiss the FAC, Defendants first ask this Court to finalize the dismissal of the counts that this Court previously dismissed pursuant to *Younger* abstention or because several counts were not in compliance with Rule 8. Defendants next assert several reasons why the remaining counts should be dismissed, including the *Rooker-Feldman* doctrine, qualified immunity, the intracorporate conspiracy doctrine, and insufficient factual allegations to plead a plausible *Monell* claim.

As correctly noted by Defendants, the Court previously fully abstained from Counts Eight and Thirteen pursuant to *Younger* abstention. (Doc. 124 at 12-13). Accordingly, these counts are no longer at issue in this matter. The Court also partially abstained from Counts Six, Seven, Ten, Eleven, and Twelve to the extent those counts were based upon the Sign Citation Action or the Trespass Action. (*Id.* 124 at 11-13). Those counts are likewise no longer at issue in this matter, to the extent they were based upon the Sign Citation Action or the Trespass Action.

With respect to the remaining counts, the Court will first address the prior dismissal without prejudice. The Court will next discuss application of *Rooker-Feldman*, qualified immunity, and the intracorporate conspiracy doctrine. Last, the Court will address whether Count Nine is supported by sufficient factual allegations. Based upon resolution of these arguments, the Court need not address the remaining arguments made in Defendants' Motion to Dismiss.

/ / /

1. *Dismissal Pursuant to Rule 8*

In this Court's September 27, 2018, Order on Defendants' initial Motion to Dismiss, the Court dismissed several claims pursuant to Rule 8. The Court stated that, for a plaintiff to comply with Rule 8, the plaintiff must "specifically identify the allegations against each individual defendant" and that, when there are multiple defendants and multiple factual events that not all defendants participated in, it is "insufficient to broadly allege liability on behalf of 'Defendants.'" (Doc. 124 at 19-20). The Court further found that the "majority of the Counts are unclear regarding which Defendants are alleged to have caused which particular harms." (*Id.* at 20). Accordingly, the Court dismissed, without prejudice, Counts One, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen. (*Id.*)

In order to cure the deficiencies within the FAC, the Court permitted Plaintiff two attempts to amend the FAC. Both of the proposed Second Amended Complaints failed to remedy the pleading errors found within the FAC and, in fact, increased the prolixity of the pleading. (Doc. 137; Doc. 150). As this Court recognized, "if the prolixity of a complaint requires 'superhuman patience, effort, and insight' to make paragraph-by-paragraph responses, the district court has discretion to dismiss the complaint.'" (Doc. 150 at 5-6). *See Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir. 2011) (citing *Mendez v. Draham*, 182 F. Supp. 2d 430, 433 (D. N.J. 2002)). This is particularly true when the Court has already rejected proposed pleadings and has provided instructions to Plaintiff regarding remedying the pleading errors. *See Williams v. Cty. of Los Angeles Dep't of Public Soc. Servs.*, 2016 WL 8229038, *10 (C.D. Cal., Dec. 21, 2016) (dismissing plaintiff's action with prejudice when plaintiff failed to present amended complaint in compliance with court direction regarding remedying pleading defects); *Serpa v. SBC Telecommunications, Inc.*, 2004 WL 2002444, *7 (N.D. Cal., Sep. 7, 2004) (recognizing that, when repeated efforts to amend do not correct a deficiency, the court has discretion to deny a motion to amend).

As stated in its July 15, 2020, Order, the Court will not allow Plaintiff any additional

attempts to amend the FAC. (Doc. 150 at 9; *see also* Doc. 157). Therefore, the counts that were previously dismissed without prejudice are now dismissed with prejudice. *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal with prejudice of amended complaint that did not comply with Rule 8(a)); s*ee also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend). These dismissed counts are Counts One, Four, Six, Seven, Ten, Eleven, Twelve, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen.

2. *Motion to Dismiss the Remaining Counts*

After dismissing Counts One, Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen, the only remaining Counts are Counts Two, alleging violation of Plaintiff's Fourth Amendment right to be free from unlawful arrest; Three, alleging violation of Plaintiff's Fourth Amendment right to be free from excessive force; Five, alleging conspiracy to violate Plaintiff's Constitutional rights; and Nine, alleging unconstitutional policies, customs and practices, ratification of unconstitutional conduct by city employees, and failure to train.[3]

a. *Rooker-Feldman*

Defendants first assert that the Court lacks jurisdiction over the remaining claims under the *Rooker-Feldman* doctrine, which prevents district courts from exercising jurisdiction over a matter that is a "*de facto* appeal from a state court judgment." (Doc. 158 at 6). Under *Rooker-Feldman*, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). The reasoning underlying this principle is that the United States Supreme Court is the only federal court with jurisdiction to hear direct appeals from a final state court judgment. *Id.* Therefore, if a party is disappointed with a state court judgment, that party may not appeal to federal district court, even if the issue would be otherwise within federal district court jurisdiction based upon a federal question

---

[3] The FAC omitted a Count Sixteen.

or diversity of citizenship. *Id.* at 1155. "The purpose of the doctrine is to protect state judgments from collateral federal attack." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

As this Court previously held in this matter, it cannot apply *Rooker-Feldman* to the present matter because this case was not brought in order to appeal the state court decisions. Instead, the present case and the state court proceedings are parallel proceedings, to which *Rooker-Feldman* does not apply. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (noting that doctrine only applies when "the losing party in state court filed suit in federal court *after* the state proceedings ended") (emphasis added). Further, *Rooker-Feldman* does not bar jurisdiction where the federal court plaintiff is simply complaining of a "legal injury caused by an adverse party"; it instead bars jurisdiction if the federal plaintiff is complaining of "a legal injury caused by a state court judgment." *Noel,* 341 F.3d at 1163. In this federal court action, Mr. Stuart is not seeking to remedy an injury caused by a state court decision; instead, he is seeking to remedy injuries caused by the Defendants' alleged actions. Accordingly, the *Rooker-Feldman* doctrine does not apply, and this Court is not deprived of subject matter jurisdiction based upon that doctrine.

### b. Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. The doctrine therefore considers the real-world demands on officials in order to allow them to act "swiftly and firmly" in situations where the rules governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding officials liable

for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.* With respect to police officers, "principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson,* 555 U.S. at 244 (2009).

It is appropriate for the Court to consider qualified immunity at the pleading stage. "[T]he Supreme Court has 'repeatedly. . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). Consistent with this, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Doe v. Petaluma City School Dist.,* 54 F.3d 1447, 1449–50 (9th Cir. 1995) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

To determine whether a government official is entitled to qualified immunity, the Court must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. With respect to the second prong of the qualified immunity analysis, the Supreme Court has held that an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and Cty. of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (omission in original) (internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly

violate the law." *Id.* (internal quotation marks omitted). Although it is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality, *see White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). *See also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find case with identical facts, but the further afield existing precedent lies the more likely that official's acts fall within vast zone of conduct that is constitutional).

Based upon the facts presented in the FAC, the Court concludes that Defendants are entitled to qualified immunity for the wrongful arrest claim. Plaintiff was arrested at a February 7, 2017, Scottsdale City Council meeting when, after he started to make remarks, he was asked to leave the podium. (Doc. 5 at 13-14). The allegations of the FAC indicate that he was asked multiple times to not comment regarding the Save Our Preserve ballot initiative and that Mayor Lane asked Defendant officers Cleary and Glenn to remove Stuart. (Doc. 5 at 13-14). According to the FAC, Plaintiff was arrested for trespassing and for failure to obey a police officer. (Doc. 5 at 15). Plaintiff contends that his arrest was unlawful because he was arrested for exercising his First Amendment rights and because arrests for exercising those rights are unlawful. (Doc. 161 at 10). It is not clear, however, that Plaintiff had a right to speak at the February 7, 2017, Scottsdale City Council meeting when he wanted to speak, for as long as he wanted to speak, and upon the subject he wanted to speak. *See Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995) (noting that city council meetings "fit more neatly into the nonpublic forum niche" and recognizing that there may be reasonable limitations on speech at those meetings). Because Plaintiff's arrest was based upon his refusal to relinquish his perceived right to speak at the meeting, and because it is unclear whether he had a right to speak at the meeting, this Court cannot conclude that "any reasonable official" would have understood that the arrest was unlawful. Stated differently, the claimed right's contours are not sufficiently definite such that any reasonable official would have understood he was violating those rights.

Accordingly, qualified immunity applies to Count Two, for wrongful arrest, and that Count is dismissed.

Regarding the excessive force claim, "determining whether force used in making an arrest is excessive calls for a fact-intensive inquiry requiring attention to all circumstances pertinent to the need for the force used." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015). Qualified immunity, however, does protect actions in the "hazy border between excessive and acceptable force." *Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (finding qualified immunity when officers fired shots at vehicle they believed was driven at high speeds by a potentially armed fugitive fleeing arrest). The FAC alleges that "Defendant Cleary handcuffed Stuart by violently pulling up on his left arm behind his back and double locking the handcuffs around Stuart's wrist next to his elbows, behind his back." (Doc. 5 at 14). It also alleges that Stuart informed Defendants of severe pain in his shoulder and requested that the handcuffs be moved to the front of his body and that Defendant Cleary initially refused, but ultimately complied when Plaintiff made a second request. (Doc. 5 at 14-15). Essentially, therefore, the FAC alleges that Plaintiff was handcuffed in connection with his arrest for trespass and for failure to obey an officer. The FAC even recognizes that, after Plaintiff requested that the handcuffs be moved to a more comfortable position in front of his body, Officer Cleary moved the handcuffs. Plaintiff has not presented any allegation or authority supporting the contention that Plaintiff had a clearly established right to not be handcuffed at the time of arrest, such that any reasonable official would have understood he was violating that right. Accordingly, as with Count Two, Count Three is also dismissed based upon qualified immunity.

Regarding Count Five, for conspiracy to violate Plaintiff's Constitutional rights, and Count Nine, claiming unconstitutional policies, customs, and practices and failure to train, Defendants state that they are also entitled to qualified immunity on those claims. Defendants, however, fail to elaborate on their argument and clarify how qualified immunity applies to those counts. Accordingly, the Court denies the Motion to Dismiss Counts Five and Nine on the basis of qualified immunity.

c. *Conspiracy*

Defendants contend that Plaintiff's conspiracy claim, Count Five, is barred by the intracorporate conspiracy doctrine. This doctrine "bars a claim for conspiracy where the allegation is that an entity conspired with its employees to violate an individual's constitutional rights." *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1074 (D. Ariz. 2012). Count Five alleges that Scottsdale, along with Mayor Lane, Scottsdale City Attorney Washburn, Assistant Scottsdale City Attorney Santaella, and Scottsdale police officers Cleary and Glenn, all conspired to violate Plaintiff's Constitutional rights and to undermine Plaintiff's Save Our Preserve efforts. (Doc. 5 at 25). The allegations within the FAC fall squarely within the intracorporate conspiracy doctrine.

In his Response, Plaintiff concedes that Scottsdale should not remain a defendant on the conspiracy claim. (Doc.161 at 13). Plaintiff, however, asserts that the remaining named defendants should not be dismissed from this claim because they reached an illegal agreement to violate Plaintiff's civil rights. (Doc. 161 at 13-14). Plaintiff, however, "cannot plead around this rule by naming Defendants in their individual capacities and not naming the [entity] in [the] conspiracy count." *Donahoe*, 869 F. Supp. 2d at 1075. "[W]here the individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand." *Id.* (citing *Celestin v. City of New York*, 581 F. Supp. 2d 420, 434 (E.D.N.Y. 2008)). Because Plaintiff is essentially alleging that Scottsdale conspired with itself, and because such a claim cannot stand, Count Five is dismissed.

d. *Count Nine: Unconstitutional Policies, Customs, and Practices; Ratification of Unconstitutional Conduct; and Failure to Train*

Count Nine alleges a § 1983 claim for "Unconstitutional Policies, Customs, and Practices; Ratification of Unlawful Conduct by City Employees; and Failure to Train" against Scottsdale, and the Scottsdale Mayor, Scottsdale City Manager, Scottsdale City Attorney, Scottsdale City Counsel, and Scottsdale Chief of Police. (Doc. 5 at ¶¶ 150-66). Defendants assert that Count Nine should be dismissed because it is unsupported by sufficient factual allegations. (Doc. 158 at 12).

To state a claim against a municipality under § 1983, a Plaintiff must allege sufficient facts to support a reasonable inference that the execution of a policy, custom, or practice was the "moving force" that resulted in the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). Liability can attach under *Monell* in three types of circumstances. First, a municipality may be liable "when implementation of its official policies or established customs inflicts the constitutional injury." *Id.* at 708. A plaintiff can also prevail by showing certain acts of omission by a local government, such as a pervasive failure to train municipal employees, but only "when such omissions amount to the local government's own official policy." *Clouthier v. Cty of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds in Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Finally, a city "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (internal quotation marks and citations omitted)). For the foregoing reasons, the Court finds the Plaintiff has failed to allege sufficient facts to support a theory of municipal liability under § 1983.

### i. Official Policy or Practice

Plaintiff has alleged no customs or policies that, when implemented, acted as the moving force behind any of conduct he says violated his constitutional rights. "A 'policy or custom' must generally be one adopted and expressly set forth, but a municipal policy 'may [also] be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Morales v. Fry*, 2014 WL 1230344, at *13 (W.D. Wash. Mar. 25, 2014) (quoting *Nadell v. Las Vegas Metro. Police Dep't.*, 268 F.3d 924, 929 (9th Cir. 2001)). At the pleading stage, Plaintiff must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself" and "factual allegations that. . . plausibly suggest an entitlement to relief . . ." *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637

(9th Cir. 2012).

Plaintiff premises his § 1983 claims on "retaliatory conduct by law enforcement and other Scottsdale employees and agents," and alleges that "he was prosecuted criminally with no evidence to support the charges, with an unconstitutional motive, and without probable cause, equal protection or due process in an attempt to chill Plaintiff's free speech, and to intimidate, harass, and exact revenge for prior exercises of free speech and assembly in Scottsdale." (Doc. 5 ¶ 163). Defendants point out that Plaintiff's First Amended Complaint makes "no attempt to actually indicate what policy or practice is the purported source of Mr. Stuart's injury," but simply states a "formulaic recitation of the elements of *Monell* liability." (Doc. 158 at 13). The Court agrees; indeed, Plaintiff "concedes that the complaint does not set forth the contents of the official policies [and] [t]hus, the first basis for municipal liability is not satisfied." (Doc. 161 at 17). Count Nine fails to identify any plausible theory of how the challenged constitutional violations arose under a municipal "policy or custom."

### ii. Failure to Train

To allege municipal liability under § 1983 for deficient training, Plaintiff must allege: (1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers. . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Under this standard, [Plaintiff] must allege facts to show that the [Defendants] disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal]

employees to violate citizens' constitutional rights." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (quotation marks omitted).

Plaintiff's FAC alleges that the City of Scottsdale, its Mayor, City Council Members, City Attorney, and Chief of Police, "were deliberate and callously indifferent to Plaintiffs in training (or failing to train) their officers, agents, and employees in (among other things and without limitation): The appropriate, lawful and constitutional policies, procedures, and protocols." (Doc. 5 ¶ 157). He further alleges that these Defendants "knew and should have known that unconstitutional policies, practices, customs, and training existed with respect to the screening, hiring, training, retaining, and supervision of officers, employees, and agents who have responsibility for the investigation, processing, handling, and management of civil and/or criminal investigations and prosecutions in their control, yet failed to properly address them and/or failed to establish and implement appropriate policies, procedures, protocols, and training to remedy them." (*Id.* ¶ 160).

These allegations of omissive conduct are insufficient to state a claim for municipal liability. Plaintiff alleges that the employees were not trained, but fails to identify the generally-referenced "appropriate, lawful and constitutional policies, procedures, and protocols" (Doc. 5 ¶ 157) on which they were not trained. Thus, the Defendants have no notice of how to defend against this claim. Nor does Plaintiff sufficiently allege deliberate indifference, an essential element of municipal liability under a failure to train theory. Plaintiff does not allege that the City "disregarded the known or obvious consequence that a *particular omission* in [its] training program would cause [municipal] employees to violate citizens' constitutional rights." *Flores*, 758 F.3d at 1159 (internal quotations omitted) (emphasis added). "[W]ithout identifying the training and hiring practices, how those practices were deficient, and without an identification of the obviousness of the risk involved, the Court cannot determine if a plausible claim is made for deliberately indifferent conduct." *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1150 (E.D. Cal. 2009). The claim is also insufficient to the extent the it is predicated on Plaintiff's alleged unlawful arrest. Specifically, the FAC does not allege a pattern of similar violations—

- 14 -

namely, of officers unlawfully arresting people in retaliation for exercising their First Amendment rights. *See Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 932 (9th Cir. 2001) ("[N]or can [municipal] liability be predicated on the isolated sporadic events. . . ."); *Booke v. Cty. of Fresno*, 98 F.Supp.3d 1103, 1128 (E.D. Cal. 2015) ("[A] plaintiff generally must show other instances of peace officers violating constitutional rights in order to show deliberately indifferent training."). Similarly, Ninth Circuit precedent suggests that an allegation that a city has failed to train its officers on probable cause or arrest procedures cannot support a § 1983 claim. *Flores*, 758 F.3d at 1159; *McFarland v. City of Clovis*, 163 F.Supp.3d 798, 806 (E.D. Cal. 2016) ("Alleging that training [for arrest procedures] is 'deficient' or 'inadequate' without identifying a specific inadequacy is conclusory and does not support a plausible claim.") (citing *Young*, 687 F.Supp.2d at 1149). As Plaintiff alleges no specific shortcomings in the training of City police officers or facts that might place the City on notice that constitutional deprivations were likely to occur, he has not adequately pled a § 1983 claim against the City for failure to train.

### iii. Ratification

A local government may also be held liable under § 1983 on a ratification theory. In such scenarios, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "There must, however, be evidence of a conscious, affirmative choice" on the part of the authorized policymaker. *Gillette*, 979 F.2d at 1347. "A local government can be held liable under § 1983 only where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Clouthier*, 591 F.3d at 1250 (internal quotations and citations omitted).

Aside from alleging that individual Defendants Scottsdale Mayor, Chief of Police, individual City Council members, and the City Attorney are "official policy maker[s]", the FAC is devoid of any allegations that would attach liability under this third scenario.

Because Plaintiff has failed to state a viable *Monell* claim, Count Nine will be dismissed in its entirety.

### 3. Leave to Amend

Having determined that Count Nine shall be dismissed because Plaintiff has failed to state a viable *Monell* claim, the issue becomes whether to grant leave to amend this Count. Plaintiff asks for leave to amend Count Nine in his Response to the Renewed Motion to Dismiss, but does not identify what amendments would save his claims. This makes it difficult for the Court to assess whether his claims would be plausible or whether any proposed amendments would be futile, as Defendants argue.

Under Rule 15(a), leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Furthermore, the Court "has a duty to ensure that *pro se* litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith, or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

This case was initiated by Plaintiff in 2017. Plaintiff has repeatedly offered deficient claims for this Court's review. He has twice sought to cure the Court's noted deficiencies. Notably, the first time Plaintiff did so, he was represented by counsel (Doc. 129); the second, he was *pro se* (Doc. 147). Both times, his requests were denied because his proposed amendments were lengthy and prolix allegations that failed to comply

with Rule 8 of the Federal Rules of Civil Procedure and the Court's express instructions regarding those deficiencies. (*Id.*) As it did at the Rule 16 Scheduling Conference, the Court finds that allowing Plaintiff another opportunity to amend would cause significant prejudice to the Defendants. (Doc. 157 at 1 (stating "permitting Plaintiff to file a third motion seeking permission to file a second amended complaint would not be fruitful and would instead only serve to further delay resolution of his matter"). *See also Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("[t]he consideration of prejudice to the opposing party carries the greatest weight") (internal quotations omitted). The fact that Plaintiff has been provided with ample opportunities to correct the deficiencies in his FAC and he has been unable to do so weighs again granting him leave to amend yet again. *See Ferdik*, 963 F.2d at 1261 (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

Moreover, the Court finds that any amendments to Plaintiff's *Monell* claims would be futile. A state court judge has already concluded that Plaintiff's First Amendment rights were not violated when he was cited for hanging signs on public utility polices, an issue that Plaintiff litigated to a final judgment. (*See* Doc. 86-1, Ex. A&B; *see also* Doc. 161 at 11-12, stating "Plaintiff has already conceded that he cannot seek relief for the City Code § 18-9(g) conviction"). Issue preclusion would therefore foreclose any possibility of *Monell* liability predicated on this alleged constitutional violation. *See Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) ("[A] public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when the factfinder concludes that an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff."). There also can be no plausible claim of deficient training with regard to Plaintiff's alleged unlawful arrest during the Scottsdale City Council Meeting. That "a particular officer may be unsatisfactorily trained will not alone suffice

to fasten liability on the city," and "plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391; *Merritt*, 875 F.2d at 770. Thus, the fact that officers Cleary and Glenn may have arrested Plaintiff without probable cause alone does not show inadequate training for municipal liability. *See id.*

In light of the significant prejudice to Defendants if Plaintiff were allowed yet another opportunity to amend in this over three-year-old case, and the likely futility of Plaintiff's proposed amendments, the Court will dismiss Count Nine with prejudice. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (stating that the court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint").

### C. Conclusion

Based on the foregoing,

**IT IS ORDERED** lifting the stay previously placed on Counts One, Two, Three, Five, Nine, Fourteen, Fifteen, Seventeen, Eighteen, and Nineteen.

**IT IS FURTHER ORDERED** granting Defendants' Renewed Motion to Dismiss First Amended Complaint. (Doc. 158). All Counts of the FAC (Doc. 5) are dismissed, with prejudice.

**IT IS FURTHER ORDERED** the Court shall enter judgment accordingly and close this matter.

Dated this 16th day of March, 2021.

Honorable Diane J. Humetewa
United States District Judge