Scot L. Claus (#014999)
sclaus@dickinsonwright.com
Vail C. Cloar (#032011)
vcloar@dickinsonwright.com
Holly M. Zoe (#033333)
hzoe@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
(Firm Email: courtdocs@dickinsonwright.com)
**Attorneys for Defendants**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Stuart,<br><br>    Plaintiff,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>    Defendants. | Case No.: 2:17-cv-01848-DJH<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE QUALIFIED IMMUNITY**<br><br>(Oral Argument Requested) |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure as amended by this Court's Scheduling Order, Defendants Jim Lane, Bruce Washburn, Luis Santaella, Tom Cleary, and Jason Glenn (the "Defendants") request the Court enter summary judgment in their favor because the doctrine of qualified immunity shields these individual defendants from any liability in this matter. This Motion is made without prejudice to the ability of these same defendants from filing motions for summary judgment on any claims that may survive this Motion. This Motion is supported by the attached Memorandum of Points and Authorities which is incorporated by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     **INTRODUCTION**

This case arises out of a regular meeting of the Scottsdale City Council, which took place on February 7, 2017 (the "February 7 Meeting"). Mark Stuart attended that meeting with a plan to cause disruption, and in fact he did cause disruption. He refused to obey lawful orders of police officers, and he was ultimately arrested.

Mr. Stuart's only remaining claim against the individual Defendants is that the Defendants engaged in a "retaliatory arrest" of him for his exercise of lawful First Amendment activities. (*See* Doc. 178) However, as will be demonstrated below, Mr. Stuart cannot adduce admissible evidence that Mayor Lane, Bruce Washburn, Luis Santaella, or Officer Glenn participated in Mr. Stuart's arrest *at all*. And though Officer Cleary *did* place Mr. Stuart under arrest, he had probable cause to do so, which entitles Officer Cleary to qualified immunity as a matter of law. Finally, Mr. Stuart cannot identify any "clearly established authority" that prohibited the conduct that the individual Defendants actually engaged in.

II.     **FACTUAL BACKGROUND**

Prior to the February 7 Meeting, Mr. Stuart sent a copy of his prepared electioneering remarks to the City. The City Attorney at the time, Defendant Washburn,[1] informed Mr. Stuart that he would not be permitted to electioneer during the February 7 Meeting, because such activity violated Arizona law that prohibited the use of municipal resources for the purpose of influencing an election. (Washburn Declaration, attached hereto as Exhibit 1, at ¶¶ 4-6). Despite that warning, Mr. Stuart proceeded to attempt to electioneer during the February 7 Meeting, and was asked by Defendant Lane to desist. (See Arrest Record, attached hereto as Exhibit 2, at p. 5-6).

---

[1] Mr. Washburn retired from his position as City Attorney in 2019. *See generally*, *City of Scottsdale, Scottsdale City Council hires Sherry R. Scott as city attorney*, https://www.scottsdaleaz.gov/news/scottsdale-city-council-hires-sherry-r-scott-as-city-attorney (Oct. 4, 2019); *see also* Ex, 1 at ¶¶ 1-2).

- 2 -

Mayor Lane did not quibble with the "viewpoints" being expressed by Mr. Stuart. To be sure, Mayor Lane pointedly informed Mr. Stuart that it did not matter whether Mr. Stuart was advocating "for" or "against" any particular outcome: rather, Mayor Lane expressed to Mr. Stuart that the act of advocating for *any* outcome and the solicitation of ballot signatures to support that outcome could not be undertaken during the public comment period of the City Council meeting, because such conduct violated Arizona law. (Mayor Lane Declaration, attached hereto as Exhibit 3, at ¶¶ 4-8); Archived Video of Scottsdale Council Meeting https://scottsdale.granicus.com/player/clip/7853?view_id=106&redirect=true&h=4ac9d6393cb0f0e5e187305654cdd222 at 22:30 through 26:05).[2]

Mayor Lane was the presiding officer of the February 7 Meeting and he was acting as its parliamentarian. (*Id*. at ¶¶ 2-3). In that role, Mayor Lane attempted to inform Mr. Stuart that he was welcome to discuss any matter he wished, and express any viewpoint he wished, so long as the matter was within the jurisdiction of the City Council. (*Id*. at ¶ 7). Mr. Stuart repeatedly and belligerently interrupted Mayor Lane, attempted to talk over him, and refused to confine his remarks to those properly within the jurisdiction of the City Council. (*Id*. at ¶ 8). For that reason, Mayor Lane decided (and announced) that Mr. Stuart was causing a disruption to the proceedings. (*Id*. at ¶ 9). For these reasons, Mayor Lane asked Mr. Stuart to desist and yield the podium. (*Id*.) Mr. Stuart refused. (*Id*. at ¶ 10).

Police General Order 2014 is entitled "Security at City Meetings" ("General Order 2014"), and was General Order in place on February 7, 2017 that provided guidelines to officers assigned the security detail at City meetings. (Glenn Declaration, Ex. 4 at ¶¶ 2-6). General Order 2014 advised that, as the Parliamentarian, the Mayor conducted meetings and retained the discretion for determining when a member of the public causes a disruption to the orderly conduct of a Council Meeting. (*Id*.) During the entirety of the February 2017 Meeting,

---

[2] Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the video as the contents of a government website whose authenticity is beyond dispute. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

Officers Cleary and Glenn were guided by (and complied with) General Order 2014 (*Id*. at ¶ 5; Officer Cleary Declaration, Exhibit 5, at ¶¶ 3-6).

Consistent with that Order, after Mayor Lane announced that Mr. Stuart had become disruptive to the meeting and Mr. Stuart refused to yield the podium, Officers Glenn and Cleary escorted Mr. Stuart from the City Council Chambers. (Ex. 5 at ¶¶ 6-8) Once outside the Council Chambers, Officer Cleary asked repeatedly instructed Mr. Stuart to sit on a bench while Officer Cleary wrote a citation. (*Id*. at ¶ 9). This was not a meaningless request—rather, Officers are instructed that their safety is far less imperiled, and flight is a reduced risk, when individuals to whom citations are being issued are seated. (*Id*. at ¶ 10). Mr. Stuart refused to sit despite repeated commands to do so. (*Id*. at ¶ 11). Although Officer Cleary initially intended only to issue a civil citation to Mr. Stuart, that changed when Mr. Stuart obdurately refused to heed repeated lawful orders. Accordingly, he was handcuffed and cited for failure to obey a police officer and for trespassing. (*Id*. ¶¶ 12-15, 17-18). Mr. Stuart was taken to the City jail for processing, and released. (*Id.* ¶13).

As the Declarations of Mayor Lane, Bruce Washburn, and Luis Santaella establish, they did not instruct Officer Cleary to arrest Mr. Stuart; they did not ask Officer Cleary to arrest Mr. Stuart; and they *did not know* that Mr. Stuart *had* been arrested until after that arrest had been effectuated. (Ex. 1. at ¶¶ 7, 14-15, Ex. 3 at ¶¶ 12-14, Santaella Dec., Ex. 6, at ¶¶ 2-4). Nor was Mr. Stuart even asked to desist and yield the podium for having engaged in any protected First Amendment Activity. Instead, Mayor Lane asked Mr. Stuart to yield the podium because he persisted engaging in electioneering activity that Mayor Lane in good faith believed (and still believes) constituted unlawful activity under Arizona law, *and* because Mr. Stuart caused a significant disruption to the orderly conduct of the February 2017 Meeting. (Ex. 3 at ¶¶ 7-11).

Mr. Stuart was subsequently prosecuted for criminal trespassing and failure to obey a peace officer for his conduct during the February 7 Meeting (the "Criminal Case"). (*See* Doc.

86 at 5–6.). During those proceedings, Mr. Stuart sought to disqualify certain judges from presiding over his prosecutions. In rejecting his challenges, an Arizona court of competent jurisdiction concluded:

> The Court concludes that the City of Scottsdale **did not violate the Defendant's First Amendment Rights** when it prevented the Defendant from presenting information during the public comment period of a Scottsdale City Council Meeting . . . . Here, the decision to limit the Defendants presentation was within the Council's discretion . . . because the Defendant **very clearly intended to highjack the public comment period** to petition for signatures and to present numerous materials on topics unrelated to the jurisdiction or, or intended to harass, the Scottsdale City Council.

(*See* State Court Order, attached as Exhibit 7 at pp. 2-3 (emphasis added)).

Mr. Stuart was ultimately ***convicted*** of failure to obey a police officer. That conviction was upheld on appeal to the Arizona Superior Court. That affirmance was upheld by the Arizona Court of Appeals. The Arizona Supreme Court rejected Mr. Stuart's Petition for Review, and on January 9, 2023, the United States Supreme Court rejected Mr. Stuart's Petition for Writ of Certiorari. (*See* Denial of Writ of Certiorari, attached as Exhibit 8).

### III. ARGUMENT.

#### A. THE PURPOSE OF QUALIFIED IMMUNITY.

The doctrine of qualified immunity protects "governmental officials performing discretionary functions… from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields and official *even if* the conduct resulted from "a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., Dissenting)). To ensure that government employees can act without fear of civil liability, the qualified immunity doctrine protects "all but the plainly incompetent or those who *knowingly violate the law*." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Accordingly, if "officers of reasonable competence could

- 5 -

disagree on the issue (of whether a chosen course of action is constitutional), immunity should be recognized." *Id*.

The doctrine of qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, it is *intended* to shield public officials from the "burdens of litigation." For that reason, for nearly 40 years, the Supreme Court has admonished district courts to decide whether qualified immunity is available "at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987) (citing *Harlow*, 457 U.S. at 818). Furthermore, in *Pearson*, the Supreme Court recognized that defendants should be permitted specifically to have the application of qualified immunity decided in an early, focused summary judgment proceeding, because any other procedure would "disserve[s] the purpose of qualified immunity" and force the defendants to "to endure additional burdens of suit—such as the costs of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily." *Pearson*, 555 U.S. at 237.

**B.     THE REQUISITE QUALIFIED IMMUNITY ANALYSIS.**

In determining whether qualified immunity applies, this Court is required to apply a two-pronged inquiry, but need not apply either of the prongs before the other.  Stated simply, the court must determine whether the "officer's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232; *see also Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009).  To determine the existence of a "violation," the court must also determine if the purported constitutional right at issue was "clearly established in light of the specific context of the case" at the time of the events in question. *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (*en banc*).  And, while the question of a violation *may* involve a question of fact, whether a right was "clearly established" is "a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).

"Once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000); *see also Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.") (citation omitted). The purportedly "clearly established" right must be identified with specificity, and broad assertions of constitutional rights in general will not suffice. *See, e.g.*, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Indeed, the Supreme Court has 'repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *San Francisco v. Sheehan*, 575 U.S. 600, 612 (2015)).Here, Mr. Stuart will be unable to meet his burden of demonstrating *either* the existence of a clearly established law that applied to the "specific context of the case" or that any individual defendant violated a specific, clearly established constitutional right. *Id*. For that reason, the Court should conclude that the individual defendants are qualifiedly immune from suit and enter summary judgment in their favor.

      **1.**      **No Clearly Established Law Proscribed the Individual Defendants' Conduct.**

Under the "clearly established" prong of the qualified immunity analysis, the seminal question for the Court is whether any authority existed as February 7, 2017 that proscribed the conduct of Bruce Washburn, Luis Santaella, Mayor Lane, or Officers Glenn and Cleary.

**A. Bruce Washburn**

Mr. Washburn's Declaration establishes that his contact with Mr. Stuart was completed prior to the February Meeting. (Ex. 1. at ¶¶ 3-7). Prior to that meeting, Mr. Washburn authored a letter to Mr. Stuart explaining the City's interpretation of State statutes related to electioneering and the use of municipal resources to influence the outcome of elections. (*Id*. at ¶¶ 5-7). In other words, Mr. Washburn was actively trying to *prevent* the situation that occurred during the February Meeting. Mr. Washburn did not interact with Mr. Stuart at the

- 7 -

February Meeting. (*Id.* ¶ 7). Mr. Washburn did not, as City Attorney, play any role in influencing the discretion of police officers to make arrests. (*Id*. at ¶¶ 7, 14-15).

Mr. Washburn did nothing to participate in Mr. Stuart's arrest at all, and as a matter of historic fact is entitled to qualified immunity. As of February 7, 2017, *no* binding authority established the impropriety of Mr. Washburn's conduct. To the contrary, his conduct was manifestly proper: he explained the City's interpretation of Arizona statutes, which is part of his role as City Attorney, in an attempt to avoid the issues that arose. And, although Mr. Washburn's interpretation of state law was correct, qualified immunity does not turn on the correctness of his legal analysis. Indeed, the doctrine of qualified immunity *exists* so that Mr. Washburn could fulfill his governmental functions and make a "mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. 231.

Of course, Mr. Washburn was not wrong. First, as a state court of competent jurisdiction has already determined, limiting Mr. Stuart's electioneering was proper because it was outside the jurisdiction of the City Council, and limiting him did not implicate the First Amendment. *See* Section II, *supra.* A simple application of the doctrines of issue preclusion should lead this Court to determine that, as a matter of law, no "clearly established" authority prohibited Mr. Washburn's actual conduct. *See Corbett v. ManorCare of Am., Inc.*, 146 P.3d 1027, 1033 (App. 2006). [3](Issue preclusion "applies when the issue sought to be precluded is the same as that involved in the prior proceeding, the issue was actually litigated in the prior proceeding, the issue was determined by a valid and final judgment on the merits, and the determination was essential to the final judgment."). Second, Mr. Washburn accurately explained to Mr. Stuart that A.R.S. § 38-431.01(H) permitted the Scottsdale City Council to "make an open call to the public during a public meeting, subject to reasonable time, place and manner restrictions, to allow individuals to address the public body on any issue *within the*

---

[3] The "law of the State in which the judgment was rendered" determines the preclusive effect of a state law judgment. *See, e.g.*, *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

*jurisdiction of the public body.*" (Emphasis added). Mr. Washburn then explained that because A.R.S. § 9-500.14 prohibited the City from using "its resources, including the use or expenditure of monies, accounts, credit, ***facilities***, vehicles, postage, telecommunications, computer hardware and software, web pages, personnel, ***equipment***, materials, ***buildings or any other thing of value of the city or town***, for the purpose of influencing the outcomes of elections" (emphasis added), any public comment by Mr. Stuart using municipal facilities, equipment, and building to influence the ballot initiative, ***whether for or against***, was both unlawful and outside "the jurisdiction of" Scottsdale. *Id*.

Mr. Stuart cannot identify any clearly established law that proscribed Mr. Washburn's conduct. For this reason, Mr. Washburn is entitled to qualified immunity.

### B. Luis Santaella

In February 2017, Luis Santaella was a Senior Assistant City Attorney whose assignments included advising police officers, firefighters, code enforcement, and intergovernmental relations. (Ex. 6 at ¶ 1). Mr. Santaella engaged in *no* conduct at the February 2017 Meeting. (*Id*. at ¶ 1-4) He did not *ever* ask or instruct any officer to arrest Mr. Stuart. (*Id*. at ¶ 2).

As of February 7, 2017, no binding authority established the impropriety of any conduct Mr. Santaella actually engaged in. For this reason alone, Mr. Santaella is entitled to qualified immunity.

### C. Mayor Lane

As of February 7, 2017, it was far from "clearly established" that a presiding officer of a municipal council meeting could not exercise discretion to eject an attendee for disturbing or impeding a meeting. To be sure, the prevailing authority in the Ninth Circuit stands precisely for the opposite proposition. It is axiomatic that the "public bodies may confine their meetings to specified subject matter." *See*, *e.g.*, *City of Madison Joint School District No. 8 v. Wisconsin Employee Relations Commission*, 429 U.S. 167, 175 n. 8 (1976). And the Ninth

Circuit has long-recognized that "the highly structured nature of city council and city board meetings makes them . . . highly regulated limited public fora or nonpublic fora," such that "limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be." *Kindt v. Santa Monica Rent Control Board*, 67 F.3d 266, 270-271 (9th Cir. 1995).

The legislative function of a city council meeting factors significantly into what the public may do and say during those proceedings, and what conduct can lawfully be prohibited as disruptive "[T]he nature of a Council meeting means that a speaker can become 'disruptive' in ways that would not meet the test of actual breach of the peace." *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). The presiding officer of such a meeting must be given "a great deal of discretion" to determine when a speaker is being disruptive, because the nature of disruption "is not mathematically determinable." *Id*. at 1426. For that reason, it was—and is— clearly established on February 7, 2017 that Mayor Lane could require Mr. Stuart to confine his remarks to those matters within the jurisdiction of the City Council; and when Mr. Stuart refused in a belligerent, abrasive, abusive, and disruptive manner, Mayor Lane had the authority to require Mr. Stuart to desist. *Id*. at 1425 ("[T]he Council does not violate the first amendment when it restricts public speakers to the subject at hand."); *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1131 (D. Or. 2015) ("Like judges in their courtrooms, Mayor Hales has the continuing ability to maintain decorum in Council meetings by ordering disruptive individual immediately to leave the City Council Chambers."); *Dehne v. City of Reno*, 222 F. App'x 560, 562 (9th Cir. 2007) (removal of an individual from a city council meeting does not eliminate the presiding officer's qualified immunity if that individual was "sufficiently disruptive and is not removed because of his or her views"); *see also Ribakoff v. City of Long Beach*, 27 Cal. App. 5th 150, 174 (2018), as modified (September 13, 2018) ("[C]ity council meetings… are the focus of highly important individual and governmental interests."). Indeed, pursuant to

City Resolution 10089, Mayor Lane had the *responsibility* to "preserve decorum and decide all questions of order." (*See* City Council Resolution 10089, attached as Ex. 9, at § 10.1, p. 11).

In this case, Mr. Stuart was apprised *prior to the meeting* that state law *prevented* the Council from entertaining any topics that was beyond the ambit of *its* jurisdiction. He was then apprised of that by Mayor Lane, who relied upon the City Attorney's explication of A.R.S. §§ 9-500.14 and 38-431.01(H). (Ex. 3 at ¶¶ 4-5). Mayor Lane informed him that because state law prohibits electioneering in any forum at which municipal resources are devoted, Mr. Stuart was specifically apprised that his attempts to solicit ballot signatures were outside the jurisdiction of the City Council and an improper subject for the public comment portion of a City Council meeting. (*Id.*; *see also* Archived Video of Scottsdale Council Meeting https://scottsdale.granicus.com/player/clip/7853?view_id=106&redirect=true&h=4ac9d6393cb0f0e5e187305654cdd222 at 22:30 through 26:05). Again, it is wholly immaterial in the qualified immunity context to debate whether Mayor Lane was *correct* about his reliance on an interpretation of the law and the exercise of his mandated role to preserve order. (Ex. 8). Mayor Lane was entitled to make "mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. 231. Of course, Mayor Lane was not incorrect—Mark Stuart was correctly apprised of Arizona law.

Rather than comply with Arizona law, Mr. Stuart decided to willfully disrupt the City Council meeting. Despite being asked politely several times to refrain from engaging in the conduct specifically prohibited by state law, Mr. Stuart repeatedly interrupted the mayor, shouted over him, and insisted on engaging in unlawful conduct. (*Id*. at ¶ 8).

As a result, was wholly within the bounds of "clearly established law" for Mayor Lane to instruct the clerk to turn off the microphone and ask that security officers stationed in the

- 11 -
4869-8729-3771 v5 [53387-7]

Council Chambers to escort Mr. Stuart from the podium.[4] (*Id*. at ¶¶ 9-11; Ex. 8, p. 11). For this reason, Mayor Lane is qualifiedly immune from Mr. Stuart's only claim against him.

### D. Officer Glenn

A right is only "clearly established" if "a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006). In this case, Officer Glenn was in attendance at the February 2017 Meeting, and he "approached Mr. Stuart," but Officer Glenn *did not* detain Mr. Stuart or place him under arrest. Instead, Officer Glenn, following the General Order, directed Mr. Stuart to "leave the podium and he stated he would not leave." (Exhibit 2 at Glenn Supplement, p. 2; Ex. 4 at ¶¶ 6-7).

Mr. Stuart can point to no "clearly established" authority that proscribed Officer Glenn's limited conduct. To the contrary, in an analogous case, an officer was *afforded* qualified immunity when he *arrested* a speaker at a council meeting violated "Rules of Decorum" and members of the city council directed that the speaker be ejected "from the Council chambers." *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010). Similarly, in *Acosta v. City of Costa Mesa*, 718 F.3d 800, 825-826 (9th Cir. 2013), the Ninth Circuit Court of Appeals confirmed that officers had probable cause to arrest the plaintiff for "disorderly, insolent or disruptive behavior" at a city council meeting where the plaintiff defied the mayor's directive for plaintiff to not ask supporters to stand and refused to leave and continued to speak after the mayor asked the speaker to cease speaking.

Here, of course, Officer Glenn did not effectuate an arrest. Here merely requested that Mr. Stuart cede the podium. (Ex. 4 at ¶¶ 6-12) No "clearly established law" proscribed such conduct. For this reason, Officer Glenn is entitled to qualified immunity.

---

[4] While "clearly established law" authorized Mayor Lane to eject Mr. Stuart from the Council Chambers, *Walsh*, 154 F. Supp. at 1131, his conduct was far more restrained. He simply asked the attending officers to "escort Mr. Stuart from the podium." Exhibit 2 at p. 6.

- 12 -

### E. Officer Cleary

The United States Supreme Court has clarified that the existence of "probable cause should generally defeat a retaliatory arrest claim," but that "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). Here, Mr. Stuart has not alleged as part of Count Two that Officer Clear has ever had "probable cause to make arrests," but has "typically exercised [his] discretion not to do so." *Id*. Accordingly, the existence of probable cause for Mr. Stuart's arrest should entitle Officer Cleary to qualified immunity as a matter of law.

Probable cause "exists where, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that this suspect has committed a crime." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003). Under the Fourth Amendment, if the arresting officers had probable cause to arrest, their subjective motivations for the arrest are immaterial. *Whren v. United States*, 517 U.S. 806, 813-815 (1996).

As noted above, the Ninth Circuit has repeatedly recognized that officers are acting within the bounds of clearly established law when removing a disruptive speaker from Council Chambers, especially when requested to do so by the presiding officer or members of the Council. *Norse*, 629 F.3d at 978; *Acosta*, 718 F.3d at 825-826.

Critically, the adjudication of guilt by a state court establishes the existence of probable cause. Adopting *Hartman*'s no-probable-cause rule in this closely related context addresses those familiar concerns. Absent such a showing, a retaliatory arrest claim fails. Because Mr. Stuart refused to voluntarily cede the podium (by this time, the disruption had persisted long beyond the two minutes permitted for each public commenter), Officers Glen and Cleary acted wholly within the bounds of clearly established law to request that Mr. Stuart leave the podium.

4869-8729-3771 v5 [53387-7]

To be sure, Officer Cleary had no intent to arrest Mr. Stuart or take him to jail based on anything that happened inside the City Council Chambers. Instead, Officer Cleary only handcuffed Mr. Stuart when he repeatedly and defiantly refused to comply with lawful orders of a police officer. (Ex. 5. at ¶¶ 7-18). For this reason—and for this reason only—Officer Cleary placed Mr. Stuart under arrest. (*Id*.). It had nothing to do with his speech; it had everything to do with his unlawful behavior. (*Id*.).

### 2. The Individual Defendants did not Violate a Clearly Established Right.

"Liability under §1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (cert. denied, 525 U.S. 1154 (1999)). Absent such "personal involvement," a defendant cannot be deemed to have "violated" a "clearly established" constitutional right. *Id*. Therefore, pursuant to *Pearson*, any defendant who had no "personal involvement" in the arrest of Mr. Stuart must be shielded from the burdens of this litigation and liability under the doctrine of qualified immunity. *Id*.

Here, the declarations of Mayor Lane, Bruce Washburn, and Luis Santaella demonstrate that they had *zero* "personal involvement" in the arrest of Mr. Stuart. (Ex. 1, ¶ 14; Ex. 3, ¶¶ 10-14; Ex. 6, ¶¶ 2-4). To be sure, Mayor Lane, Bruce Washburn, and Luis Santaella have established under oath that they were not even aware of Mr. Stuart's arrest until *after* it had occurred. (Ex. 1, ¶ 15; Ex. 3, ¶ 14; Ex. 6, ¶ 4).

Although Mr. Stuart has alleged that Mayor Lane "participated in" Mr. Stuart's arrests, that allegation is flatly false. Mayor Lane did not ask the Officers to arrest Mr. Stuart, and did not know that Mr. Stuart had been arrested until *after* that arrest had occurred. (Ex. 3 at ¶¶ 12-14). He did not even ask that Mr. Stuart be ejected from the Chambers. He merely asked that the Officers "escort Mr. Stuart from the podium." (*Id*. at ¶ 11). Mayor Lane's conduct was not vindictive or motivated by an intent to retaliate against speech, but rather to simply end the disruption at the meeting he was running so that official business could resume. (Ex. 3. at ¶¶ 9-11).

- 14 -

Similarly, though the operative pleading *alleges* that Bruce Washburn "participated in" Mr. Stuart's arrest, that allegation is false. Mr. Washburn played no role in Mr. Stuart's arrest. He did not ask any officer to arrest Mr. Stuart. (Ex. 1 at ¶ 14). He had no idea that it had even happened until after it had occurred. (*Id*. at ¶¶ 14-15).

In the same vein, though the operative pleading *alleges* that Luis Santaella "participated" in Mr. Stuart's arrest, that allegation is untrue. Mr. Santaella did not know that Mr. Stuart had been arrested until *after* the arrest had occurred. (Ex. 6. at ¶ 4). Mr. Santaella played zero role in Mr. Stuart's arrest. (*Id*. at ¶¶ 1-4).

Even Officer Glenn played no role in Mr. Stuart's arrest. And, Officer Glenn did not place Mr. Stuart in handcuffs. Officer Glenn was with Officer Cleary at the time of the arrest, but Officer Cleary is the only officer that placed Mr. Stuart under arrest. (Exhibit 2 at 5-6; Ex. 4 at ¶ 12-13).However, as noted above, Officer Cleary did not violate Mr. Stuart's First Amendment Rights. Officer Cleary's Declaration demonstrates that he escorted Mr. Stuart not because of any viewpoint Mr. Stuart expressed, but because: 1) the Mayor had determined and declared that Mr. Stuart was being disruptive; and 2) Mr. Stuart refused to obey his lawful orders to cede the podium. Officer Cleary's Declaration establishes that he placed Mr. Stuart in handcuffs outside the City Council Chambers for a reason wholly unrelated to Mr. Stuart's speech activities—because Mr. Stuart repeatedly refused to obey Officer Cleary's lawful orders. (*See* Exhibit 2 at 4-6, Ex. 5 at ¶¶ 6-17). There is no constitutional right to disobey a police officer.

## IV.   CONCLUSION

The foregoing individual defendants are entitled to qualified immunity. However, should the Court disagree, they are also entitled to seek summary judgment on the substantive deficiencies in Mr. Stuart's claims. Because each of the individual defendants is entitled to qualified immunity, judgment should be entered in their favor on Mr. Stuart's only remaining claim against them (Count 2).

- 15 -

1       RESPECTFULLY SUBMITTED this 23rd day of January, 2023.

2                               DICKINSON WRIGHT, PLLC

3                           By: */s/ Scot L. Claus*
                                Scot L. Claus
                                Vail C. Cloar
                                Holly M. Zoe
                                1850 N. Central Avenue, Suite 1400
                                Phoenix, Arizona 85004
                                *Attorneys for Defendants*

- 16 -

4869-8729-3771 v5 [53387-7]

# CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Sheila Rath*

4869-8729-3771 v5 [53387-7]

## EXHIBIT TABLE OF CONTENTS

Bruce Washburn Declaration ........................................................................... Exhibit 1

Mark Stuart 2/7/2017 Arrest Record and Supplements ................................... Exhibit 2

Mayor Lane Declaration .................................................................................. Exhibit 3

Officer Jason Glenn Declaration ..................................................................... Exhibit 4

Officer Tom Cleary Declaration ...................................................................... Exhibit 5

Luis Santaella Declaration ............................................................................... Exhibit 6

Order on Motion for Disqualification ............................................................. Exhibit 7

Denial of Petition for Writ of Certiorari ......................................................... Exhibit 8

City Council Resolution 10089 ....................................................................... Exhibit 9