Scot L. Claus (#014999)
Vail C. Cloar (#032011)
Holly M. Zoe (#033333)
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
[Firm Email: courtdocs@dickinsonwright.com]
***Attorneys for Defendants***

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Stuart,<br><br>                    Plaintiff,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>                    Defendants. | Case No.: 2:17-cv-01848-DJH (JZB)<br><br>**DEFENDANTS' SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT** |

Pursuant to this Court's Order (Doc. 267), Defendants supplement their pending Motion for Summary Judgment (Doc. 251). Rulings made by this Court preclude Mr. Stuart from challenging that Mayor Lane and Bruce Washburn are entitled to qualified immunity. Similarly, the Court has already ruled that the City did not approve or ratify any constitutional violations sufficient to support a *Monell* claim. Furthermore, the doctrine of issue preclusion prevents Mr. Stuart from challenging rulings made in the state criminal proceeding that: 1) Mr. Stuart was not engaged in constitutionally protected speech; 2) probable cause existed to support his arrest; and 3) the defendants did not infringe Mr. Stuart's constitutional rights.

This Motion is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

### A.   Initiation of *Stuart II* before Judge Teilborg

Three years after filing this case in 2017, Mr. Stuart filed another lawsuit in this Court in 2020, presided over by Judge Teilborg (2:20-cv-00755-JAT) ("*Stuart II*"). In *Stuart II*, Mr. Stuart (joined by his wife, Virginia) filed a second amended complaint ("SAC"), which remained the operative pleading throughout that litigation. (*Stuart II*, Doc. 93). In Count Three of the SAC, Paragraph 132, Mr. Stuart alleged:

> In February 2017, **Washburn, Lane and Scottsdale caused Mark Stuart to be arrested and prohibited from speaking at open public comment in a city council meeting about unconstitutional speech practices utilized by Scottsdale**.  Scottsdale actions against Mark Stuart had already been ruled unconstitutional as unlawful prior restraint on speech and unlawful content-based restrictions on speech by Arizona and US Supreme Courts many years prior to 2017.

(*Stuart II*, Doc. 93, ¶132 (emphasis added).)  Mr. Stuart further alleged that "arresting [him] and prohibiting him from speaking" at the February 7, 2017 Council Meeting violated his constitutional rights. (*Id*. at ¶ 133.) Indeed, Mr. Stuart alleged in *Stuart II* that Mayor Lane and Bruce Washburn "condoned and sanctioned a policy and custom of retaliation using city resources against those like the Stuarts that exercise their federal constitutional rights vis-à-vis the City of Scottsdale," and that through the conduct alleged in Paragraph 132, "violated Plaintiffs' constitutional rights."  (*Id*. at ¶¶ 152, 154, 158.)

On August 19, 2021, Judge Teilborg correctly concluded that Mayor Lane and Bruce Washburn were entitled to qualified immunity for the claims articulated in Count Three of the SAC. (*Stuart II*, Doc. 119.) On March 9, 2022, Judge Teilborg dismissed *all claims* in the SAC, which necessarily included the claims subsumed within Count III that the defendants "violated" his "constitutional rights" by purportedly "caus[ing] Mark Stuart to be arrested and prohibit[ing him] from speaking at open public comment in a city council meeting" on February 7, 2017. (*Stuart II*, Doc. 151.) Mr. Stuart appealed that decision to the Ninth Circuit

Court of Appeals, and on August 3, 2023, the Ninth Circuit affirmed dismissal in all respects. (*See* Memorandum Decision, attached as Exhibit 1.)

**B.     Mr. Stuart's Conviction in state court**

In addition to the orders and judgments in *Stuart II*, Mr. Stuart was convicted by an Arizona state court. During the course of that prosecution, Mr. Stuart repeatedly and vigorously urged he was engaged in protected activity. In response to these arguments, the state court explicitly determined:

> The Court concludes that **the City of Scottsdale did not violate the Defendant's First Amendment rights when it prevented the Defendant from presenting information during the public comment period of a Scottsdale City Council meeting**. While public meeting and comment statutes are usually interpreted in a broad fashion to realize the legislature's intent to encourage members of the public to become informed of, and lend a voice to, governmental activity, these statutes are subject to reasonable limitations implemented to encourage the efficiency, productivity, and order of the open meeting in the form of reasonable time, place, and manner restrictions.

> Here, **the decision to limit the Defendant's presentation was within the Council's discretion as an exercise of the time, place, and manner restrictions sanctioned by the Constitution**, because the Defendant very clearly intended to highjack the public comment period to petition for signatures and to present numerous materials on topics either unrelated to the jurisdiction of, or intended to harass, the Scottsdale City Council.

> . . .

> The City Council **did not violate Mr. Stuart's First Amendment rights when the Council prevented him from speaking in a manner that attempted to harass the Council and highjack the meeting by electioneering** in violation of reasonable time, place, and manner restrictions.

> . . .

> In the instant case, the Defendant attempted to present numerous PowerPoints on the First Amendment with the assumed purpose of challenging the body's authority to implement time, place, and manner restrictions by presenting a PowerPoint declaring that, "No court has ever upheld a government restriction on core political speech in a traditional public forum." In context, **there is sufficient evidence to support this**

- 3 -

1
2

**Court's conclusion that the inclusion of the First Amendment discussion was intended to harass, taunt, and disrupt the City Council in violation of the statute's time, place, and manner restrictions**.

3

(State court Order dated April 12, 2018 (emphasis added), attached as Exhibit 2 at 4-7).

4
5

Mr. Stuart also repeatedly challenged the existence of "probable cause."[1] The state court rebuffed those challenges. (*E.g.*, 4/16/19 Ruling, attached as Ex. 7, at 2; 8/7/19 Ruling,

6
7

attached as Ex. 8, at 1). Ultimately, Mr. Stuart was convicted. (Verdict, attached as Ex. 9).

8

Mr. Stuart appealed, and the Arizona Court of Appeals rejected Mr. Stuart's arguments and

9

affirmed his conviction; Mr. Stuart's petition for review to the Arizona Supreme Court was

10

subsequently denied. *State v. Stuart*, 1 CA-CR 20-0620, 2021 WL 5571772, at *1 (App. Nov.

11

30, 2021), *review denied* (June 3, 2022). Though Mr. Stuart sought review again, the United

12

States Supreme Court denied Mr. Stuart's Petition for Writ of Certiorari on January 9, 2023.

13

143 S. Ct. 573 (2023). As a result of having exhausted his appeal opportunities (including to

the United States Supreme Court), the state court rulings are now unquestionably final.

14

**II.     ARGUMENT**

15

   **A.     Judge Teilborg's qualified immunity determination is dispositive.**

16

The doctrines of claim and issue preclusion "serve[] to promote judicial efficiency by

17

preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications."

18

*Dodd v. Hood River Cnty.*, 136 F.3d 1219, 1224–25 (9th Cir. 1998). "Claim preclusion 'treats

19

a judgment, once rendered, as the full measure of relief to be accorded between the same

20

parties on the same claim or cause of action.'" *Robi v. Five Platters, Inc*. 838 F.2d 318, 321–

21

22 (9th Cir. 1988) (citing *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d

22

530, 535 (5th Cir. 1978)) (cleaned up). The doctrine "prevents litigation of all grounds for, or

23
24

---

[1] Mr. Stuart challenged the existence of "probable cause" in multiple filings. He filed a motion
25 to dismiss on probable cause grounds (Ex. 3), another motion to dismiss in which he raised probable cause arguments (Excerpts attached as Ex. 4); a *third* motion to dismiss in which he
26 argued the lack of probable cause (Excerpts attached as Ex. 5); and yet another motion challenging the existence of probable cause (Excerpts attached as Ex. 6).

defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)) (cleaned up).

In federal question cases, this Court applies the "transaction test" to determine the preclusive effect of a final judgment. That test directs the court to examine four criteria: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Costantini v. Trans World Airlines*, 630 F2.d 1199, 1201–02 (9th Cir. 1982).

Here, all four criteria are met. Mr. Stuart asserted in Count Three of his SAC in *Stuart II* the claim that his "constitutional rights" had been infringed due to his "arrest" and purported "prohibit[tion] from speaking at open public comment" at the February 7, 2017 Council meeting. *Id*. It cannot reasonably be disputed that the same facts and evidence are at issue in the present action. *Id*. Even if the allegations of the SAC left room for doubt as to their preclusive effect, Mr. Stuart eliminated such doubt by asserting in a sworn declaration that summary judgment should be denied in *Stuart II* because:

> Scottsdale arrested me in February 7, 2017 [sic] to prevent me from speaking at a City Council meeting about city policies and actions that violated peoples [sic] free-speech rights. . . I stopped exercising my free speech rights because of this harassment.

(*Stuart II*, Doc. 139-2, ¶ 26). Mr. Stuart further tried to create a genuine issue of material fact by asserting that the defendants had prevented him from "speaking in the City Council meeting" while he was purportedly "raising public awareness about this ballot initiative," which "culminated with the arrest."  (*Stuart II*, Doc. 139-8 at 1). Finally, it would "destroy" the Court's determination in *Stuart II* that Bruce Washburn and Mayor Lane are entitled to qualified immunity to strip them of that established immunity in this case.

1    Simply put, the judgment in *Stuart II* that "Defendants Lane, Washburn [and others]

2    are entitled to qualified immunity on all federal claims against them in their individual

3    capacities," (Doc. 119 at 11), is conclusive.[2] Mr. Stuart already tried to show unlawful

4    conduct by these individual defendants and, as succinctly stated by the Ninth Circuit: "There

5    was no material evidence that any of them had violated the Stuarts' clearly established

6    constitutional rights." (Ex. 1 at 3.) This Court should not permit Mr. Stuart to rehash the same

7    claims hoping to fare better this time.

8       **B.      Judge Teilborg's ruling is also dispositive on the *Monell* claim.**

9       As noted above, Mr. Stuart has already raised—and lost—the claim that, in connection

10   with the events of February 7, 2017, the City violated his constitutional rights pursuant to

11   *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Judge Teilborg

12   unequivocally rejected that claim for several reasons: (1) Mr. Washburn was not a "final

13   policy maker" because his decisions were always subject to review by the City Council; (2)

14   Mr. Stuart failed to show any constitutional deprivation; and (3) Mr. Stuart failed to show the

15   City had a pattern or practice of violating constitutional rights. (*Stuart II*, Doc. 151 at 8–9.)

16   Again, Mr. Stuart cannot simply re-litigate the same claims and issues *ad infinitum*.

17      Although Mr. Stuart may argue that he is asserting different claims, Mr. Stuart cannot

18   avoid the application of claim and issue preclusion because federal courts prohibit "claim

19   splitting"—attempting to reframe the same series of facts under different legal theories. *See*

20   Restatement (Second) of Judgments § 24. As a matter of law, Mr. Stuart's § 1983 "claim"

21   against the City is one unitary claim for purposes of res judicata—the various constitutional

22   rights he alleges were infringed are merely different theories of recovery that all could have

23   been brought in *Stuart II. See, e.g.*, *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d

24

25   [2] The fact that Mr. Stuart "actually litigated" his claim that Mayor Lane and Bruce Washburn
26   infringed his constitutional rights by purportedly prohibiting from speaking and causing his
     arrest, and a "judgment on the merits" was entered against him, also implicates the doctrine of
     issue preclusion. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

708, 714 (9th Cir. 2001) (explaining that retaliation and hostile work environment claims were merely theories of recovery that could have been raised in prior race discrimination suit); *Williams v. Moyer*, 9 Fed. App'x 324, 326 (6th Cir. 2001) (barring second § 1983 suit involving slightly different constitutional violations).

### C. The state court rulings are conclusive as to qualified immunity.

The Ninth Circuit has long observed that "federal courts must give to a state court judgment the same preclusive effect as will be given that judgment under the law of the state in which the judgment was rendered." *Scafidi v. Las Vegas Metro. Police Dept.*, 966 F.3d 960, 963 (9th Cir. 2020) (internal quotations omitted). Indeed, "as long as a litigant had a full and fair opportunity to litigate the issue," issue preclusion "based on state-court criminal proceedings applies to subsequent civil litigation under 42 U.S.C. §1983." *Id.* (citing *Allen v. McCurry*, 49 U.S. 90, 96 (1980)). This Court applies the issue preclusion rules of the forum issuing a judgment. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 485 (1982). Under Arizona and federal law, issue preclusion requires: (1) the issue to be actually litigated, (2) a full and fair opportunity to litigate the issue, (3) a final decision on the merits, (4) the issue was essential to the decision; and (5) identity of the parties. *See Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1073 ¶ 7 (App. 1999); *Campbell v. SZL Properties, Ltd.*, 62 P.3d 966, 968 (App. 2003); *Hydranautics,* 204 F.3d at 885.

Mr. Stuart's claims necessarily fail for two independent reasons in light of rulings in the criminal case. First, as a matter of logic and law, there can be no "First Amendment retaliation" for activity unprotected by the First Amendment. And the state court conclusively determined the "core issue" that Mr. Stuart *did not* have a First Amendment right to hijack the City Council meeting on February 7, 2017. (*E.g.*, Ex. 2 at 4-8, Exhibit 10 at 8-11). Mr. Stuart is not entitled to re-litigate that issue. Second, Mr. Stuart's First Amendment retaliation claim cannot stand in light of the state courts' conclusion that probable cause existed to arrest him.

### 1. Issue preclusion bars Mr. Stuart from asserting that he was engaged in protected activity and his claims must fail.

A Plaintiff urging a First Amendment retaliation claim under 42 U.S.C. § 1983 must plead and prove that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Here, Mr. Stuart cannot prevail on that claim because, he had a "full and fair opportunity to litigate the issue" as to whether or not the conduct of officers Glenn and Cleary, or any other City Official were unconstitutional. The state court determined, categorically, that the "City of Scottsdale *did not* violate the Defendant's First Amendment rights when it prevented the Defendant from presenting information during the public comment period" at the February 7, 2017 City Council Meeting. (Ex. 2 at 4). Furthermore, Mr. Stuart was *convicted* of failure to obey a police officer. This conviction implicates the issue of qualified immunity in this case, because to evade qualified immunity, Mr. Stuart must show the violation of a well-established constitutional right. The State court's determination that such violation did not exist precludes Mr. Stuart from making this essential showing.

Mr. Stuart also actively litigated the core issues underlying his claims in this case both before the state trial and appellate courts. Indeed, Mr. Stuart argued that "[t]he refusal to allow Stuart to speak at the city council meeting was an impermissible government-imposed prior restraint in violation of his right to speak under the United States and Arizona constitutions." (Record Appeal Ruling, attached hereto as Exhibit 10, at 8). Mr. Stuart further argued that Officers Glenn and Cleary acted "unlawful[ly]" in removing Mr. Stuart from the podium and subsequently arresting him. (*Id.*).

The state appellate court rejected these arguments entirely. First, the court observed the historic truth that "[o]nce at the meeting, Stuart chose only to try debating Lane about his right to speak in support of that initiative and, despite being allowed to speak on other

- 8 -

subjects, effectively chose not to attempt doing so before he was, in effect, ruled out of order." (*Id.* at n 9). After rejecting Mr. Stuart's fictive narrative, the court determined that the City and those acting on its behalf fully complied with the Constitution:

> The record here establishes that the refusal to allow Stuart to speak in support of his election initiative was driven exclusively by the limit that A.R.S. §38-431.01(H) imposes. **Other than Stuart's self-interested protests to the contrary, nothing in the record suggests that the city's desire to comply with applicable law was unreasonable. And, as explained above, the record also establishes that the refusal to allow Stuart to speak was not driven because of a disagreement with the substance of what Stuart wanted to say**.

(*Id.* at 11 (emphasis added)).

The state court further refused to question the propriety of Mr. Stuart's subsequent arrest. It reasoned:

> In short, at the moment Stuart refused to comply with what he was told to do, he **was not engaged in any constitutionally protected activity**. In those circumstances, he should have acceded to the police officer's instruction by sitting down on the bench and accepting a copy of the citation that was issued, while contesting the citation's validity in court later on.

(*Id.* at 14-15 (emphasis add)).

Because a court of competent jurisdiction has determined that Mr. Stuart had no constitutional right to remain at the podium, it is impossible for Mr. Stuart's claims to remain viable in light of those conclusions. Although Mr. Stuart has previously asserted that issue preclusion should not be applied by the Court due to the existence of appeals; that argument is no longer available. He has exhausted all appeal rights. The state court matter is concluded, and there is no basis for this Court to reach a different conclusion.

### 2.     The state courts' conclusion that probable cause existed is also fatal to Mr. Stuart's claims.

"The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).Thus, the presence of probable cause should generally defeat a claim for First Amendment retaliation.

1   *Id.* at 1727.[3] In the State court proceeding, Mr. Stuart "actually litigated" the issue of probable

2   cause multiple times. Indeed, he filed at least *four separate motions* challenging the existence

3   of probable cause. (*See* Exhibits 3-6). The State court rejected his challenges each time. (*See*

4   Exhibits 7-9). Mr. Stuart should not be permitted to once again make arguments that the state

5   court has already serially rejected. *Scafidi*, 966 F.3d at 963.

6        Instead, because Mr. Stuart's criminal case, he had a "full and fair opportunity to

7   litigate the issue" as to whether officers Glenn and Cleary had probable cause to effectuate an

8   arrest, this Court should give effect to the state court's determination that probable cause

9   existed. As a result, Mr. Stuart is unable to establish an essential element of his "retaliatory

10  arrest claim." *Nieves,* 139 S. Ct. at 1724. For this reason as well, the Court should conclude

11  that Mr. Stuart is precluded from challenging the conclusions necessary to establish that each

12  of the moving Defendants are entitled to qualified immunity.

13  **III.    CONCLUSION**

14       Judge Teilborg and the State court have already made claim and issue dispositive

15  rulings. Mr. Stuart attempts to take yet another bite at the same apple in this Court. But to

16  grant Mr. Stuart relief would require the Court to make rulings *entirely inconsistent* with those

17  made by Judge Teilborg and the State court—a result that the doctrines of claim and issue

18  preclusion are designed to avoid. The Court should refuse to entertain Mr. Stuart's gambit.

19  Instead, the Court should enter summary judgment on the moving Defendants' qualified

20  immunity defense, and the City is entitled to judgment as a matter of law on the *Monell* claim.

21

22

23  [3] Although Mr. Stuart may argue that this case should fall into the narrow exception for cases
    where officers have probable cause, but generally exercise their discretion not to arrest.

24  *Nieves*, 139 S. Ct. at 1728. The Court should not be fooled. First, the exception is only
    implicated when others engaged "similarly situated" were not arrested for engaging in "the

25  same sort of *protected speech*." *Id.* (emphasis added). The state court has categorically
    determined that Mr. Stuart was not engaged in "protected speech." (Ex. 2 at 4-7; Ex. 10 at 11-

26  15). In any event, as noted in the City's Motion, General Order 2014 provided exactly what
    Officers Glenn and Cleary were *required* to do.

RESPECTFULLY SUBMITTED this 27th day of October, 2023.

DICKINSON WRIGHT, PLLC


By: _/s/ Scot L. Claus_
     Scot L. Claus
     Vail C. Cloar
     Holly M. Zoe
     1850 N. Central Avenue, Suite 1400
     Phoenix, Arizona 85004
     *Attorneys for Defendants*

1

## **CERTIFICATE OF SERVICE**

2

3

        I hereby certify that on October 27, 2023, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

4

5

                        By:  */s/ Sheila Rath*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

4893-4763-9434 v10 [53387-7]

**Table of Contents**
**of Exhibits**

Exhibit 1      Memorandum Decision.

Exhibit 2      Order.

Exhibit 3      Defendant's Motion to Dismiss the Charges for Lack of Probable Cause and Request for Evidentiary Hearing to Prove Lack of Probable Cause.

Exhibit 4      Defendant's Motion to Dismiss with Prejudice Pursuant to Ariz. Rule Crim. Proc. 16.6(B).

Exhibit 5      Defendant's Third Motion to Dismiss this Prosecution with Prejudice for Violations of His Speey Trial and Due Process Rights Under Rule 8.2 and the 6th and 14th Amendments to the U.S. Const. and Art. II, §§ 4 and 24 Ariz. Const.

Exhibit 6      Defendant's Second Request for Probable Cause Determination before a Neutral Magistrate Prior to July 26, 2019 or on July 26, Prior to Trial.

Exhibit 7      Minute Entry.

Exhibit 8      Ruling on Motion.

Exhibit 9      Judgment and Sentence.

Exhibit 10     Record Appeal Ruling / Remand.

4893-4763-9434 v10 [53387-7]

EXHIBIT 1

FILED

**NOT FOR PUBLICATION**

AUG 2 2023

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK STUART; VIRGINIA G. STUART,<br><br>              Plaintiffs-Appellants,<br><br>v.<br><br>CITY OF SCOTTSDALE, a Municipal Corporation and a political subdivision of the State of Arizona; WJ LANE, AKA Jim Lane, Husband; JOANN LANE, wife; GUY PHILLIPS; KATHY LITTLEFIELD; SOLANGE WHITEHEAD; SUZANNE KLAPP, Wife; LINDA MILHAVEN, Wife; VIRGINIA KORTE, Wife; JIM THOMPSON, Husband; KRISTEN THOMPSON, wife; BRUCE WASHBURN, husband; WASHBURN, Wife, named as Jane Doe Washburn; ERIC ANDERSON, husband; JENNIFER ANDERSON, wife; CAROLINE JAGGER, Wife,<br><br>              Defendants-Appellees. | Nos.  22-15498<br>        22-16300<br><br>D.C. No. 2:20-cv-00755-JAT<br><br>MEMORANDUM[*] |

Appeal from the United States District Court

---

    [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for the District of Arizona
James A. Teilborg, District Judge, Presiding

Submitted August 1, 2023[**]
San Francisco, California

Before: WALLACE, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

In No. 22-15498, Mark and Virginia Stuart (collectively, the Stuarts) appeal pro se from the judgment of the district court in favor of the City of Scottsdale (Scottsdale) and the Individual Defendants[1] in their action alleging federal civil rights and state law violations arising from Scottsdale's application for a writ of garnishment.  In No. 22-16300, the Stuarts appeal from the district court's denial of their Federal Rule of Civil Procedure 60 motion for relief from the judgment. We affirm the judgment in No. 22-15498 and dismiss the appeal in No. 22-16300.

Reviewing de novo,[2] we affirm the district court's judgment on the Stuarts' 42 U.S.C. § 1983 claims.  Summary judgment was appropriate as to the Stuarts'

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[1] W.J. Lane; Guy Phillips; Kathy Littlefield; Solange Whitehead; Suzanne Klapp; Linda Milhaven; Virgina Korte; Jim Thompson; Bruce Washburn; Eric Anderson.
The Stuarts did not appeal the dismissal of their claims against Defendants Joann Lane, Kristen Thompson, and Jennifer Anderson, and those individuals are not included in the term "Individual Defendants."

[2] *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

2

municipal liability claims[3] because even assuming (without deciding) that a constitutional violation occurred, there was no genuine dispute of material fact that Scottsdale had no policy of violating constitutional rights.  *See Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (per curiam).  The district court correctly determined that in the circumstances of this case, Scottsdale did not ratify any unconstitutional decisions[4] and Defendant Washburn was not a final policymaker.[5]  Likewise, the district court correctly granted qualified immunity to the Individual Defendants.  There was no material evidence that any of them had violated the Stuarts' clearly established constitutional rights.  *See Lane v. Franks*, 573 U.S. 228, 243, 134 S. Ct. 2369, 2381, 189 L. Ed. 2d 312 (2014); *see also White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (per curiam); *Shinault v. Hawks*, 782 F.3d 1053, 1059 (9th Cir. 2015).

We also affirm the judgment as to the Stuarts' Arizona claims.  The record reflected no genuine dispute of material fact that Scottsdale had not committed

---

[3] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2035–36, 56 L. Ed. 2d 611 (1978); *id.* at 690 n.55, 98 S. Ct. at 2035 n.55.

[4] *See Trevino v. Gates*, 99 F.3d 911, 920–21 (9th Cir. 1996).

[5] *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124–25, 108 S. Ct. 915, 924–25, 99 L. Ed. 2d 107 (1988); *cf. Lytle v. Carl*, 382 F.3d 978, 982–85 (9th Cir. 2004) (explicit delegation of authority).

wrongful garnishment,[6] abuse of process,[7] or intentional infliction of emotional distress.[8]  On the contrary, the evidence showed that Scottsdale had acted appropriately in seeking to collect on its undisputed, valid judgment.

The district court did not abuse its discretion[9] in denying as untimely the Stuarts' motion for the district judge to recuse himself.  *See Preston v. United States*, 923 F.2d 731, 732–33 (9th Cir. 1991); *see also* 28 U.S.C. §§ 144, 455.  The record supports the conclusion that the Stuarts' two-month delay was unreasonable,[10] and the Stuarts have not argued otherwise.

In No. 22-16300, we construe the Stuarts' briefing as a second motion to remand this case for the district court to consider their Rule 60(b) motion.  *See Canadian Ingersoll-Rand Co., Ltd. v. Peterson Prods. of San Mateo, Inc.*, 350 F.2d 18, 27 & n.16 (9th Cir. 1965); *see also* Fed. R. App. P. 12.1.  So construed, we

---

[6] *See Andrew Brown Co. v. Painters Warehouse, Inc.*, 531 P. 2d 527, 529 (Ariz. 1975), *abrogated on other grounds as recognized by Swift Transp. Co. of Ariz. LLC v. Carman ex rel. Cnty. of Yavapai*, 515 P.3d 685, 689–93 (Ariz. 2022); *see also* Ariz. Rev. Stat. § 12-1572.

[7] *Joseph v. Markovitz*, 551 P.2d 571, 574–75 (Ariz. Ct. App. 1976); *see also Rondelli v. Pima Cnty.*, 586 P.2d 1295, 1301 (Ariz. Ct. App. 1978).

[8] *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. 2020); *see also Midas Muffler Shop v. Ellison*, 650 P.2d 496, 498–500 (Ariz. Ct. App. 1982).

[9] *United States v. Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010); *see also United States v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir. 2009) (en banc).

[10] *See United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018).

4

deny it, and we dismiss the appeal. *See Visioneering Constr. & Dev. Co. v. U.S. Fid. & Guar. (In re Visioneering Constr.)*, 661 F.2d 119, 124 & n.6 (9th Cir. 1981). Even assuming that the May 24, 2022, Arizona Commissioner ruling amounted to newly-discovered evidence, that evidence would not change the outcome of any of the Stuarts' claims. *See Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1136 (9th Cir. 2022).

We do not consider arguments raised for the first time on appeal or matters not specifically and distinctly raised and argued in the opening brief. *See Padgett v. Wright*, 587 F.3d 983, 985–86, 985 n.2 (9th Cir. 2009).

**AFFIRMED as to No. 22-15498 and DISMISSED as to No. 22-16300.**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

## Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1) Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1) Purpose**
  **A. Panel Rehearing:**
  - A party should seek panel rehearing only if one or more of the following grounds exist:
    - A material point of fact or law was overlooked in the decision;
    - A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
    - An apparent conflict with another decision of the Court was not addressed in the opinion.
  - Do not file a petition for panel rehearing merely to reargue the case.

  **B. Rehearing En Banc**
  - A party should seek en banc rehearing only if one or more of the following grounds exist:
    - Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
    - The proceeding involves a question of exceptional importance; or

➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**
- A petition for rehearing must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3) Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

**Petition for a Writ of Certiorari**
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ➢ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
  - ➢ **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to *(party name(s))*:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                                                                 **Date**
*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

EXHIBIT 2

**ENCANTO JUSTICE COURT**
**620 West Jackson**
**Phoenix, AZ 85003**
**602 372-6300**



Case Number: JC2017-136254

PLAINTIFF:                                    DEFENDANT
:
    **State of Arizona**                        **Mark Elliot Stuart**

COUNSEL FOR PLAINTIFF:                  COUNSEL FOR DEFENDANT:

    Ken Flint, Assistant City Prosecutor        Robert R. Gruler, Jr., Esq.
    City of Scottsdale Prosecutor's Office       Roland Rillos, Esq.
                                   R & R Law Group, PLLC

# ORDER

## QUESTIONS PRESENTED

The Court has before it the Defendant's Motion To Disqualify the City of Scottsdale

Prosecutor's Office, and the Defendant's Motion to Compel the depositions of the Mayor and

seven Scottsdale City Council Members. After wrestling with both issues, the Court has reached

the conclusion that, in order to resolve the Motions, it must first resolve for itself a "core" issue

in this case:: Did the Scottsdale City Council act lawfully when it prevented the Defendant from

presenting information during the public comment period of a Scottsdale City Council meeting?

The core issue affects the resolution of the Motion To Disqualify because one of the factors to

1

consider in the matter of disqualification is "whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation." Alexander v. Superior Court, 141 Ariz. 157, 165, 685 P. 2d 1309 (1984). If Scottsdale improperly deprived the Defendant of his First Amendment rights by relying upon bad advice from the City Attorney, then prosecution of the Defendant for defending his First Amendment rights by the same office might create in the public's mind a suspicion of bad faith; i.e., that the prosecution is motivated by a desire to cover a municipal error. Similarly, if the Mayor of Scottsdale passed on to the police an erroneous view of the First Amendment's application to the public comment section of a City Council meeting, then the information gathered by deposing the Mayor might be relevant to the defense of this matter.

The Court concludes that the City of Scottsdale did not violate the Defendant's First Amendment rights when it prevented the Defendant from presenting information during the public comment period of a Scottsdale City Council meeting. While public meeting and comment statutes are usually interpreted in a broad fashion to realize the legislature's intent to encourage members of the public to become informed of, and lend a voice to, governmental activity, these statutes are subject to reasonable limitations implemented to encourage the efficiency, productivity, and order of the open meeting in the form of reasonable time, place, and manner restrictions.

Here, the decision to limit the Defendant's presentation was within the Council's discretion as an exercise of the time, place, and manner restrictions sanctioned by the Constitution, because the Defendant very clearly intended to highjack the public comment period to petition for signatures and to present numerous materials on topics either unrelated to the

2

jurisdiction of, or intended to harass, the Scottsdale City Council. Thus, the Court will not conclude that the Council acted outside of its discretion.

## BACKGROUND

On February 27, 2017, Mark Stuart ("Mr. Stuart") attempted to address the Scottsdale City Council during a public comment period. Prior to this, Mr. Stuart submitted numerous materials indicating an intention to discuss the fundamentals of the First Amendment and information relating to local ballot initiative seeking to prevent construction of a Desert Discovery Center inside Scottsdale's McDowell Sonoran Preserve.

The materials relating to the First Amendment numbered roughly under 10 pages. One such material said, "No court has ever upheld a government restriction on core political speech in a traditional public forum." Additional materials relating to the Desert Discovery Center said, "Sign this Petition...Save our Preserve."

Under the advice of the Scottsdale City Attorney, the Scottsdale City Council informed Mr. Stuart it would not allow him to electioneer in support of his ballot initiative. The Council informed him that he was welcome to present any information he would like on any other, unrelated topics on the day's agenda. Mr. Stuart then argued with the Council before being removed by the Scottsdale Police Department.

## DISCUSSION

"There is no common-law right of the public or press to attend meetings of governmental bodies, and any such right is created by statute and is governed by the statutory language employed." *E.g., State ex rel. Stephan v. Bd. of County Com'rs of Seward County,* 254 Kan. 446, 447, 866 P.2d 1024, 1025 (1994). In Arizona, "(a)ll meetings of any public body shall be public meetings" and the "public body may make an open call to the public during a

3

public meeting, subject to reasonable time, place and manner restrictions, to allow individuals to address the public body on any issue within the jurisdiction of the public body." *Arizona Revised Statutes § 38-431.01*. In passing A.R.S. § 38-431.01, the legislature statutorily created a "limited public forum" with the intent to "open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret." *See Karol v. Bd. of Ed. Trustees, Florence Unified Sch. Dist. No. One of Pinal County*, 122 Ariz. 95, 97, 593 P.2d 649, 651 (1979). A limited public forum is a non-public forum that the government intentionally opens to specific actors or to discuss specific topics. *E.g, Seidman v. Paradise Valley Unified Sch. Dist. No. 69*, 327 F. Supp. 2d 1098, 1104 (D. Ariz. 2004). The government may limit or regulate speech in limited public forums so "long as the restrictions are reasonable and are not an effort to suppress expression merely because the government disagrees with the speaker's viewpoint." *Id.* While viewpoint discrimination is an impermissible practice, "in the context of a limited public forum, content discrimination may be permissible *if* it preserves the purposes of that limited forum." *Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d 1044, 1051 (9th Cir. 2003); *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 820 (1995).

## ANALYSIS

The City Council did not violate Mr. Stuart's First Amendment rights when the Council prevented him from speaking in a manner that attempted to harass the Council and highjack the meeting by electioneering in violation of reasonable time, place, and manner restrictions.

"The First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S. Ct. 948, 955, 74 L. Ed. 2d 794 (1983) (establishing the existence of limited public forums). "The degree of First Amendment protection a speaker enjoys depends on the type of

4

forum in which his expressive activity occurred." *See United States v. Marcavage,* 609 F.3d 264, 274 (3d Cir.2010). "A governmental entity creates a limited public forum when it provides for a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Galena v. Leone,* 638 F.3d 186, 198 (3d Cir. 2011). In a limited public forum, a public body may both enforce time, place, and manner regulations and "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry,* 460 U.S. at 46 (1983). When determining whether a time, place, and manner restriction is reasonable, a court must consider with the restriction is "(1) content-neutral, (2) narrowly tailored to serve an important governmental interest, and (3) leave(s) open ample alternatives for communication of information." *Galena,* 638 F.3d at 203 (3d Cir. 2011); *see also Bennett v. Brownlow,* 211 Ariz. 193, 195,  119 P.3d 460, 462 (2005) (analyzing public forums in Arizona). In limited public forums, such as City Council meetings, speech may be constrained in order to prevent citizens from engaging in disruptive or hostile behavior. *See Collinson v. Gott,* 895 F.2d 994, 995 (4th Cir. 1990) (upholding the removal of a citizen from a public meeting for acting in a truculent manner); *Jones v. Heyman,* 888 F.2d 1328, 1329-1332 (11th Cir. 1989) (validating the mayor's silencing and removal of a citizen from a public meeting for disruptive behavior).

Content-based restrictions at City Council meetings do not violate a private citizen's First Amendment rights, so long as alternative channels exist to communicate the message, even if the alternative is less effective. In *Galena,* a private citizen attending a City Council meeting raised an objection to the Council's attempt to move an ordinance from a first to a second-order reading. *Id.* at 193. The Council Chairman ordered the citizen removed for speaking after and

outside of the public comment period. *Id.* The citizen argued that the order violated his First Amendment rights, since he could not be certain during the public comment period whether the Council would take action to move the reading of the ordinance and "he could not be expected to object to something that he did not know would happen." *Id.* at 204. The Third Circuit Court of Appeals held that the order did not violate the citizen's First Amendment rights as the citizen could address the Council at subsequent meetings. *Id.* The court reasoned that, although a subsequent meeting may serve as a less effective forum to raise an objection, the First Amendment only ensures citizens the reasonable opportunity to communicate messages rather than "the most effective means of communication of the message." *Id.*

First, it is clear that Scottsdale can establish its City Council meetings as a limited public forum. The Scottsdale Council Rules of Procedure employ clear language expressing this. For example, in reference to public comment, the Rules state that "Citizens speaking on Consent items shall be given one opportunity to speak on any or all of the Consent items listed on the agenda." City of Scottsdale, *2017 Rules of Council Procedure* (2017), *available at* *http://www.scottsdaleaz.gov/Assets/Scottsdale+AZ/Council/Council+Documents/Council+Rules+of+Procedure.pdf*. This language limits the class of those eligible to speak to "citizens", while also limiting the subjects to "Consent items listed on the agenda." Such clear intent to limit the actors and subjects involved in the forum establishes the meetings as limited public forums.

Because the meetings are a limited public forum, the Scottsdale City Council may implement reasonable time, place, and manner restrictions. Here, like in *Galena*, Mr. Stuart wished to object to a government action. However, in both cases, the substance of the action was not at issue. Instead, the matter at issue in both cases relates to the *manner* in which the citizens intended to object. In *Galena*, the citizen wished to object to an action of the Council's by

6

speaking outside of the designated public comment period. In the instant case, Mr. Stuart wished to object to a proposed action by way of electioneering and petitioning for ballot signatures at a meeting. In *Galena*, the court found that the citizen had reasonable opportunity to object to the action at a subsequent meeting. Similarly, here, the Court can readily find that Mr. Stuart would have not only reasonable, but ample, opportunities to electioneer and petition for signatures by utilizing traditional public forums that are not subject to similarly strict time, place, and manner restrictions, such as a neighborhood canvasses. The Scottsdale City Council's efforts to keep their meetings orderly and productive by prohibiting electioneering are in line with Scottsdale's intent to encourage members of the public to become informed of the local and lend a private voice to the government's activity.

Mr. Stuart also intended to submit to the Council a considerable amount of information regarding the First Amendment. While there is no apparent issue in providing tangentially related background information that helps listeners understand a subject during a public comment period, using that same information as a means of harassing a public body is an action A.R.S. § 38-431.01(H) permits the Council to prohibit. In the instant case, the Defendant attempted to present numerous PowerPoints on the First Amendment with the assumed purpose of challenging the body's authority to implement time, place, and manner restrictions by presenting a PowerPoint declaring that, "No court has ever upheld a government restriction on core political speech in a traditional public forum." In context, there is sufficient evidence to support this Court's conclusion that the inclusion of the First Amendment discussion was intended to harass, taunt, and disrupt the City Council in violation of the statute's time, place, and manner restrictions.

7

## THE MOTIONS BEFORE THE COURT

Having resolved the core issue, the Court can now much more readily resolve the motions before it. The Motion to Disqualify does not satisfy the four factors set forth in Burch & Cracchiolo, P.A. v. Myers, 237 Ariz. 369, 375, 351 P.2d 376 (App.2015) (1) the motion appears to be made for the purpose of harassing the City, (2) the Defendant will not be damaged if the motion is denied, (3) the disqualification is not the least damaging solution, and (4), perhaps most importantly, the possibility of public suspicion appears to be absent.

With regard to the Motion to Compel, it does not appear that the deposition of the Mayor, and even the less the Council Members, would offer anything material to the case, or necessary to the defense, within the meaning of Rule 15.3(a)(2), Arizona Rules of Criminal Procedure.

### CONCLUSION

For the foregoing reasons, the Court denies the Motion to Disqualify and the Motion to Compel.

DATED this 12th day of April, 2018.

C. Steven McMurry
Justice of the Peace

8

EXHIBIT 3

Mark Stuart
8629 E. Cheryl Drive
Scottsdale, AZ 85258
PH: (480) 922-6169 Fax: (480) 626-4340
EMAIL: mstuart1789@gmail.com

# IN THE WHITE TANKS JUSTICE COURT

# MARICOPA COUNTY, STATE OF ARIZONA

State of Arizona thru the Scottsdale
City Prosecutor,

                    Prosecutor

vs.

MARK STUART,

                    Defendant

**Case #: JC2017-136254**

**DEFENDANT'S MOTION TO DISMISS THE CHARGES FOR LACK OF PROBABLE CAUSE AND REQUEST FOR AN EVIDENTIARY HEARING TO PROVE LACK OF PROBABLE CAUSE**

**RE:**

Hon. David Osterfeld

Where no specific criminal statute validly applies to the facts at hand, an arrest is not supported by probable cause. *Santopietro v. Howell*, 857 F.3d 980, 987 (9th Cir. 2017)  In Arizona, the facts supporting probable cause must be articulated by the arresting officers with testimony at a probable cause hearing prior to trial, upon defendant's request.  A defendant charged by complaint is entitled to a preliminary

examination at which a court determines whether probable cause exists. *State v. Maldonado*, 223 Ariz. 309, 310 ¶ 7 (2010)(discussing rights conferred on a defendant by Art. II, §30 of the Ariz. Const.) By directing that "[n]o person shall be prosecuted criminally in any court of record . . . otherwise than by information or indictment," Article 2, Section 30 recognizes an important constitutional right for criminal defendants. Its provisions assure that a criminal defendant will have notice of the charge, **a right to a determination of probable cause** by either a grand jury or neutral magistrate, and a record of the charged offense as protection against further jeopardy. Id. ¶ 22 (emphasis added)

Promptly and properly resolving this motion should end this prosecution. Defendant, Mark Stuart, hereby requests that this court dismiss both charges against him, because the officers that arrested and charged him did not have probable cause to believe that a criminal offense had been committed. Police officers Cleary and Glenn (" the Officers") arrested Defendant on Feb. 7, 2017 and did not have an objectively reasonable good faith belief, based upon the facts known to them at **5:37** p.m. on Feb. 07, that trespassing , as defined in A.R.S. 13-1503(A) had been committed by Defendant. The Officers did not have an objectively reasonable good faith belief, based upon the facts known to them at **5:37** p.m. on Feb. 07, 2017, that defendant had violated Scottsdale city code 19-

13.  An arrest and citation without probable cause is unlawful, because it violates an individual's rights under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution. An arrest and citation without probable cause is unlawful, because it  violates an individual's rights under Article II, §§ 2,4,24, and 30 of the Arizona Constitution. Because the Officers did not have an objectively reasonable, good faith belief  that Defendant had trespassed or violated Scottsdale city code 19-13, these charges must be dismissed.

Defendant could not have brought this motion sooner, because he is learning the law and did not adequately understand mandatory pre-trial procedures well enough to make this motion; i.e., ineffective assistance of counsel caused the delay.  Defendant has been very busy since November 2018 relocating his business and tending to other year end business activities. Because of  defendant's focus on his business, he was not able to devote the necessary time to make this motion sooner.

This motion is supported by **Attachment AA**, submitted herewith, and the memorandum of law below. This motion incorporates the motion to dismiss for vindictive prosecution (filed 09/14/18) , the motion to dismiss for violations of Due Process access to evidence (filed 09/14/18, motions in limine 1,2, 4, 5,  6 and 7 (filed 3/12/19), and all the related exhibits and attachments of those motions.

## MEMORANDUM OF POINTS AND AUTHORITIES

The facts set forth in section A below indicate that both the Officers and the State lack probable cause to pursue the charges against Defendant.

### A. Factual Background

1.   Defendant has spoken at open public comment at Scottsdale city council meetings on about fifty different occasions between Jan. 1, 2010 and March 31, 2018.  Defendant was not cited for trespassing or violating Scottsdale code 19-13 on any of those occasions, except Feb. 7, 2017. (MTD Vindictive , 2,¶ 1; 3,¶ 3, ¶ 7APP_V :TOC )

2.   Defendant gave written presentations at open public comment on Jan. 17 and 24, 2017 and in eight different meetings between Feb. 21 and Aug. 28, 2017 Feb. 21, March. He was not cited for trespassing, or anything else in these meetings. **Id**, ¶ ¶ 7 – 9

3.   No person, other than Defendant has ever been prevented from speaking at open public comment between Jan. 1, 2000 and Feb. 07, 2017. **Id. 4**, ¶¶ 12-13

4.   No person has ever been charged with trespassing at open public comment in a Scottsdale city council meeting , except Defendant. **Id. 6** , ¶¶ 25-27

**5.** The Scottsdale city charter, Art. II, §15 mandates that any citizen be allowed to appear before the city council and present a petition to the council. Citizen petitions are always presented at open public comment. **Id.** ¶ 21

**6.** On Feb. 7, 2017 Defendant appeared before the city council with a written presentation and a petition, intending to petition the city council.  MIL # 6

**7.** On Feb. 7, 2017, prior to his arrest, Defendant was invited to speak by the Mayor, consistent with customary practices at open public comment. Defendant's written presentation on Feb. 7, 2017 was very similar to the presentations he gave prior to Feb. 7, 2017, and thereafter. MTD Vindictive, 4, ¶ 8

**8.** On April 20, 2017, in the hearing on a motion to dismiss for legal impossibility, the State was not willing to articulate any facts to support the charges against Defendant. **MTD Vagueness 13-1503(A)**: 4,¶¶ 8 -9

**9.** The traffic ticket and complaint does not contain any facts supporting the charges. **MIL #5** : EX. 1

**10.** The Officers met and conferred with Luis Santaella, Bruce Washburn and Mayor Jim Lane after Defendant's arrest and prior to issuing Defendant the citations. **MTD Vindictiveness**: APP_V: 76

**11.** Santaella, Washburn and Lane have refused to be interviewed by Defendant, to explain their roles in causing his arrest. This fact supports an inference that they are hiding the truth.

**12.** The Officers are not willing to be interviewed by Defendant without "representation" by outside private attorneys. This fact supports an inference that Defendant's arrest is very unusual and abnormal, and presumptively unlawful. This behavior supports an inference that the Officers are seeking to hide the true facts and motives for arresting and citing Defendant. **Def. 2ⁿᵈ MTC Depositions Reply**: 2,L21-3,L15

**13.** Scottsdale city code Section 1.5 describes mandatory rules of construction and definitions for all City ordinances, including 19-13. Scottsdale ordinances must be interpreted an applied consistent with the "manifest intent of the city charter.." **Attachment AA: 2**

**14.** The traffic ticket and complaint charging Defendant states that he is charged with "FAILURE TO OBEY POLICE OFFICER".  MIL #5 : EX. 1

**15.** The Arizona Court of Appeals has interpreted Scottsdale code 19-13 in *State v. Kaiser*, 204 Ariz. 514, 518 (App. 2003)

**16.** The Appellate court has ruled that , "To fail to obey a police order is not the same as to refuse to obey a police order. A failure to obey an order cannot create a violation of SCC 19-13." *Kaiser*, 204 Ariz. 518

**17.** The Arizona Constitution, Art. II, §6, prohibits public officials and public employees from enforcing content-based restrictions on speech and publication. *Phoenix Newspapers, Inc. v. Superior Ct.,* 101 Ariz. 257, 259 12 (1966) ""The language of this provision makes plain its purpose to prevent previous restraints upon publication." The right of every person to freely speak, write and publish may not be limited." *State v. Stummer*, 219 Ariz. 137, 142 ¶¶ 14-17 15(2008)

**18.** The First Amendment prohibits public officials, including police officers, from using "regulations as to use of public facilities –whether ad hoc or general –as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights." *Brown v. Louisiana*, 383 U.S. 131, 143(1966)

**19.** The Mayor of Scottsdale has no lawful authority to regulate the content of speech at open public comment, or for citizen petitions presented to the council , at city council meetings. No legal authority exists granting the Mayor this power, and the State cannot cite any caselaw providing this power to the Mayor.

**B. Legal Argument**

1   When the constitutional validity of an arrest is challenged, the court must

2   decide if the facts available to the officer at the moment of arrest "warrant a man of

3   reasonable caution in the belief that an offense has been committed. *Carroll v.*

4   *United States*, 267 U.S. 132 (1925) " "[t]he substance of all the definitions of

5   probable cause is a reasonable ground for belief of guilt," *ibid*, and that the belief

6   of guilt must be particularized with respect to the person to be searched or seized,"

7   or charged with a crime. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal

8   quotation marks and citations omitted)  To determine whether an officer had

9   probable cause to arrest an individual, we examine the events leading up to the

10  arrest, and then decide "whether these historical facts, viewed from the standpoint

11  of an objectively reasonable police officer, amount to" probable cause. The court

12  must consider the totality of the circumstances in making its probable cause

13  determination.

14  **A. <u>The Officers Did Not Have an Objectively Reasonable, Good Faith</u>**
15      **<u>Belief that Defendant was Trespassing.</u>**
16
17  In determining whether probable cause exists the Court's inquiry is exclusively

18  objective. The police officers subjective understanding of the law is irrelevant to

19  the inquiry. *State v. Stoll*, 239 Ariz. 292, 296, ¶ 15(App. 2016) The Officers must

20  set forth the facts known to them. The court then determines whether these facts

could potentially support a conviction within the plain meaning and obvious intent of the statute.

Trespassing requires intent to enter unlawfully or to remain unlawfully. Entering or remaining unlawfully is defined in A.R.S. § 13-1501(2) "Enter or remain unlawfully" means an act of a person who enters or remains on premises when **the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged...**"

No facts known to Officers Cleary and Glenn just prior to Defendant's arrest and citation for trespassing on Feb. 7, 2017, created a reasonable, good faith belief that Defendant was trespassing. The Officers did not have an "articulable, reasonable suspicion .. that Defendant was involved in criminal activity or intended to engage in criminal activity." Speaking at open public comment is not considered criminal activity in Arizona, or anywhere else in the United States.

The mental state requirement of criminal statutes "requires awareness of some wrongdoing" by the Defendant. Defendant can only be judged criminally guilty "for an evil intent existing in his mind", because "wrongdoing must be conscious to be criminal." *Elonis v. United States*, 135 S. Ct. 2001, 2011 (2015)

Prior to Defendant's arrest there was totally insufficient evidence to make a probable cause determination.  Defendant intended to give a written presentation

1  and a petition on a manner of public concern.  The City charter, Art. II, § 15,

2  specifically granted Defendant the right to present this written petition to the city

3  council.  A.R.S. § 38-431.01 (A) (H) and 38-431.09 (A) specifically gave

4  Defendant the right to attend the council meeting, to speak at the council meeting,

5  and to remain in the meeting after he finished giving his public comment.  If the

6  Officers cannot articulate a legally correct factual basis to cite Defendant for

7  trespassing, then probable cause does not exist. *Stoll*, 239 Ariz.  296,¶12 The

8  Officers testimony will show that they lacked a legally correct basis to cite

9  Defendant for trespassing. Therefore, probable cause to cite Defendant for

10  trespassing does not exist.

11
12  **B**. **A Mistake of Law Does not Create Probable Cause**
13
14       A police officer does not act in an objectively reasonable manner by

15  misinterpreting an unambiguous statute, or where the statute facially does not

16  support the officer's interpretation.  *Stoll*, ¶ 20.  As explained above, the

17  trespassing statute facially does not support the idea that Defendant could be

18  trespassing by attempting to participate in open public comment. Defendant did not

19  intend to do anything unlawful, only to give his public comment, which can never

20  be unlawful.

1　　The Officers' actions citing Defendant for violating S.C. C. 19-13 conflicts

2　with the plain words and manifest intent of Art. II, § 15 of the Charter. Thus, it is

3　an unreasonable construction of the ordinance, under Section 1.5. This conflict

4　supports lack of probable cause.

5　　Scottsdale city code 19-13 facially conflicts with the Officers "statements" in

6　the traffic complaint. This conflict demonstrates a lack of probable cause. The

7　words "FAILURE TO OBEY POLICE OFFICER" do not appear in the plain

8　language of ordinance 19-13. The Officers believe that FAILURE TO OBEY

9　POLICE OFFICER is legally equivalent to Refusal to obey police, which states in

10　part, No person shall refuse to obey a peace officer **engaged in the discharge of**

11　**his duty,...** In *Kaiser*, fourteen years prior, our appeals court stated clearly that

12　failure to obey a police officer cannot create a violation of ordinance 19-13.

13　Accordingly, there is no probable cause to believe that Defendant violated

14　ordinance 19-13.

15　　　　　　　　　　　　**CONCLUSION**

16　　This Court should set an evidentiary hearing as soon as possible, prior to any

17　trial date,  to determine whether probable cause exists to pursue this prosecution.

18　The Officers testimony will confirm that probable cause is absent. This will require

dismissal of the charges. If this Court determines that probable cause exists, then

and only then, is the added cost and expenditure of resources needed for a trial.

*Mark E. Stuart*

_____

Mark E. Stuart, defendant *pro se*
8629 E. Cheryl Drive, Scottsdale, AZ 85258
(480) 922-6169 Email: mstuart1789@gmail.com


A copy of this motion was delivered to the prosecuting attorney as an email
attachment on  April 1, 2019 to: kflint@scottsdaleaz.gov.
A copy of this motion was also delivered to the Scottsdale city prosecutor's office
via facsimile to: (480) 312-7795.

A copy of this motion was also delivered to the White Tanks Justice Court on
April 1, 2019 via email and USPS mail to:

white_tank@mcjc.maricopa.gov and to DanielleWelborn@mcjc.maricopa.gov

White Tanks Justice Court
10420 W. Van Buren St. 10
Avondale, AZ 85323
Attn: Hon. David Osterfeld/Assigned Judge

# ATTACHMENT AA

Def. Mot to Dismiss for Lack of Probable Cause

SC2017-136254

Sec. 1-5. - Rules of construction and definitions.

The rules and the definitions set forth in this section shall be observed in the construction of this Code and the ordinances of the city unless such construction would be inconsistent with either the manifest intent of the council, the city charter, the context of this Code or the ordinances of the city.

*Acts by agents.* When an ordinance requires an act to be done which may by law as well be done by an agent as by the principal, such requirement shall be construed to include all such acts when done by an authorized agent.

*Administrative directive.* The term "administrative directive" means a written order issued by a department head, approved by the city manager, and compiled in a manual.

*Administrative regulation.* The term "administrative regulation" means a written order issued by the city manager and compiled in a manual.

*Charter.* The words "charter" or "city charter" shall mean the Charter of the City of Scottsdale, Arizona.

*City.* The words "the city" or "this city" shall mean the City of Scottsdale, in the county of Maricopa and State of Arizona, except as otherwise provided. The term includes all duly authorized officers and employees acting on behalf of the city.

*Code.* The words "the Code" or "this Code" shall mean Scottsdale Revised Code, as designated in section 1-1 unless the context indicates otherwise.

*Computation of time.* The time in which an act is required to be done, except as otherwise provided in this Code, shall be computed by excluding the first day and including the last day, unless the last day is a Saturday, Sunday or holiday, and then it is also excluded. In cases in which notice of a decision by the city must be given to a petitioner and in which the petitioner must file a notice of appeal of such decision within a time certain of less than ten (10) days, such time shall be computed starting with the day after the day during which the notice of decision is received by the petitioner by personal service or registered or certified mail. The provisions of this paragraph shall not apply to the expiration of licenses, permits or approvals, issued pursuant to this Code and having stated expiration dates, including without limitation those licenses and permits provided for in chapters 3 and 16.

*Council.* The words "the council" or "city council" shall mean the council of the City of Scottsdale.

*County.* The words "the county" or "this county" shall refer to Maricopa County, Arizona.

Scottsdale, AZ Code of Ordinances

*Day.* A "day" is the period of time between any midnight and the midnight following.

*Daytime.* "Daytime" is the period of time between sunrise and sunset.

**State Law reference—** Similar provisions, A.R.S. § 1-215(6).

*Departments, boards, officers, etc.* Whenever any department, board, commission, office, officer, or employee is referred to, it shall mean a department, board, commission, office, officer, or employee of the city unless the context clearly indicates otherwise.

*Health officer.* The term "health officer" shall mean the director of the state department of health services or his authorized agent.

*In the city.* The words "in the city" or "within the city" shall mean and include all territory over which the city now has, or shall hereafter acquire, jurisdiction for the exercise of its police powers or other regulatory powers.

**State Law reference—** Extraterritorial jurisdiction, A.R.S. §§ 9-240(B)(21), 9-276(A)(18), 9-402; application of municipal ordinances to municipally owned, leased, etc., property, A.R.S. § 9-401.

*May.* The word "may" shall be construed as being permissive.

*May not.* The words "may not" state a prohibition.

*Month.* The word "month" shall mean a calendar month.

**State Law reference—** Similar provisions, A.R.S. § 1-215(19).

*Must.* The word "must" shall be construed as being mandatory.

*Nighttime.* "Nighttime" is the period of time between sunset and sunrise.

**State Law reference—** Similar provisions, A.R.S. § 1-215(21).

*Number.* Words used in the singular include the plural and the plural includes the singular number.

**State Law reference—** Similar provisions, A.R.S. § 1-214.

3/30/2019

Scottsdale, AZ Code of Ordinances

*Oath.* An oath includes affirmations in all cases in which, by law, an affirmation may be substituted for an oath. In such cases the words "swear" and "sworn" shall be equivalent to the words "affirm" and "affirmed."

**State Law reference—** Similar provisions, A.R.S. § 1-215(22).

*Occupant.* The word "occupant" includes a tenant.

*Or, and* "Or" may be read "and" and "and" may be read "or," if the sense requires it.

*Owner.* The word "owner," applied to a building or land, shall include any part owner, joint owner, tenant in common, joint tenant or tenant by the entirety of the whole or a part of such building or land.

*Person.* The word "person" shall include the state, the county, a political subdivision of the state, other governmental entity, a corporation, firm, partnership, association, organization and any other group acting as a unit, as well as an individual. It includes a trustee, receiver, an assignee, or similar representative.

*Personal property.* "Personal property" is anything other than real property.

**State Law reference—** Similar provisions, A.R.S. § 1-215(25).

*Preceding; following.* The words "preceding" and "following" shall mean next before and next after, respectively.

*Property.* The word "property" shall include real and personal property.

**State Law reference—** Similar provisions, A.R.S. § 1-215(28).

*Shall.* The word "shall" shall be construed as being mandatory.

*Shall have been.* The words "shall have been" include past and future cases.

*Signature or subscription.* A signature or subscription includes a mark, when a person cannot write, with his name written near it and witnessed by a person who writes his own name as witness.

**State Law reference—** Similar provisions, A.R.S. § 1-215(31).

*State.* The words "the state" or "this state" shall be construed to mean the State of Arizona.

*Street.* The word "street" shall mean and include any public way, road, highway, street, avenue, boulevard, parkway, alley, land, viaduct, bridge and the approaches thereto within the city.

*Technical and nontechnical words.* All words and phrases shall be construed and understood according to the common and approved usage of the language, but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning.

**State Law reference—** Similar provisions, A.R.S. § 1-213.

*Tenant.* The word "tenant" when applied to a building or land, shall include any person who occupies the whole or a part of such building or land whether alone or with others.

*Tense.* The present tense includes the past and future tenses, and the future includes the present.

**State Law reference—** Similar provisions, A.R.S. § 1-214.

*Week.* A "week" consists of seven (7) consecutive days.

*Writing or written.* The words "writing" and "written" shall include printing and any other mode of representing words and letters.

*Year.* The word "year" shall mean a calendar year.

(Code 1972, §§ 1-121, 1-124—1-128; Ord. No. 2968, § 1, 12-16-96; Ord. No. 3284, § 1, 2-14-00)



# Maricopa County Justice Courts, Arizona

White Tank Justice Court  10420 W. Van Buren Ave. #103, Avondale, AZ 85323  602-372-8003

| STATE OF ARIZONA | | CASE NUMBER: JC2017136254 |
|---|---|---|
| KEN FLINT | vs. | MARK STUART |
| 3700 N 75TH ST | | 8629 E CHERYL DR |
| SCOTTSDALE, AZ 85251 | | SCOTTSDALE, AZ 85258 |
| T 480-312-2710 | | T 480-922-6169 |
| F 480-312-7795 | | F 480-626-4340 |
| Deputy County Attorney / Address / Phone /Email | | Defendant(s) Name / Address / Email / Phone |

Attorney for Defendant(s) Name / Address / Phone /Email

## RULING ON MOTION

On this date 07/07/2019 _____ the ☐ State ☒ Defendant filed a motion herein requesting the following relief:

SECOND REQUEST FOR PROBABLE CAUSE DETERMINATION BEFORE A NEUTRAL MAGISTRATE

The ☒ State ☐ Defendant ☒ filed a response to the motion   ☐ No responsive pleading was filed
The ☐ State ☒ Defendant ✓ filed a reply to the response   ☐ No reply was filed

The Court has considered that which has been submitted by the parties, IT IS ORDERED
   ☐ Granting said motion   ☒ Denying said motion

☐ IT IS FURTHER ORDERED resetting this matter for
   Date: _____ Time: _____   ☐ Time excluded

Be in court at least 15 minutes before the scheduled hearing.
YOU MUST CHECK IN AT THE FRONT COUNTER BEFORE ENTERING THE COURT ROOM.
(Esté en el tribunal por lo menos 15 minutos antes de la audiencia programada.)
(DEBE REGISTRARSE EN EL MOSTRADOR DELANTERO ANTES DE ENTRAR EN LA SALA DEL TRIBUNAL)

REQUESTS FOR REASONABLE ACCOMMODATIONS FOR PERSONS WITH DISABILITIES SHOULD BE MADE TO THE
COURT AS SOON AS POSSIBLE.
(LAS SOLICITUDES PARA ARREGLOS O ADAPTACIONES RAZONABLES PARA PERSONAS CON DISCAPACIDADES SE DEBEN PRESENTAR ANTE EL
TRIBUNAL LO MAS ANTES POSIBLE.)

If an interpreter is needed, please contact the court listed above to request an interpreter be provided.
(En caso de necesitarse un intérprete, favor de comunicarse con el Tribunal antes mencionado para solicitar que se brinden los servicios de un intérprete.)

☐ IT IS FURTHER ORDERED

Date: 8/7/19 _____   Justice of the Peace _____

I CERTIFY that a copy of this document has been or will be provided on 8/8/19 to:
☐ The State ☒ Defendant ☒ at the above address ☐ in court ☐ Defendant's Attorney ☐ at the above address ☐ in court
Date 8/8/19   Clerk CJ ✓ & email

8150-641 R: 4/4/16

EXHIBIT 4

17MAR3 KILO3L PROSECUTION

17MAR3 KILO3L PROSECUTION

# IN THE SCOTTSDALE CITY COURT
# MARICOPA COUNTY, STATE OF ARIZONA

| | |
|---|---|
| CITY OF SCOTTSDALE,<br><br>               Prosecutor<br><br>vs.<br><br>MARK STUART,<br><br>               Defendant | **COMPLAINT NO. 1997588**<br><br>**DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE PURSUANT TO ARIZ. RULE CRIM.  PROC. 16.6 (B)**<br><br>**HON. JOSEPH OLCAVAGE** |

## INTRODUCTION

Pursuant to Arizona Rules of Criminal Procedure[1] 16.6(b), defendant Mark Stuart hereby moves this Court to dismiss complaint 1997588 with prejudice. As explained below, Mr. Stuart's actions on February 7, 2017 were constitutionally protected by both the Arizona Constitution, Article II, Sections 5 and 6, the First, Fourth and Fourteenth Amendments of the U.S. Constitution, and our state's open meeting laws, A.R.S. § 38-431, et seq. Consequently, the complaint must be dismissed because it is legally deficient as a matter of law.  Since *Marbury v. Madison*, 5 U.S. 137, (1803), lower courts have been instructed that the constitution of the U.S. must prevail, when a legislative enactment and the U.S. constitution apply to a given set of circumstances. "Thus, the particular phraseology of the Constitution of the United States confirms and strengthens the principle, …, that a law repugnant to the Constitution is void, and that courts, as well as other departments, are bound by that instrument. The rule must be discharged." *Marbury*, 5 U.S. 180.

---

[1] Rule = Ariz. Rules of Criminal Procedure throughout this motion.

1   commencement of another prosecution, unless the court order finds that the interests of

2   justice require that the dismissal be with prejudice." Dismissal of a case with or without

3   prejudice is within the discretion of the trial court. *State v. Gilbert*, 172 Ariz. 402, 404, 837

4   P.2d 1137, 1139 (App. 1991). When dismissing a case with prejudice, "Rule 16.5(d)

5   requires a reasoned finding that the interests of justice require the dismissal to be with

6   prejudice." *State v. Garcia*, 170 Ariz. 245, 248, 823 P.2d 693, 696 (App. 1991) "This

7   statement must be based on a particularized finding that to do otherwise would result in

8   some articulable harm to the defendant." *State v. Wills*, 177 Ariz. 592, 594, 870 P.2d 410,

9   412 (App. 1993)

10      Every person in Arizona has the unquestionable right to attend city council meetings.

11   This Court should dismiss this complaint **with prejudice**. Scottsdale cannot set forth any

12   facts that would support a charge that Mr. Stuart was unlawfully present at the city council

13   meeting. Consequently, it is not possible for Scottsdale to establish probable cause that Mr.

14   Stuart violated A.R.S. § 13-1503A.

15      More than two hundred years ago, Chief Justice John Marshall explained that when

16   the constitution and a subsequent law passed by a legislative body apply to a given set of

17   circumstances, the constitution governs the adjudication. *Marbury v. Madison*, 5 U.S. 137,

18   at 177-78, (1803) ".. if both the law and the Constitution apply to a particular case, ….the

19   Constitution, and not such ordinary act, must govern the case to which they both apply."

20      Every person in Arizona has the constitutional right to ignore an unlawful order from

21   a Scottsdale police officer. The actions of the Scottsdale police, after Mr. Stuart left city

22   hall, are clearly unlawful. Consequently, Scottsdale cannot set forth any facts to support a

23   violation of Scottsdale city code 19-13. Our courts have long held that "there be no sanction

24   or penalty imposed upon one because of his exercise of constitutional rights." *Sherar v.*

25   *Cullen*, 481 F. 2d 945(9th Circ., 1973).

"The framers gave every person the right to freely speak, write and publish, and made judges responsible to uphold and enforce those rights." *Mountain* States *Telephone v. Corporation Comm.*, 160 Ariz. 350 at 357, 773 P. 2d 455 (1989)

## CONCLUSION

For the reasons explained above, this Court must dismiss this complaint in its entirety, with prejudice. Scottsdale cannot articulate and prove any facts indicating that Mr. Stuart was unlawfully present at Scottsdale city hall. Scottsdale cannot articulate and prove any facts indicating that Mr. Stuart refused to obey a lawful order from a peace officer.

The ends of justice are always best served by protecting the peaceful exercise of constitutional rights by Arizona citizens. The ends of justice are best served by allowing Mr. Stuart to pursue his professional interests, without the impediments created by these unresolved charges.

Respectfully submitted this 3rd day of  March, 2017.

*Mark E. Stuart*

Mark E. Stuart, defendant *pro se*
8629 E. Cheryl Drive, Scottsdale, AZ 85258
(480) 922-6169 Email: mstuart1789@gmail.com

Served via email to the Scottsdale city attorney's office. A copy of the motion was hand delivered to the prosecuting attorney. A copy of this motion was also delivered to this court through its electronic filing system on March 03, 2017.

EXHIBIT 5

1  Mark Stuart
2  8629 E. Cheryl Drive
3  Scottsdale, AZ 85258
4  PH: (480) 922-6169 Fax: (480) 626-4340
5  EMAIL: mstuart1789@gmail.com
6

7  **IN THE SCOTTSDALE CITY COURT, STATE OF ARIZONA,**
8  **COUNTY OF MARICOPA**
9
                                          Case #: SC2017- 0003568
10
   State of Arizona thru the Scottsdale     **DEFENDANT'S THIRD MOTION TO**
11 City Prosecutor,                         **DISMISS THIS PROSECUTION WITH**
                                            **PREJUDICE FOR VIOLATIONS OF HIS**
                       Prosecutor           **SPEEDY TRIAL AND DUE PROCESS**
12                                          **RIGHTS UNDER RULE 8.2  AND THE 6TH**
   vs.                                      **AND 14TH AMENDMENTS OF THE U.S.**
13                                          **CONST.  AND   ART. II, §§ 4 AND  24**
   MARK STUART,                             **ARIZ. CONST.**
14
                       Defendant
15

16                                          **ORAL ARGUMENT /EVIDENTIARY**
                                            **HEARING REQUESTED**
17

18                                          Hon. J. SAMPANES
19

20

21     This motion will be supplemented with witness testimony, including testimony

22 of the Defendant, at trial. This motion is supported by **Appendix H**, submitted

23 herewith. ("**APP_H**")

24     Defendant moves this court to dismiss both charges against him for violations

25 of his speedy trial rights under Rule 8.2[1], and for violations of his speedy trial and

---

[1] Rule = Arizona Rule of Criminal Procedure throughout this motion.

1  due process rights under the Sixth and Fourteenth Amendments of the U.S.

2  Constitution and Art. II, §§ 4 and 24 of the Arizona Constitution. This motion

3  fully incorporates the following motions and attachments: **(1)**Defendant's Second

4  Motion to Dismiss this Prosecution with Prejudice for Violations of his Speedy

5  Trial and Due Process Rights Under Rule 8.2 and the 6th and 14th Amendment of

6  the U.S. Constitution and Art. II,  §§ 4 and 24  of the Ariz. Constitution **filed July**

7  **25, 2019** in White Tanks Justice Court, (**"MTD_06-14-R8_02"**);  **(2)** Defendant's

8  motion to dismiss for Rule 8.2 violations filed **April 25, 2018, ("MTD_R8_01");**

9  **and (3)** Defendant's motion to dismiss for violations of Sixth and Fourteenth

10  Amendment Rights filed **August 3, 2018.** ("MTD_06-14_01")

11      As explained below, these charges must be dismissed with prejudice, because

12  Defendant's procedural and constitutional rights have clearly been violated by

13  continuing this prosecution. Defendant cannot receive a fair trial because of the

14  undisputed prejudice to his defenses, caused by this **thirty-five-** month long

15  prosecution. Defendant has already suffered severe punishments, even though no

16  trial has occurred.

17

18  **MEMORANDUM OF POINTS AND AUTHORITIES**

19      A defendant has a right to a speedy trial. Rule 8.2—Time Limits- defines that

20  right for all defendants in Arizona. Rule 8.2 (a)(2) states,

21      **(a) Generally.** Subject to Rule 8.4, **the court must try every defendant**

22      against whom an indictment, information, or complaint is filed within the

23      following times:

1  because Glenn's interactions with his private counsel have impeded Defendant's

2  access to unfiltered, candid, honest testimony from Glenn.

3      Cleary adamantly refused to testify about anything, including facts that he

4  considered privileged. Cleary's attitude was directly caused by the long delays and

5  the need to lawyer up to protect himself. Now, Cleary is actively impeding

6  Defendant's access to information necessary for his defense, with the

7  encouragement and coaching of his outside private counsel.

8      **c.)  <u>The State's Inability to Show Probable Cause</u>**

9          **<u>Prejudices Defendant.</u>**

10      Factual Background paragraphs thirty-two and thirty-three ("**FB 32,33**")

11  proves lack of probable cause. The State's inability and unwillingness to respond

12  to the Motion for Probable Cause is the conclusive fact that proves the speedy trial

13  and due process violations.  If the State was truly ready for trial it could have

14  responded to the Motion for Probable Cause quickly and succinctly. Defendant can

15  never properly prepare for trial because the factual basis to believe that any

16  criminal offense has occurred has never been set forth by the State.

17      ¶ 26 For Sixth Amendment purposes, when a defendant does not receive

18  constitutionally adequate notice of the charges against him, he is necessarily and

19  actually prejudiced. *See, Sheppard v. Rees*, 909 F.2d 1234, 1237 (9th Cir. 1989)

20  ("A trial cannot be fair unless the nature of the charges against a defendant are

21  adequately made known to him or her in a timely fashion."); *see also Hunter v.*

22  *New Mexico*, 916 F.2d 595, 598-99 (10th Cir. 1990). *State v. Freeney*, 223 Ariz.

23  110, 114 (2009)

24      The purpose of a probable cause determination is to provide the Defendant

25  with constitutionally adequate notice of the factual basis of the charges against

him.  Without the probable cause determination, the Defendant can never receive adequate notice.

### d.)  <u>The Delay of Trial is Presumptively Prejudicial</u>

"Excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. The importance of presumptive prejudice increases with the length of delay." "Bad faith in causing delay will be weighed heavily against the government." *Doggett v. U.S.*, 505 U.S. 647, 656 (1992)

"A delay of trial is presumptively prejudicial as it approaches one year. The presumption that the delay in prosecution prejudiced the defendant intensifies over time." *Humble v. Superior Ct.*, 179 Ariz. 409, 416 (App. 1994)  (quoting *Doggett v. U.S.*, 505 U.S. 647, 652 (1992))

".. to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay." *Doggett*, 505 U.S. 652 "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."

Simple misdemeanor trespassing cases in Scottsdale are normally tried in six months, or  less. By **Jan. 27, 2020** this prosecution will have lasted more than **thirty-five (35)** months, five times longer than a normal trespassing prosecution. This case is now almost two and one and one-half years past the Rule 8 speedy trial limits, so it is presumptively abnormally long. This factor weighs heavily in favor of finding a violation of defendant's rights.

If this Court determines that this case should be dismissed without prejudice, this Court should order the state to reimburse Defendant for the costs he has incurred driving to Encanto J.C. and to White Tanks J.C. and for the twenty plus hours of free time he last lost to these commutes.

Respectfully submitted this 29th day of December 2019.

Mark E. Stuart

Mark E. Stuart, defendant *pro se*
8629 E. Cheryl Drive, Scottsdale, AZ 85258
(480) 922-6169 Email:

A copy of this motion was delivered to the prosecuting attorney as an email attachment on Dec. 29, 2019 to: kflint@scottsdaleaz.gov.
A copy of this motion was also delivered to the Scottsdale city prosecutor's office via hand delivery on Dec. 30, 2019 .
A copy of this motion was filed electronically with the Scottsdale city court as an email attachment sent to courts@scottsdaleaz.gov on Dec. 29, 2019.

EXHIBIT 6

1  Mark Stuart
2  8629 E. Cheryl Drive
3  Scottsdale, AZ 85258
4  PH: (480) 922-6169 Fax: (480) 626-4340
5  EMAIL: mstuart1789@gmail.com

6

7  ## IN THE WHITE TANKS JUSTICE COURT

8  ## MARICOPA COUNTY, STATE OF ARIZONA

9

10  State of Arizona thru the Scottsdale
    City Prosecutor,

11                          Prosecutor

12  vs.

    MARK STUART,

13                          Defendant

14

15

16

17

18

19

**Case #: JC2017-136254**

**DEFENDANT'S SECOND REQUEST FOR A PROBABLE CAUSE DETERMINATION BEFORE A NEUTRAL MAGISTRATE PRIOR TO JULY 26, 2019 OR ON July 26, PRIOR TO TRIAL.**

**Re:** Fourth Amendment Right to a "fair and reliable" determination of probable cause either before or promptly after arrest.

Hon. D. Osterfeld

20      Defendant has good cause to bring this motion late, because he only

21  conclusively learned of the Officers lack of probable cause to arrest him for

22  trespassing (ARS 13-1503A) and failure to obey (SCC 19-13) after transcribing the

23  video and audio interviews of Officer Tom Cleary and former officer Jason Glenn.

24  ("Cleary, Glenn") Defendant finished transcribing and analyzing these recordings

Request for Probable Cause Hearing

on Friday **July 5, 2019**. Defendant was delayed in transcribing these recordings by business travel that ended June 30, bankruptcy litigation hearings on July 3 and ongoing injuries to his right hand. Defendant brought this motion as soon as he could under the circumstances. Hence, this request complies with the requirements of Rule 16.1 (c).

Defendant requests that this Court hold a probable cause hearing with Officer Tom Cleary, former Officer Jason Glenn and prosecutor Ken Flint as witnesses prior to the trial on July 26, 2019.  Alternatively, Defendant requests that this Court order Cleary, Glenn and Mr. Flint to provide separate sworn declarations, under penalty of perjury, affirming the following facts: (**1**) the dates between Jan. 16, 2017 and April 20, 2017 when they met to discuss this case, or communicated about this case by any means;(**2**) What facts were known to them on Feb. 7 at 5:32 p.m. that formed the basis for their belief that a violation of ARS 13-1503(A) had occurred; (**3**) What facts were known to them on Feb. 7 at 5:32 p.m. that formed the basis for their belief that a violation of SCC 19-13 occurred;  (**4**) What facts did they rely on to determine Defendant's intent for attending the Feb. 7, 2017 city council meeting; (**5**) What facts did they rely on to determine Defendant's intent for speaking at public comment at the Feb. 7, 2017 council meeting; (**6**) Whether they believe that Mr. Stuart was trespassing when he spoke at public comment at the Feb. 21, 2017 city council meeting; (**7**) Whether they believe that  Mr. Stuart was " creating a disturbance" when he spoke at the Feb. 21, 2017 city council meeting; (**8**) Whether they believe that Mr. Stuart's speech at public comment on Feb. 21, 2017 was "disruptive" or 'would become disruptive" as defined by Officer Cleary in his June 14, 2019 interview at [**39:25 – 39:56**] in **Flash_Drive_V**:

Request for Probable Cause Hearing

**Cleary**: I don't know that is my understanding.

Q: **What's the difference between regulating the order of the meeting and the topics of speech?**

**Cleary**: **I don't know the difference, that there is a difference or that there is not a difference,** I know that the Mayor is the parliamentarian, identified as the  parliamentarian of the meeting, and he regulates the meeting from start to finish, and everything in between.

**Q: But what about the topics of speech at public comment?**

**Cleary: You'd have to address that question to the Mayor, I don't know anything about that.**

**Q: But your understanding on Feb. 7, was that he could regulate the topics at public comment, correct?**

**Cleary: I know that the Mayor regulates the meetings, from start to finish, and everything in between, and that's all I know.**

**Q: So how do you know whether the Mayor is giving a lawful order, when they tell someone to step away from the podium, how do you decide?**

**Cleary: The Mayor has been identified as the parliamentarian to regulate the  meeting from start to finish and everything in between.**

**[1:16:52AR]**(emphasis added)

## II. Legal Argument

The U.S. Supreme Court has stated clearly and unequivocally that any person accused of committing a crime and then arrested is entitled to a prompt determination of probable cause prior to trial.  "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, [Footnote 26] and this determination must be made by a judicial officer **either before or promptly after arrest**." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) (emphasis added)

Cleary and Glenn did not have an objectively reasonable basis to believe that Defendant had violated ARS 13-1503(A) or SCC 19-13 on Feb. 7, 2017.

Therefore, probable cause to cite and arrest Defendant does not exist, and these charges should be dismissed.

To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide `whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *District of Columbia , et al v. Wesby,* 138 S.Ct. 577, 586( 2018)   It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." **The Court must consider the totality of the circumstances and the whole picture.** The relevant inquiry is not whether particular conduct is `innocent' or `guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Wesby*, 138 S. Ct. 588 The Court must ask whether a reasonable officer could conclude – that there was a substantial chance of criminal activity." (emphasis added)

Probable cause exists when the arresting officer has "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, **that a crime has been, is being, or is about to be committed**."; *Johnson v. Hawes*, 388 F. 3d 676 (9th Cir. 2004)  When an individual is arrested for conduct that is not criminal under the statute he is charged with violating, based upon established caselaw, probable cause does not exist. *Johnson v. Hawes*, 388 F. 3d 676 (9th Cir. 2004) . "As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, **they also may not disregard facts tending to dissipate probable cause**." *Ewing v City of Stockton*, 588 F. 3d 1218 (9th Cir. 2009) (emphasis added)

Request for Probable Cause Hearing

**A**. <u>**Civil Disputes Cannot Give Rise to Probable Cause to Believe That**</u>
   <u>**Criminal Activity Has Occurred; Violations of ARS13-1503(A)**</u>
   <u>**or SCC 19-13**</u>

The officers arrested and cited Defendant for trespassing (A.R.S. 13-1503A) and Failure to Obey(SCC 19-13) because of  a civil dispute between the Mayor, the city attorney Bruce Washburn and Defendant about speaking at public comment in Scottsdale city council meetings. The basis for arresting and citing Defendant was not a violation of a criminal statute. Rather, it was an alleged violation of  civil statutes. Both officers admitted that they had no working knowledge of either statute and that they relied, completely , upon Santaella, Washburn and Lane's knowledge of the law. Both officers admitted that they did no investigation , of any kind , on their own.

Cleary and Glenn knew that the Mayor, the Council and the City Attorney believed that two non-criminal statutes, A.R.S. 38-431.01(H) and A.R.S. § 9-500.14 prohibited Defendant from speaking at public comment. (**FB**:[2] 4,para. 3; p. 12,L33- 13 to 14,L5;21,L11-16;22,L13-29) Cleary and Glenn knew that these statutes are not criminal statutes, and that speaking at public comment is not illegal in Arizona.(**FB**:14,L12-27;15,L5-L12;18,L21-24)  Cleary and Glenn knew that Defendant believed that Washburn's letter to Defendant of Jan. 26 was unlawful, based upon clearly established U.S. Supreme Court and Arizona Supreme Court precedent. (FB: 5,L13-26;7,L24-8,L10;10,L18-36;17,L3-14;18,L3-13;22,L1-29;23,L2-19)

---

[2] FB = Factual Background

A civil dispute cannot give rise to probable cause. "[b]y its definition, probable cause can only exist in relation to criminal conduct. It follows that civil disputes cannot give rise to probable cause." *Stevens v. Rose*, 298 F. 3d 880 (9th Cir. 2002) Probable cause does not exist when the police officers ignore information that shows that the behavior in question is not criminal. *State v Sisco*, 373 P. 3d 549, 554¶ 18 (2016)(quoting *State v. Buccini*, 167 Ariz. 550, 556-58 (1991) Probable cause requires a "probability or substantial chance of criminal activity."

Because the core dispute between Lane, Washburn and Stuart is about how to lawfully apply civil statutes to Defendant's speech at public comment, probable cause does not exist for either charge.

**B. Cleary and Glenn Disregarded All Facts That Showed No Probable Cause to Cite Defendant for Either Offense.**

Probable cause exists "when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) "The analysis involves both facts and law. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." When specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." **At the same time, however, because the evidence available to the arresting officers must support the conclusion that the suspect committed a crime, probable cause does not exist where there is no evidence**

Request for Probable Cause Hearing

page 26 of 32

**establishing one of the elements of the offense.** (emphasis added) Probable cause depends on the totality of the circumstances, and the touchstone of probable cause analysis is whether there exists "a reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)

Neither Cleary nor Glenn did any investigation to determine Defendant's intent for attending and speaking at the council meeting on Feb. 7, 2017. MTC-GlENN:6,L10-16;9,L5-26;MTC-CLEARY:9,L12-33;  Neither Cleary nor Glenn had an objectively reasonable factual basis to believe, based on established caselaw, that Defendant's intended speech on Feb. 7, 2017 was unlawful. Neither Cleary nor Glenn had an objectively reasonable  factual basis to believe that the Mayor's order to Defendant to leave the podium without speaking was lawful. Neither Cleary nor Glenn had an objectively reasonable basis to believe that they had given a lawful order to Defendant on Feb. 7, 2017, and that Defendant had refused to obey any lawful order.

Cleary admitted that he had no knowledge of A.R.S 9-500.14, and that he made no attempt to learn whether it allowed a city to ban a speaker from speaking or prosecute a speaker for allegedly violating it. Cleary stated repeatedly that he believed that the Mayor had absolute authority to discriminate among speakers based upon the content of their speech. Cleary also admitted that he did not know the rules for speaking at public comment, and that as far as he knew Defendant had been given permission to speak.

Therefore, probable cause to cite Defendant for violating A.R.S. 13-1503(A) and SCC 19-13 , for attempting to speak at public comment on Feb. 7, 2017, does not exist.

**C**. **Content Based Restrictions on Speech and Subject or Identity Based Restrictions on Speech are Presumptively Unlawful and Cannot Create A Lawful Basis to Arrest or Cite a Citizen, or to Exclude Them from Speaking at Public Comment.**

Obviously, however, **one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution.** *Wright v. Georgia*, 373 U.S. 284, 291-92 (1963)   A State or its instrumentality "may not invoke regulations as to use (of public facilities) -- whether they are *ad hoc* or general -- as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights." *Brown v. Louisiana*, 383 U.S. 131,143(1966) "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, **without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.** ..our decisions have made clear that a person faced with such an unconstitutional licensing law **may ignore it and engage with impunity in the exercise of the right of free expression** for which the law purports to require a license"( or the Mayor's permission to speak) *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151-52 (1969)

"It is axiomatic that the government **may not** regulate speech based on its **substantive content or the message it conveys. Discrimination against speech because of its message is presumed to be unconstitutional**. *Rosenberger v. Rector & Visitors of Univ. of Va*, 515 U.S. 819, 828-829 (1995) "[A]s a general matter, the First Amendment means that **government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."** As a result, the Constitution "**demands that content-based restrictions on speech be presumed invalid** ... and that the Government bear the burden of showing their

Request for Probable Cause Hearing

constitutionality." *United States v. Alvarez*, 132 S. Ct. 2537,2544-2545 (2012) " , **a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."** Content-based laws—those that target speech based on its communicative content—**are presumptively unconstitutional...."** *REED v. TOWN OF GILBERT, AZ., ET AL.,* 135 S. Ct. 2218, 2226-2227 (2015)

'[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others,'.. "it is a fundamental principle of the First Amendment that the government **may not punish or suppress** speech based on disapproval of the ideas or perspectives the speech conveys." *Matal v. TAM*, 137 S. Ct. 1744, 1757-1765 (2017)

When the U.S. or Arizona Supreme Courts have ruled that specific actions by governments are presumptively unlawful, those actions cannot form the basis for probable cause to believe that criminal conduct has occurred. Probable cause does not exist "if a police officer knew or should have known that his actions were unconstitutional." *State v. Dean*, 241 Ariz. 387, ¶ 25 (App. 2017)

Police officers have a duty to know the basic elements of the laws they enforce. Reliance on the city attorney's advice does not establish probable cause to believe that a crime has been committed, especially when constitutional precedents make clear that the citizen's behavior and speech is constitutionally or statutorily protected. *Kelly v. Borough of Carlisle*, 622 F. 3d 248, 256-258 (3rd Cir. 2010) ( citations omitted)" .. a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one."

If a police officer's or a public official's order is presumptively unconstitutional, merely disregarding that order, without more, does not create probable cause. *Bible Believers v. Wayne County*,  805 F. 3d 228, 253 (6th Cir. 2015)

> "when the police seek to enforce law and order, they must do so in a way **that does not unnecessarily infringe upon the constitutional rights of law-abiding citizens**....... Moreover, they may take any appropriate action to maintain law and order that **does not destroy the right to free speech by indefinitely silencing the speaker**. Fundamentally, **no police action that hinders the speaker's freedom of speech should be deemed legitimate in the eyes of the Constitution unless it satisfies strict scrutiny**, which requires the police to achieve their ends by using only those means that are the least restrictive with respect to the speaker's First Amendment rights. (emphasis added).... "[T]he Constitution demands that content-based restrictions on speech be presumed invalid and that the [g]overnment **bear the burden of showing their constitutionality**." *(*quoting *U.S. v. Alvarez,* 132 S.Ct.2537 at 2544 (2012))

Existing caselaw clearly established that prior restraints on speech are unconstitutional in Arizona.  Existing caselaw clearly established that content-based restrictions on speech are presumptively unlawful, and that the government prove that they satisfy strict scrutiny, before they enforce them. Existing caselaw clearly established that a citizen cannot be punished or arrested for peacefully exercising his free speech rights. Existing caselaw  clearly established that citizens can ignore unconstitutional licensing laws or laws that require state permission to exercise free speech rights and engage in impunity with the peaceful exercise of their free speech rights, when the state has made it clear that permission will not be

granted, or when the state has unbridled discretion or unlimited authority to deny permission to speak.

### CONCLUSION

Defendant is entitled to a probable cause determination, prior to trial. This Court should allow argument about probable cause on July 11 and require that Mr. Flint be sworn in as a witness, so that he can explain what facts he believes form the objectively reasonable basis to believe that probable cause exists, and when he learned those facts. Defendant believes that the interview transcripts and the recordings are an adequate basis to determine lack of probable cause.

Alternatively, this Court should order Mr. Flint, Mr. Glenn and Officer Cleary to create sworn affidavits, under penalty of perjury, setting forth the facts and circumstances known to them on Feb. 7, 2017 at 5:32 p.m. (prior to April 21 for Flint) upon which they based their probable cause determination. This Court should order that each man must create this affidavit on his own and cannot discuss it with each other or their attorneys. This Court should then review these affidavits prior to trial and allow Defendant to respond and explain why probable cause does not exist for either charge. Alternatively, this Court should hold a hearing about these affidavits prior to trial and make the decision about probable cause then.

Defendant needs the disclosure he requests on page 2, line 5 to 8, to properly prepare for trial.

Respectfully submitted this 5th day of  July 2019



_____
Mark E. Stuart, defendant *pro se*
8629 E. Cheryl Drive, Scottsdale, AZ 85258

Request for Probable Cause Hearing

EXHIBIT 7

# Maricopa County Justice Courts, Arizona

**White Tank Justice Court   10420 W. Van Buren St. #103, Avondale, AZ 85323   602-372-8003**

| STATE OF ARIZONA | | CASE NUMBER:  JC2017136254 |
|---|---|---|
| SCOTTSDALE CITY PROSECUTOR | vs. | MARK STUART |
| KEN FLINT | | 8629 E CHERYL DRIVE |
| 3700 N 7TH STREET | | SCOTTSDALE AZ 85258 |
| SCOTTSDALE AZ 85251 | | |

Deputy County Attorney / Address / Phone /Email

Defendant(s) Name / Address / Email / Phone

Attorney for Defendant(s) Name / Address / Phone /Email

## MINUTE ENTRY

Date: April 16, 2019

After April 9, 2019 Oral Argument on the unresolved motions in this case, the following are summaries of the rulings:

Defendant's Motion in Limine #1 regarding admission of Vineberg declarations – The Court finds that the statements are irrelevant to the Charges – therefore the Motion is Denied.

Defendant's Motion in Limine #2 regarding admission of Littlefield email – The Court finds that the email statements are irrelevant to the Charges – therefore the Motion is Denied.

Defendant's Motion in Limine #3 regarding admissibility of evidence (McMurry A12 Ruling) – The State does not dispute this Motion as the referenced statements are hearsay and irrelevant – therefore the Motion is Granted.

Defendant's Motion in Limine #4 regarding Police Officers Reports – The Arizona Rules of Evidence govern admission of evidence – therefore the Court will not restrict admission of evidence beyond the Rules and Motion is Denied.

Defendant's Motion in Limine #5 regarding admission of the citation – The Citation is not proof of a violation or evidence per the Arizona Rules of Evidence – therefore the Motion is Denied.

Defendant's Motion in Limine #6 regarding admission of pages from Defendant's previous Motion to Dismiss – The Court finds that the previous Motion was ruled upon and the Court will not change its ruling and the previous Motion itself is not evidence – therefore the Motion is Denied.

Defendant's Motion in Limine #7 regarding admission of Selected Statements and State's Response to previous Motion – The Court finds that this is irrelevant to the Charges, Prosecution and Defense of the same – therefore the Motion is Denied.

Defendant's Motion in Limine #8 regarding the Defendant's Cell Phone bill – The Court finds that this is irrelevant to the Charges – therefore the Motion is Denied.

Defendant's Motion in Limine #9 regarding Officer Testimony after Microphone was turned off or request for Willits Instruction – A Willitts Instruction is not appropriate and all other Evidence or Testimony will be governed by the Criminal Rules of Procedure and Arizona Rules of Evidence and the Court will not suppress relevant testimony that would be allowed under the same Rules – therefore the Motion is Denied.

(page 1)

I CERTIFY that a copy of this document has been or will be provided on _____ to:
☐ The State   ☐ Defendant ☐ at the above address ☐ in court   ☐ Defendant's Attorney ☐ at the above address ☐ in court
Date:   -          Clerk _____

CR 8150-614   R: 2/8/16

Defendant's Motion in Limine #10 regarding establishing standards to Official/Police decisions – The Court will not "Establish" this as a relevant defense for the Defendant – therefore the Motion is Denied.

Defendant's Motion in Limine #11 regarding establishing any fact of authority of Officials or Police – All testimony and evidence will be governed by the Arizona Rules of Evidence and the Court will not rule at this time on admissibility – therefore the Motion is Denied.

The additional remaining motions were also ruled on as follows:

State's Motion of 1/23/2019 to Strike Late Filed Motions is Moot. The Trial date was vacated and all motions were to be resolved at this Hearing.

Defendant's Motion of 1/24/2019 to Dismiss violation of Scottsdale City Code 19-13 as "Overbroad in Violation of the First Amendment." The Court has requested from the State a Brief regarding the Court's Jurisdiction in City Ordinances. The Defendant's response (if any) will be reviewed prior to a ruling on this particular Motion. Other than a jurisdiction issue, the Court does not find the City Code to be a violation of the First Amendment.

Defendant's Request of 1/24/2019 that Judge Osterfeld not decide on any outstanding motions due to the Special Action, the Superior Court would have jurisdiction to issue any particular stay for action for any proceedings – therefore this Motion is Denied.

Defendant's Motion of 1/24/2019 to Dismiss the Charge of Trespassing – The Scottsdale Court has already ruled on this and the Court finds no new relevant information has been provided in this repetitive motion – therefore this Motion is Denied.

Defendant's Motion to Compel Depositions and combined Motion for Sanctions is Denied as untimely.

Defendant's Motion of 4/2/2019 to Dismiss Charges for Lack of Probable Cause – The right to a Preliminary Hearing is governed under Rule 5.1 of the Rules of Criminal Procedure and restricts the right to felony complaints – therefore this Motion is Denied.

Depositions/Interviews – Both Parties have agreed to cooperate in setting up Officer Interviews and the Officers are not restricted from being represented by private counsel at the interviews. The Court will not compel Depositions of the Officers at this time.

The State's Motion to set Trial – Having all other Motions resolved at this Oral Argument, the Court reviewed dates available with both Parties and sets the Bench Trial to July 26th, 2019 at 8:00 am with a Status Conference set for July 11th, 2019 at 3:00 pm. The Court also imposes a restriction on all further motions to be submitted at least 40 days prior to the Trial date and the Court will advise the State on any Defendant's Motions as to whether a Response from the State will be required. The Defendant is allowed out of State Travel from June 8th, 2019 thru June 15th, 2019 and the Court requests that any other travel be noticed in writing to the Court prior to travel for the purpose of communicating with the Defendant.

Dated: April 16, 2019

Andrew Warianka,
Justice of the Peace, Pro tem

(page 2)

EXHIBIT 8



# Maricopa County Justice Courts, Arizona

**White Tank Justice Court**   10420 W. Van Buren Ave. #103, Avondale, AZ 85323   602-372-8003

| STATE OF ARIZONA | | CASE NUMBER: JC2017136254 |
|---|---|---|
| KEN FLINT<br>3700 N 75TH ST<br>SCOTTSDALE, AZ 85251<br>T 480-312-2710<br>F 480-312-7795<br>Deputy County Attorney / Address / Phone /Email | vs. | MARK STUART<br>8629 E CHERYL DR<br>SCOTTSDALE, AZ 85258<br>T 480-922-6169<br>F 480-626-4340<br>Defendant(s) Name / Address / Email / Phone |

Attorney for Defendant(s) Name / Address / Phone /Email

---

## RULING ON MOTION

On this date 07/07/2019 _____ the ☐ State ☒ Defendant filed a motion herein requesting the following relief:

SECOND REQUEST FOR PROBABLE CAUSE DETERMINATION BEFORE A NEUTRAL MAGISTRATE

The ☒State ☐Defendant ☒filed a response to the motion   ☐ No responsive pleading was filed

The ☐ State ☒Defendant ☒filed a reply to the response   ☐ No reply was filed

The Court has considered that which has been submitted by the parties, **IT IS ORDERED**

☐ Granting said motion   ☒Denying said motion

☐ **IT IS FURTHER ORDERED** resetting this matter for

Date: _____ Time: _____ _____   ☐ Time excluded

Be in court at least 15 minutes before the scheduled hearing.
**YOU MUST CHECK IN AT THE FRONT COUNTER BEFORE ENTERING THE COURT ROOM.**
(Esté en el tribunal por lo menos 15 minutos antes de la audiencia programada.)
(DEBE REGISTRARSE EN EL MOSTRADOR DELANTERO ANTES DE ENTRAR EN LA SALA DEL TRIBUNAL)

REQUESTS FOR REASONABLE ACCOMMODATIONS FOR PERSONS WITH DISABILITIES SHOULD BE MADE TO THE COURT AS SOON AS POSSIBLE.
(LAS SOLICITUDES PARA ARREGLOS O ADAPTACIONES RAZONABLES PARA PERSONAS CON DISCAPACIDADES SE DEBEN PRESENTAR ANTE EL TRIBUNAL LO MAS ANTES POSIBLE.)

If an interpreter is needed, please contact the court listed above to request an interpreter be provided.
(En caso de necesitarse un intérprete, favor de comunicarse con el Tribunal antes mencionado para solicitar que se brinden los servicios de un intérprete.)

☐ **IT IS FURTHER ORDERED**

Date: 8/7/19 _____ Justice of the Peace _____

I CERTIFY that a copy of this document has been or will be provided on 8/8/19 ___ to:
☒The State ☒Defendant ☒at the above address ☐in court   ☐ Defendant's Attorney☐ at the above address☐ in court
Date: 8/8/19 Clerk _____

8150-641 R: 4/4/16

EXHIBIT 9



**Scottsdale City Court • 3700 N 75th Street Scottsdale, AZ 85251 • (480) 312-2442**

**Fax: (480) 312-2764 • court@scottsdaleaz.gov • www.ScottsdaleAZ.gov/Court**

**ORI: AZ007111J • Maricopa County, Arizona**

| **State of Arizona** | Case # SC 2017 003568 | **Attorney for the Defendant** |
| **VS** | Complaint # 1997588 20190787 | |
| MARK ELLIOTT STUART | | |

# Judgment and Sentence

Defendant: MARK ELLIOTT STUART          Date of Birth: 06/04/62

The Defendant is advised of the charge(s), the determination of guilt, and is given the opportunity to speak

Pursuant to A R S § 13-607, the court finds as follows.

☐ **Waiver of Trial** – The Defendant knowingly, voluntarily and intelligently waived all pertinent rights. The basis of finding of guilt was based upon a ☐ plea of guilty or ☐ no contest

☐ **Waiver of Counsel** – The Defendant knowingly, voluntarily and intelligently waived defendant's right to counsel after having been fully appraised of the defendant's right to counsel

☒ **Bench Trial Verdict** – The basis of the finding of guilty was by trial to the Court

☐ **Jury Verdict** – The basis of the finding of guilt was by trial to a jury.

| Count 01 | Charge Date 2/7/17 | Charge Criminal Trespassing, ARS§13-1503 A, Class 2 misd. |
| Disposition: ☐ Plead Guilty _____ | ☐ Found Guilty by the Court _NOT Guilty_ J.S. | ☐ Found Guilty by a jury _____ |

| Count 02 | Charge Date 2/7/17 | Charge Failure to Obey a Police Officer, SCC§19-13, Class 1 misd |
| Disposition: ☐ Plead Guilty _____ | ☒ Found Guilty by the Court J.S. | ☐ Found Guilty by a jury _____ |

| Count | Charge Date | Charge |
| Disposition: ☐ Plead Guilty _____ | ☐ Found Guilty by the Court _____ | ☐ Found Guilty by a jury _____ |

☐ The Deputy certifies that the Defendant's right index fingerprint was permanently affixed to this document at the time of sentencing and in open Court

☐ Pursuant to Arizona Supreme Court Rules of Criminal Procedure, Rule 17.1(a)(3), a law enforcement officer in defendant's state of residence, or if a resident of Arizona the county of residence, certifies that the defendant personally appeared, signed a guilty plea form, and that the officer affixed the defendant's fingerprint to the document attached.

2/10/20    J. Campares
           City of Phoenix Judge
           Sitting as Judge Pro tem

Sentence is Fine of $400°° to be completely suspended upon completion of 40 hours of Community restitution by June 9, 2020

Mark E. Stuart
Defendant Mark Stuart

EXHIBIT 10

Clerk of the Superior Court
*** Filed ***
11/17/2020 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

                                            CLERK OF THE COURT
HONORABLE DOUGLAS GERLACH                         T. DeRaddo
                                                    Deputy

STATE OF ARIZONA                          KENNETH M FLINT

v.

MARK ELLIOTT STUART (001)                  MARK ELLIOTT STUART
                                           8629 E CHERYL DR
                                           SCOTTSDALE AZ  85258

                                           COMM. POPKO
                                           REMAND DESK-LCA-CCC
                                           SCOTTSDALE MUNICIPAL COURT
                                           JUDGE GERLACH

RECORD APPEAL RULING / REMAND

Lower Court Case No:  SC2017003568

        This is a case in which Mark Stuart was convicted in the Scottsdale City Court of a class 1 misdemeanor because he refused to comply with an instruction of an on-duty police officer given in the performance of that officer's duties, *viz.*, an instruction to sit down on a bench so that the officer could prepare and issue a citation.  With this appeal, Stuart attempts to recast his refusal as an exercise in aid of his constitutional free speech rights, and thus, the conviction as a denial of those rights.

        The court has considered Stuart's appellate brief, the response filed on behalf of the State of Arizona, the arguments presented at a hearing that took place on October 29, and relevant matters in the record. Because Stuart had no legally sufficient basis for refusing to sit down on the bench as directed, this court has decided to affirm the judgment of the Scottsdale City Court.[1]

_____

[1] As part of this ruling, the court is granting Stuart leave to file a 56-page brief.  Because numerous citations in Stuart's initial brief were not consistent with the way that the record on appeal was constructed, the court asked Stuart to submit an amended brief with citations corresponding to the record.  References throughout this ruling to Stuart's

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020


**A. Facts Relevant to this Appeal.**

    **1. Stuart's Refusal.**

    Acting on instructions from Scottsdale mayor Jim Lane, and apparently with at least the implicit consent of the remaining members of the Scottsdale city council, Scottsdale police officers removed Stuart from the council's February 7, 2017, public meeting.  Lane ordered that action after Stuart had become disruptive and refused Lane's request to leave voluntarily.  [City of Scottsdale, Closed Caption Transcript (2/7/17) at 9[2]]

    Once outside the building, a Scottsdale police officer told Stuart that he was under arrest and instructed him "to sit down on a nearby bench" so that a citation could be issued. [Scottsdale Police Dep't, Incident/Investigation Report (2/7/17) at 6]  Stuart refused to comply with that instruction.  [*Id*.]  The officer warned Stuart that, if he did not sit down, he would be charged with disorderly conduct and taken to jail.  [*Id*.]  Stuart again refused to comply.  [*Id*.]  He was then handcuffed and guided to the bench, where the arresting officer "sat him down."  [*Id*.]  A short time later, Stuart was taken to the city jail and booked.  [*Id*.; Stuart Br. at 8, paras. 19-20]

    Stuart's refusal to sit down on the bench as instructed led to his conviction for violating Scottsdale city code section 19-13, which states in relevant part:  "No person shall refuse to obey a police officer engaged in the discharge of his duty."  A violation of that section is a class 1 misdemeanor.  Scottsdale city code section 1-8.

---

opening brief are to that amended brief (filed 10/19/20), which, like its predecessor, consumed 56 pages.  The court asked the State to submit a written response regarding only one issue, which the State did.  [See discussion in section E, below]

[2]  This transcript is a City of Scottsdale public record that is available on the Internet.  As such, the transcript is a matter of which this court may take judicial notice.  *Miller v. Berryhill*, No. EDCV 16-1822-KS, 2017 WL 3671158, at *5 (C.D. Cal. Aug. 25, 2017) (stating that "the court can take judicial notice of public records available from reliable Internet sources such as websites run by government agencies" (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on websites of two school districts))); *County of Santa Clara v. Astra USA, Inc.*, 401 F.Supp.2d 1022, 1024 (N.D.Cal. 2005) (taking judicial notice of information posted on a Department of Health and Human Services web site); *see also State v. Rojers*, 216 Ariz. 555, 560, ¶25 (App. 2007) (noting that appellate courts often utilize the doctrine of judicial notice to add facts necessary to affirm the trial court (citations omitted)); *In re Sabino R.*, 198 Ariz. 424, 425, ¶4 (App. 2000) (recognizing that Ariz. R. Evid. 201 "allows this [appellate] court to take judicial notice of anything of which the trial court could take notice, even if the trial court was never asked to take notice").

Since the oral argument took place, the court has located the recording of the February 7 council meeting, which was submitted as part of the record on appeal, and compared that recording to the transcript.  No citation to the transcript in this ruling is inconsistent with what can be heard on the recording.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

**2.  Events Preceding Stuart's Refusal.**

Stuart maintains that his refusal to comply with the police officer's instruction was permitted because of the following set of events that led up to his removal from the council meeting.

At that meeting, Stuart attempted to speak during an open call to the public.  One of Stuart's purposes was to solicit volunteers to circulate petitions in support of the Save Our Preserve initiative, which Stuart wanted to have placed on the ballot at the next election, thus allowing Scottsdale voters to decide whether the city could proceed with plans to construct a Desert Discovery Center in the McDowell Sonoran Preserve.  [See Def's. Trial Exh. 2[3]]

In a letter citing A.R.S. §38-431.01(H), Scottsdale city attorney Bruce Washburn told Stuart, eight days before the meeting, that "[t]he obtaining of signatures on petitions is not a matter that is within the jurisdiction of the Scottsdale city council, and therefore, under the [Arizona] Open Meeting Law, is not a permissible topic to be addressed during the call to the public." [Def's. Trial Exh. 2]  At the same time, Washburn explained that Stuart was "free to address your comments to other matters that are within the council's jurisdiction, such as, for example, whether they should authorize any particular construction that might take place in the Preserve." [*Id*.]

An email exchange between Stuart and Washburn ensued.  Stuart insisted that the United States and Arizona constitutions guaranteed him the right to speak in support of the election initiative at the council meeting, including the right to recruit petition circulators and signers.  [*Id.*] In response, Washburn reminded Stuart that "comments during the call to the public are by statute restricted to matters within the jurisdiction of the City Council.  The obtaining of signatures on petitions is not a matter that is within the jurisdiction of the Scottsdale City Council." [*Id*.]

On the morning of the council meeting, Stuart provided both Lane and the Scottsdale city clerk with copies of the materials that described what he (Stuart) intended to present at that meeting.   [*Id.*]  Those materials included:

> (i) An "update" on the progress being made to obtain signatures for the Save Our Preserve effort along with information about how to reach Stuart by telephone, email, and the Internet;
> (ii)  Six pages devoted to Stuart's view of his asserted constitutional right to speak;

---

[3]  Throughout the oral argument, Stuart referred to his "Exhibit 11" when discussing his planned presentation to the city council.  No Exhibit 11 was admitted in evidence at the trial.  For purposes of this ruling, the court assumes that what Stuart referred to as Exhibit 11 is Defendant's Trial Exhibit 2.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                              11/13/2020

       (iii) A threat to sue Lane "and your co-conspirators on the council" for punitive damages;

       (iv) A description of the progress being made to collect signatures along with an invitation to join that effort;

       (v) A reference to "creat[ing] desirable political outcomes here in Scottsdale," and

       (vi) A request to remove an item from the council's published agenda because "it is directly at odds with the Save Our Preserve ballot initiative."

In short, a reasonable person could view the materials that Stuart identified as his "presentation" to the city council as signaling an intent to deliver what amounted to a campaign speech in support of his election initiative.

       Before Stuart could begin his presentation at the council meeting, Lane reminded him that he was not permitted to speak about "the Preserve and your petition." [City of Scottsdale, Closed Caption Transcript (2/7/17) at 8] In response, Stuart insisted, over and over, that he had a right to do so. In response, Lane said that he was not going to debate the issue, but that Stuart would be permitted "to speak about something other than trying to influence an election." [*Id.* at 8-9]

       When Stuart insisted that, "I will give our save the ballot [sic] initiative update," and "[t]here's nothing that you can do to stop me," Lane asked Stuart to "simply remove yourself then from the podium." [*Id.* at 9] Stuart responded, "I'm not willing to do that. I would like to give my full public comment." [*Id.*] Lane then asked Scottsdale police officers to escort Stuart out of the meeting, which they did. [*Id.*] There is no dispute here that, by the time police officers and Stuart were outside the building, Stuart was under arrest. [Stuart Br. at 7-8, paras. 17-19]

       Seemingly in contemplation of Article 2, section 15 of the Scottsdale City Charter, the materials that Stuart submitted to Lane and the city clerk in advance of the council meeting also included a reference to "a citizen petition that I hope to present to the council tonight." [Def's. Trial Exh. 2] Article 2, section 15 states that "[a]ny citizen of the city may appear before the council at any regular meeting and present a *written petition*; such petition shall be acted upon by the council, in the regular course of business, within thirty (30) days." (Emphasis added) No such written petition appears in either of the two trial exhibits making up what Stuart described as his "presentation" to the council [see *id.*; State's Trial Exh. 7], and otherwise, no such written petition is among the exhibits admitted in evidence at the trial.

       During the oral argument, Stuart also said that he wanted to speak to the city council about the substance of the letter that he had received from Washburn and why the position taken in that

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

letter was unconstitutional.[4]  At the same time, Stuart also conceded that he did not think to raise that issue as a basis for his defense until after the trial.[5]

In sum, the record can be reasonably viewed to establish that, when Lane advised Stuart that he would be permitted "to speak about something other than" his election initiative, Stuart refused the invitation.  He did not say, for example, that he had a written petition to submit, much less did he attempt to submit a written petition.  Nor did Stuart say that he wanted to speak about Washburn's purported disregard for his (Stuart's) constitutional rights, which Stuart's brief now maintains (at 7, para. 15) is a subject about which he was denied an opportunity to speak.  Instead, the record establishes that, when Lane explained to Stuart that he would be allowed to speak about anything other than urging support for his election initiative, Stuart insisted on speaking about that initiative anyway.  Only then did Lane ask Stuart to step away from the podium.

**B.  Issues Presented.**

Stuart's brief contends that a reversal of his conviction is required for any of the following reasons:

(i)  Stuart was wrongfully convicted for failing to comply with a police officer's order because the conviction arose out of the denial of his constitutional right to speak.  [Stuart Br. at 17-24]

(ii)  Stuart was wrongfully convicted for violating a provision of the Scottsdale city code (*viz.*, section 19-13) that is both unconstitutionally vague and unconstitutionally overbroad.  [*Id.* at 24-32]

(iii)  Stuart was denied due process because the prosecutor who conducted the trial was afflicted with what should have been treated as a disqualifying conflict of interest.  [*Id.* at 32-39]

(iv)  Stuart was the victim of prosecutorial vindictiveness.  [*Id.*  at 39-42]

---

[4]  See FTR Recording (10/29/20) at approx. 11:05.

[5]  Because the issue was not raised at trial, the issue warrants no consideration on appeal.  *McDowell Mountain Ranch Land Coalition v. Vizcaino*, 190 Ariz. 1, 5 (1997) (stating that issues not raised in the proceeding below are not considered on appeal); *National Brojer Assocs., Inc. v. Marlyn Nutraceuticals, Inc.*, 211 Ariz. 210, 216, ¶30 (App. 2005) (stating that appellate courts "will not address issues raised for the first time on appeal"); *City of Tempe v. Fleming*, 168 Ariz. 454, 456 (App. 1991) ("arguments not made at the trial court cannot be asserted on appeal").

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                   11/13/2020

      (v)  Stuart was denied his right to a speedy trial under Ariz. R. Crim P. 8.2 and the sixth amendment to the United States constitution.  [*Id.* at 42-55]

## C.  Standard of Review.

      It is well-settled that this court, like all other Arizona appellate courts, must view "the facts in the light most favorable to sustaining the conviction[]." *State v. Rivera*, 226 Ariz. 325, 327, ¶2 (App. 2011) (citation and internal quotation marks omitted)); *State v. Karr*, 221 Ariz. 319, 320, ¶2 (App. 2008) ("We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant" (citation and internal quotation marks omitted)); *see also Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, 417, ¶2 (App. 2010) ("When reviewing issues decided following a bench trial, we view the facts in the light most favorable to upholding the court's ruling").

      "[T]he controlling question is whether the record contains 'substantial evidence to warrant a conviction.'" *State v. West*, 226 Ariz. 559, 562, ¶14 (2011) (quoting then-Ariz. R. Crim P. 20(a) (now Ariz. R. Crim P. 20(b)(2)); *State v. Windsor*, 224 Ariz. 103, 104, ¶4 (App. 2010) (recognizing that an appellate court "will not reverse a conviction unless the state has failed to present substantial evidence of guilt").  Evidence is substantial if it is sufficient to support a conclusion "even if the record also supports a different conclusion." *JHass Group L.L.C. v. Arizona Dep't of Financial Inst.*, 238 Ariz. 377, 387, ¶37 (App. 2015) (citation omitted); *see also State v. White*, 155 Ariz. 452, 456 (1987) ("The standard of review on this appeal is whether there is substantial evidence to support the jury's verdict. . . . [S]eeming conflicts of evidence must be resolved against the defendant" (citations omitted)).  A conviction will be reversed only if there is a "complete absence of probative facts" to support it.  *Rivera*, 226 Ariz. at 327, ¶3 (citation and internal quotation marks omitted); *see also State v. Girdler*, 138 Ariz. 482, 488 (1983) (stating that reversal of a conviction is warranted only when there is "a complete lack of probative evidence" to support it) .

      To obtain appellate review of the sufficiency of the evidence, an appellant must submit a "certified transcript of the trial."  Sup. Ct. R. App. P. (Crim.) 7(b)(9).  "[F]ailure to submit a complete record on appeal precludes review of the sufficiency of the evidence," and when "[f]aced with an incomplete transcript the Superior Court abuse[s] its discretion by not affirming the municipal trial court." *State ex rel. Baumert v. Superior Court*, 118 Ariz. 259, 260-61 (1978); *see also State v. Mendoza*, 181 Ariz. 472, 474 (App. 1995) ("When matters are not included in the record on appeal, the missing portion of the record is presumed to support the decision of the trial court").  When, as here, Stuart has arranged for submission of only a partial transcript, this court is, nevertheless, required to consider questions of law that his brief raises. *Smith v. Smith*, 115 Ariz. 299, 302 (App. 1977) ("[E]ven if no transcript is forwarded on appeal, the reviewing court

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                         11/13/2020

must consider questions of law which are raised by the partial record transmitted to the court" (citing *Orlando v. Northcutt*, 103 Ariz. 298, 300 (1968)).

During the oral argument, Stuart insisted that this court was permitted to review the sufficiency of the evidence that he presented to the trial court without the submission of a complete transcript because he had submitted all that was relevant. When asked how the court could confirm that, Stuart replied, in effect, that the court should take his word for it.[6] No authority applicable to appeals to this court allows an appellant to decide what is relevant and then, based on that self-interested determination, submit what amounts to an edited transcript.

At the same time, Stuart also maintained that both Ariz. R. Crim P. 31.8 and Rule 7(b)(9) of the Superior Court Rules of Appellate Procedure (Criminal) permit the submission of a partial transcript.[7] Rule 31.8 of the criminal procedure rules does not apply here. Superior Ct. R. App. P. (Criminal) 1(b) (stating that the Rules of Criminal Procedure apply only in the absence of an applicable appellate rule). And, Rule 7(b)(9) refers to a transcript and not sections of a transcript or a partial transcript. Further to that point, Stuart's contention ignores what our supreme court said in *Baumert*, which, as here, was an appeal from a city court:  "It has been the contention of the state throughout these proceedings that the defendant in appealing a conviction by a justice or police court must furnish a *complete* transcript of the trial. *We agree*." 118 Ariz. at 260 (applying Rule 7(b), emphasis added); see also *Meister v. Rakow*, 79 Ariz. 97, 100 (1955) (recognizing that submission of a partial transcript meant that "all the evidence is not before us," and consequently, the findings and judgment of the lower court will not be set aside); Maricopa Cty. Loc. R. 9.4(b) (requiring the "verbatim record" of a limited jurisdiction court, and not merely selected parts of that record, to be transcribed when a proceeding exceeds 90 minutes).[8]

---

[6]  See FTR Recording (10/29/20) at approx. 10:24.

[7]  See FTR Recording (10/29/20) at approx. 10:27.

[8]  Although Stuart is not an attorney, that does not excuse his failure to submit a complete trial transcript. *In re Marriage of Williams*, 219 Ariz. 546, 549, ¶13 (App. 2008) ("Parties who choose to represent themselves . . . are held to the same standards as attorneys with respect to familiarity with required procedures and . . . notice of statutes and local rules" (citation and internal quotation marks omitted, alterations added)); *see also Copper State Bank v. Saggio*, 139 Ariz. 438, 441 (App. 1984) (same).  Moreover, it is not as if Stuart is a stranger to litigation. *See Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, 2020 WL 4446504, at *1 (D. Ariz. Aug. 3, 2020) (Teilborg, J.) (stating that "[t]his case arises out of Plaintiff Mark Stuart's litigiousness").

During the oral argument, Stuart asked for the opportunity to obtain and submit the unfiled parts of the transcript. The court denied that request.  In effect, Stuart's request was similar to a trial lawyer asking the judge to resume the trial so that additional testimony could be presented after a question emerged from the jury's deliberations that sensitized the lawyer to a failure to put on certain testimony that had been overlooked.  And, it is not as if Stuart can reasonably claim that he was caught unaware:  applicable rule and case law put him on notice that a complete transcript was to be prepared and submitted before he filed his brief and certainly before the court convened oral argument.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                11/13/2020

**D.  Applicable Law.**

**1.  Stuart's Asserted Right to Speak.**

Stuart's principal argument on appeal may be summarized as follows:

●  The refusal to allow Stuart to speak at the city council meeting was an impermissible government-imposed prior restraint in violation of his right to speak under the United States and Arizona constitutions.[9]

●  Consequently, the orders that followed that refusal, *viz.* Lane's order to move away from the speaker's podium and the later order of the Scottsdale police to sit down both grew out of that violation and, thus, were themselves unlawful.

●  A citizen may not be convicted for failure to comply with a government's unlawful order.[10]

The prohibition against free speech protections "is not an absolute.  Restraints are permitted for appropriate reasons."  *Elrod v. Burns,* 427 U.S. 347, 360 (1976); *see also Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee persons the right to communicate their views at all times or in any

---

[9]  It should be remembered that, at the council meeting, the only subject about which Stuart was denied an opportunity to speak was support for his election initiative.  Once at the meeting, Stuart chose only to try debating Lane about his right to speak in support of that initiative and, despite being allowed to speak on other subjects, effectively chose not to attempt doing so before he was, in effect, ruled out of order.

[10]  Although protection of speech from government action is broader under article 2, section 6 of the Arizona constitution than under the first amendment to the United States constitution, Stuart's brief provides no developed argument that warrants analyzing the right to speak issue here differently under the former than under than latter.  See e.g., *Committee for Justice & Fairness v. Arizona Secretary of State's Office*, 235 Ariz. 347, 356 n.15, ¶35 (App. 2014).  Stated otherwise, the Stuart brief presents no argument supported by applicable authority to the effect that what occurred in this case was permissible under federal constitutional standards but not Arizona constitutional standards.  Indeed, with respect to Stuart's asserted right to speak, the Stuart brief (at 16-24) relies substantially on federal case law with Arizona case law occasionally mixed in, and then only to recite hornbook-like principles, without any attempt to explain why the events here pass muster under the federal but not the state constitution.  During the oral argument, Stuart resisted this characterization of his brief.  But fairly read, although that brief asserts a violation of article 2, section 6, it fails to present a reasoned explanation why, without regard to the United States constitution and federal case law authorities, what transpired here violated the state constitution.  In short, the contention that a violation of the Arizona constitution occurred here irrespective of the United States constitution is a contention supported only by Stuart's own say-so.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                   11/13/2020

manner that may be desired").  Thus, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985); *see also Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995) ("It is undeniable, of course, that speech which is constitutionally protected against state suppression is not thereby accorded a guaranteed forum on all property owned by the State").

Both federal and Arizona courts recognize that the extent to which the government may regulate speech depends on the nature of the forum where the speech takes place.  *E.g., Christian Legal Soc. v. Martinez*, 561 U.S. 661, 679 (2010) (recognizing that "in a progression of cases, this Court has employed forum analysis to determine when a governmental entity, in regulating property in its charge, may place limitations on speech"); *United States v. Kokinda*, 497 U.S. 720, 726–27 (1990) (stating that "the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum" (citing *Cornelius*, 473 U.S. at 800)); *Korwin v. Cotton*, 234 Ariz. 549, 554, ¶9 (App. 2014) (adopting the United States Supreme Court's "so-called forum analysis":  "Under this analysis, the extent to which the government can control access to a particular forum depends on the nature of the forum").  Courts have generally recognized three types of public forums: traditional, designated, and limited.  *Christian Legal Soc.*, 561 U.S. at 679 n.11; *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44–46 (1983).  Traditional public forums are places such as streets and parks, "which by long tradition or by government fiat have been devoted to assembly and debate."  *Perry,* 460 U.S. at 45.  Designated public forums include nontraditional forums that "the state has opened for use by the public as a place for expressive activity."  *Id.*; *see also Cornelius*, 473 U.S. at 802 (recognizing designated public forum as government property not traditionally regarded as a public forum that is opened to the public).  Limited public forums are government property "limited to use by certain groups or dedicated solely to the discussion of certain subjects."  *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 470 (2009).[11]

"When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving its

---

[11] No Arizona appellate court decision has adopted the term "limited public forum" in its forum analysis.  A "nonpublic forum," however, has been recognized.  *Korwin*, 234 Ariz. at 555, ¶15.  And, a limited public forum and a nonpublic forum are two sides of the same coin.  *E.g., Jackson v. McCurry*, 303 F.Supp.3d 1367, 1381 n.10 (M.D. Ga. 2017) (quoting *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1226 (11th Cir. 2017) (recognizing that the Supreme Court "has, in the past, used the term 'nonpublic forum' when it should have employed 'limited public forum'")); *see also Summum v. Callaghan*, 130 F.3d 906, 914 (10th Cir. 1997) (stating that "the [Supreme] Court has used the term 'limited public forum' to describe a type of nonpublic forum").

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

forum for . . . the discussion of certain topics." *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 106 (2001) (citations, internal quotation marks, and formatting omitted, ellipsis added).

Courts have repeatedly recognized meetings of city councils and similar public bodies as either limited public or nonpublic forums. *Norse v. City of Santa Cruz,* 629 F.3d 966, 975 (9th Cir. 2010) ("[T]he entire city council meeting held in public is a limited public forum"); *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 385 (4th Cir. 2008) (recognizing that planning commission meeting was a limited public forum); *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 281 (3rd Cir. 2004) (citizen's forum portion of township's board of supervisors meeting considered limited public forum); *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech"); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270 (9th Cir. 1995) (stating that the nature of "city council and city board meetings fit more neatly into the nonpublic forum niche"); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) (recognizing city council meeting where citizens afforded opportunity to address council as limited public forum); *Snyder v. Murray City Corp.*, 902 F.Supp. 1444, 1451 (D. Utah 1995) (recognizing city council meeting as a nonpublic forum), *rev'd in part on other grounds*, 159 F.3d 1227 (10th Cir. 1998); *see also Cornelius*, 473 U.S. at 803, 805 (government workplace is nonpublic forum during hours of government business: "Not every instrumentality used for communication . . . is a traditional public forum or a public forum by designation"); *Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989) (stating that city commission meeting is forum where speech may be restricted "to specified subject matter" (citation and internal quotation marks omitted)); *Jackson v. McCurry*, 303 F.Supp.3d 1367, 1381 (M.D. Ga. 2017) (recognizing school board meeting as limited public forum); *Lundberg v. West Monona Cmty. Sch. Dist.*, 731 F.Supp 331, 337-38 (N.D. Ia. 1989) (recognizing school board meeting as a nonpublic forum).

Either way – whether a limited public or nonpublic forum – the outcome is the same. Thus, "[a] council can regulate not only the time, place, and manner of speech in a limited public forum, but also the content of speech – as long as content-based regulations are *viewpoint neutral* and enforced that way." *Norse*, 629 F.3d at 975 (emphasis added); *accord Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 & n.11, 697 (2010) (concluding that content-based speech restriction in limited public forum was permissible because it was "reasonable and viewpoint neutral"); *Summum*, 555 U.S. at 469-70 (government entity may impose restrictions on speech that are reasonable and viewpoint neutral in limited public forum); *International Society for Krishna Consciousness*, *Inc. v. Lee*, 505 U.S. 672, 683 (1992) (stating that speech restriction in nonpublic forum "need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation" (italics in text, citation and internal quotation marks omitted)); *Kokinda*, 497 U.S. at 730 (regulation of speech activities "for nonpublic fora. . . must be reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view'" (quoting *Perry*, 460 U.S. at 46)); *Barrett v. Walker County Sch. Dist.*, 872

Docket Code 506                          Form L512                          Page 10

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                            11/13/2020

F.3d 1209, 1225 (11th Cir. 2017) (""[P]rior restraints on speech can exist in limited public fora"); *Kindt*, 67 F.3d at 271 ("[L]imitations on speech at [city council] meetings must be reasonable and viewpoint neutral, but that is all they need to be"); *see also Pleasant Grove*, 555 U.S. at 470 ("[A] government entity may impose restrictions on speech that are reasonable and viewpoint neutral"); *Perry*, 460 U.S. at 61 (stating that prohibition against government imposed restrictions on speech applies only when the restrictions "discriminate among viewpoints").

The record here establishes that the refusal to allow Stuart to speak in support of his election initiative was driven exclusively by the limit that A.R.S. §38-431.01(H) imposes. Other than Stuart's self-interested protests to the contrary, nothing in the record suggests that the city's desire to comply with applicable law was unreasonable. And, as explained above, the record also establishes that the refusal to allow Stuart to speak was not driven because of a disagreement with the substance of what Stuart wanted to say. In other words, in the circumstances of this case, the refusal to allow Stuart to urge support at a city council meeting for what was a political issue and to solicit volunteers to join the effort was both reasonable and viewpoint-neutral.[12]

The Stuart brief seems to assume that, merely because Stuart wished to utter words, his proposed speech had content, and thus, to deny him the opportunity to speak those words was an impermissible content-based speech restriction. The issue, however, is not whether a speaker had something to say: the issue is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (citation omitted)). "[A] regulation is generally 'content-neutral' if its restrictions on speech are not based on disagreement" with the substance of the message. *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 326–27 (5th Cir. 2005) (citations and footnote omitted); *accord Kokinda*, 497 U.S. at 730 (regulation of speech activities "for nonpublic for a . . . must be

---

[12] Although the Stuart brief maintains, in effect, that he had what amounted to an unqualified right to speak during the open call to the public, that brief does not dispute that urging support, and soliciting volunteers to obtain signatures, for an election initiative was beyond the city council's jurisdiction. See A.R.S. §38-431.01(H). Nor does the Stuart brief argue that the statute's restriction to "any issue within the jurisdiction of the public body" is somehow unconstitutional. Indeed the Stuart brief never discusses section 38-431.01(H) and its effect When asked about this during the oral argument, Stuart replied, in so many words, that section 38-431.01(H) was unconstitutional, at least as applied to him, without the brief having any need to say so. The court is unaware of any authority supporting that position. The court is aware, however, of authority recognizing that constitutional challenges can be waived when not sufficiently briefed. *See Commodity Futures Trading Comm'n v. Tokheim*, 153 F.3d 474, 476 n.3 (7th Cir. 1998) ("[U]ndeveloped arguments are waived even where those arguments raise constitutional issues" (citation, internal quotation marks, ellipsis, and parentheses omitted)); *Utah Environ. Congress v. MacWhorter*, No. 2:08-CV-118-SA, 2011 WL 4901317, at *16 (D. Utah Oct. 4, 2011) (concluding that "inadequately briefed" constitutional challenge was waived); *State v. Valenzuela*, 237 Ariz. 307, 316, ¶34 (App. 2015), *vacated on other grounds*, 239 Ariz. 299 (2016) (challenge to constitutionality of a statute is waived when argument to that effect is not fully developed); *see also Sholes v. Fernando*, 228 Ariz. 455, 457 n.1, ¶1 (App. 2011) (stating that issues "not argued sufficiently" on appeal are not considered).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

reasonable and 'not an effort to suppress expression merely because public officials oppose the speaker's view'" (quoting *Perry*, 460 U.S. at 46)); *DeGrassi v. City of Glendora*, 207 F.3d 636, 645-46 (9th Cir. 2000) (stating that city councils "may confine their meetings to specified subject matter . . . as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view" (citation and internal quotation marks omitted)); *see also Heffron*, 452 U.S. at 649 (concluding that anti-solicitation ordinance was content-neutral because it was "applie[d] evenhandedly to all").

The Stuart brief identifies no evidence establishing that he was not allowed to speak in favor of, and solicit support for, his election initiative because Lane, Washburn, or anyone else was opposed to that initiative.  Indeed, all evidence is to the contrary.  Lane stated at the council meeting that statements from anyone about a political issue, "whether it's for or against," would not be permitted, and he went on to say that "neither side" of "an effort to influence an election" would be allowed to speak.  [City of Scottsdale, Closed Caption Transcript (2/7/17) at 8-9] Moreover, no evidence in the record suggests that, despite what Lane said, opponents of Stuart's election initiative were, nevertheless, allowed to speak on that subject.

Both in his brief and during the oral argument, Stuart insisted that the refusal to allow him to speak at the city council meeting must be subjected to strict scrutiny analysis.  In support of that contention, the Stuart brief relies on *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), which applied strict scrutiny analysis to the town's sign ordinance.  What *Reed* decided, however, did not pertain to a limited public forum:  instead, the case involved designated public forums, i.e., government properties made available to the public for expressive activity that Gilbert attempted to regulate. For that reason, Gilbert's sign ordinance was subjected to strict scrutiny analysis.

Contrary to Stuart's view, courts do not treat designated public forums in the same way that they treat limited public or nonpublic forums.  For limited public and nonpublic forums, courts have recognized that strict scrutiny analysis does *not* apply.  *See e.g., Summum*, 555 U.S. at 469-70; *Good News Club*, 533 U.S. at 106–107; 1 *Smolla & Nimmer on Freedom of Speech* §8:8.50 (Oct. 2020 Westlaw Update) (""Content-based restrictions that define the contours of a limited public forum are not subject to strict scrutiny").  Instead, as stated in the numerous cases cited above, restrictions on speech in a limited public or nonpublic forum need only be reasonable and viewpoint neutral.

To get around that, Stuart also maintained during the oral argument that *Reed*, in effect, overruled all of those cases cited above, and others, in which a reasonable and viewpoint-neutral level of scrutiny was applied to speech restrictions in limited public and nonpublic forums. Leaving aside that the issue presented in *Reed* did not require such overruling, and further leaving aside that *Reed* does not refer to overruling any prior case law, and still further leaving aside that, when the Supreme Court overrules a case, it usually knows how to say so, no case cited in the

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                11/13/2020

Stuart brief, nor any case that this court's independent research has located, supports Stuart's view of *Reed*. Instead, courts in the post-*Reed* era continue to recognize that strict scrutiny does not apply to restrictions on speech in limited public and nonpublic forums. See e.g., *Amalgamated Transit Union Local 1015 v. Spokane Trans. Authority*, 929 F.3d 643, 650-51 (9th Cir. 2019) ("In limited public forums, content-based restrictions are permissible, as long as they are reasonable and viewpoint neutral" (citation and internal quotation marks omitted)); *McDonnell v. City and County of Denver*, 878 F.3d 1247, 1253 n.2 (10th Cir. 2018) ("[C]ontent-neutral restrictions in a nonpublic forum are subject to a reasonableness test" and not strict scrutiny (citation and internal quotation marks omitted)); *Shurtleff v. City of Boston*, 337 F.Supp.3d 66, 75 n.4 (D. Mass. 2018) ("[S]trict scrutiny is not the proper standard of review for a restriction on speech in a limited public forum"); *Verlo v. Martinez*, 267 F.Supp.3d 1113, 1117 (D. Colo. 2017) (recognizing that a nonpublic forum requires a less than strict scrutiny "reasonableness evaluation"); see also 1 *Smolla & Nimmer* §8:8.50 (October 2020 update) (recognizing that strict scrutiny does not apply in limited public forum cases).

Stuart has further insisted that, even if his attempt to generate support for a political issue was not permitted at a city council meeting, he was, nevertheless, impermissibly denied a right to speak that was guaranteed to him by article 2, section 15 of the Scottsdale city charter, which says that "[a]ny citizen of the city may appear before the council at any regular meeting and present a *written* petition; such petition shall be acted upon by the council, in the regular course of business, within thirty (30) days." (Emphasis added) The record in this case includes no "written petition" that Stuart was prepared to present at the council meeting. And, the trial court was not required to accept Stuart's asserted desire to present a written petition as a proven fact based merely on his self-interested testimony. *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987) ("The trial court is not bound to accept as true the uncontradicted testimony of an interested party"); *see also City of Tucson v. Apache Motors*, 74 Ariz. 98, 107 (1952) ("The rule is that the judge . . . may or may not believe an interested party"); *Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 197, ¶12 (2012) ("[W]e have long recognized that a jury may appropriately discredit a witness's uncontradicted testimony for various reasons, including the witness's personal interest in the case").

Likewise, this court is not required to accept as true the contention in Stuart's brief (at 7, para. 13) that he was impermissibly denied an opportunity to address Washburn's purported disregard for his (Stuart's) constitutional rights. The record can be viewed reasonably to support the conclusion that Stuart was given the chance to address that issue but turned it down in favor of arguing with Lane, *viz.*, "I will give our save the ballot [sic] initiative update," and "[t]here's nothing that you can do to stop me." [City of Scottsdale, Closed Caption Transcript (2/7/17) at 9] And, because this evidence, at a minimum, can be viewed in either of two mutually inconsistent

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                11/13/2020

ways, that is enough to reject Stuart's view of things.  *E.g., White*, 155 Ariz. at 456 ("[S]eeming conflicts of evidence must be resolved against the defendant" (citations omitted)).[13]

Finally, "[t]here is a significant governmental interest in conducting orderly, efficient meetings of public bodies." *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004).  Like judges in their courtrooms, Lane had a duty to maintain decorum in council meetings by ordering disruptive individuals to leave immediately.  *E.g., Jones*, 888 F.2d at 1333 ("[T]o deny the presiding officer the authority to regulate irrelevant debate and disruptive behavior at a public meeting . . . would cause such meetings to drag on interminably, and deny others the opportunity to voice their opinions").  Because Stuart was not denied a constitutional right to speak, his conduct at the council meeting became disruptive, and citizens who disrupt public meetings may be removed without infringing on their constitutional rights.  *E.g., Norwalk*, 900 F.2d at 1424, 1426 (recognizing that speakers may be subjected to restrictions when "their speech disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting" (internal quotation marks omitted)); *see also Norse*, 629 F.3d at 976 (describing *Norwalk* as holding that a city's "'Rules of Decorum' are not facially over-broad where they only permit a presiding officer to eject an attendee for actually disturbing or impeding a meeting").

**2.  Stuart's Asserted Right to Disobey.**

It should be remembered that Stuart was not convicted for speaking or trying to speak, nor was he convicted for refusing to leave the speaker's podium after Lane asked him to do so.  He was convicted only for refusing to sit down after being asked to do so by a police officer so that a citation could be issued.

As such, even if one were to assume that Stuart was impermissibly denied the opportunity to speak at the city council meeting, under no authority cited in Stuart's brief or that this court's own research has uncovered, does that negate Stuart's conviction.  The general rule is that a person must obey a police officer's commands, even if the command is unlawful.  *See e.g., State v. Storer*, 583 A.2d 1016, 1021 (Me. Sup. Ct. 1990) ("The legality of the arrest for obstructing government administration does not turn upon either the legality of the order . . . or [the officers'] knowledge of the legality of that order.  [Defendant] had an obligation to obey the commands of the police, at least if issued in a good faith belief in their lawfulness" (citations and internal quotation marks omitted)); *cf. State v. Herrera*, 211 N.J. 308, 334-35 (2012) ("[S]uspects must obey a police officer's commands during an investigatory stop, even if the stop is unlawful, and test the stop and detention later in court. . . . Even though the suspect may have done nothing wrong, he cannot be the judge of his own cause").

---

[13]  In any event, Stuart has waived the opportunity to have this issue addressed on appeal.  See nn. 4-5 above, and accompanying text.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                        11/13/2020

To put it differently, *Wright v. Georgia*, on which the Stuart brief relies (at 17, 55), states that "one cannot be punished for failing to obey the command of an officer if that command *is itself* violative of the Constitution." 373 U.S. 284, 291-92 (1963) (emphasis added). Stuart does not contend that the instruction *itself* violated any constitutional principle. Instead, unsupported by any authority, the Stuart brief adopts what amounts to a derivative theory, *viz.*, because the refusal to allow him to speak violated his constitutional rights, what then occurred after that refusal also violated his rights. That, however, is not what *Wright* says: *Wright* says that the police officer's command must be unlawful *itself*, and not derivatively so.[14]

In short, at the moment Stuart refused to comply with what he was told to do, he was not engaged in any constitutionally protected activity. In those circumstances, he should have acceded to the police officer's instruction by sitting down on the bench and accepting a copy of the citation that was issued, while contesting the citation's validity in court later on.

### 3. Constitutionality of Section 19-13.

The only speech to which section 19-13 refers consists of words in the form of instructions or commands coming from Scottsdale police officers who are carrying out their duties. In other words, section 19-13 does not regulate constitutionally protected speech. Thus, section 19-13 does not implicate free speech concerns under either the federal or state constitutions, and that alone is sufficient to end the inquiry regarding the constitutionality of that code provision. *See State v. Brown*, 207 Ariz. 231, 236 (App. 2004) (concluding that statute that "regulates neither constitutionally protected speech nor expressive conduct . . . does not implicate the First Amendment"); *State ex rel. Napolitano v. Gravano*, 204 Ariz. 106, 113, ¶24 (App. 2002) (recognizing that "statutes [that] contain no reference to the content of speech or expressive materials . . . are speech- and content-neutral").

As explained in the following two sections for additional reasons, Stuart's void for vagueness and overbreadth challenges each independently lack merit.

---

[14]  None of the cases on which the Stuart brief relies (at 17) support overturning the conviction here. In *Wright*, the police officer's command was intended "to enforce racial discrimination," and not merely to issue a citation. 373 U.S. 284, 292 (1963). In *United States v. Goodwin*, the defendant was not convicted for failing to comply with a police officer's (or anyone else's) order. 457 U.S. 368, 384 (1982). *Shuttlesworth v. City of Birmingham* is a case, unlike here, involving a traditional public forum (streets and sidewalks). 394 U.S. 147, 148 (1969). And, in *Duran v. City of Douglas*, a police officer stopped the defendants despite, unlike here, lacking a good faith basis for doing so. 904 F.2d 1372, 1376-77 (9th Cir. 1989). The Stuart brief also relies (at 17) on language appearing in a concurring opinion in *Brown v. State of Louisiana* that commanded the support of no justice other than its author [383 U.S. 131, 149 (1966)] and an opinion dissenting from the denial of a petition for certiorari in which only one other justice joined [*Drews v. Maryland*, 381 U.S. 421 (1965)].

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                   11/13/2020

### a.  Void for Vagueness.

Stuart insists that his conviction must be set aside because section 19-13 of the Scottsdale city code is void for vagueness.  [Stuart Br. at 24-27]  That same argument was rejected in *State v. Kaiser*, where the court concluded that section 19-13 (i) can be understood by a person of ordinary intelligence, (ii) "provides sufficient objective standards for one charged with its enforcement to know what conduct is unlawful," and (iii) "does not encourage arbitrary enforcement."  204 Ariz. 514, 519, ¶16 (App. 2003).  That should end the inquiry about purported vagueness, especially when the Stuart brief does not mention *Kaiser*, much less make any attempt to explain why the *Kaiser*-court's reasoning is in any way flawed or, otherwise, why this court should ignore the holding in that case.  *See generally City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 195, ¶88 (App. 2008) (recognizing that when appellant "fails to adequately develop its argument," it is waived); *Sholes*, 228 Ariz. at 457 n.1, ¶1 (stating that issues "not argued sufficiently" are not considered).

Leaving that aside, a void for vagueness argument implicates due process and not first amendment rights.  *United States v. Williams*, 553 U.S. 285, 304-05 (2008) ("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment").  To succeed on a claim based on the denial of due process, the claimant must show resulting prejudice.  *E.g., County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶12 (App. 2010) (stating that denial of due process is not reversible error when the appellant "fails to demonstrate how it was unreasonably prejudiced by the deprivation"); *see also Fisher v. Arizona State Bd. of Nursing*, No. 1 CA-CV 18-0167, 2019 WL 764028, at *2, ¶9 (Ariz. Ct. App. 2019) ("The party asserting a denial of due process must show prejudice").  Because the refusal to comply with a police officer's instruction is not a constitutionally protected activity, Stuart was not denied due process, and for that reason as well, the void for vagueness argument fails.  *E.g., State v. Smith*, 130 Ariz. 74, 76 (App. 1981) ("A person may not urge the unconstitutionality of a statute unless he is harmfully affected by the application to him of the particular feature of the statute alleged to be violative of the constitution" (citing *State v. Varela*, 120 Ariz. 596, 600 (1978))).

### b.  Overbreadth.

Stuart maintains that his conviction should be set aside because section 19-13 is unconstitutionally overbroad.  [Stuart Br. at 27-32]  That argument was also rejected in *Kaiser*, where the court held that section 19-13 posed "no realistic danger to" individuals' first amendment rights."  204 Ariz. at 519, ¶¶17-18.  Because the Stuart brief makes no attempt to explain why, in the circumstances here, *Kaiser* must be revisited or otherwise ignored, the holding in that case regarding section 19-13 ends the overbreadth inquiry.  *E.g., City of Phoenix v. Leroy's Liquors*,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                      11/13/2020

*Inc.*, 177 Ariz. 375, 378 (1993) (recognizing that lower level appellate court may not "overrule, modify, or disregard" higher court case law).[15]

Leaving *Kaiser* aside, Stuart has the burden to demonstrate that section 19-13 is unconstitutionally overbroad. *E.g., State v. Brock*, 248 Ariz. 583, 588, ¶10 (App. 2020). That requires a showing that section 19-13 will produce unconstitutional results in "a substantial number of its applications." *Committee for Justice & Fairness*, 235 Ariz. at 356 n.16, ¶35 (citing *United States v. Stevens*, 559 U.S. 460, 473 (2010) and *Washington State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6 (2008)) (internal quotation marks omitted)); *see also State v. Musser*, 194 Ariz. 31, 32, ¶6 (1999) (stating that the effect on legitimate expression must be real and substantial (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). And, "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Musser*, 194 Ariz. at 32, ¶6 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984) (alteration omitted)); *Kaiser*, 204 Ariz. at 519, ¶18 (same). Instead, Stuart "must demonstrate . . . *from actual fact* that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988) (emphasis added).

The Stuart brief fails to show "from actual fact" that a substantial number of the applications of section 19-13 have yielded or even would yield unconstitutional results. Instead, the only event described in the memorandum that is offered in support of the overbreadth claim is the police order given to Stuart after he was led out of the city council meeting. A single event is, however, insufficient to support a finding that a law is overbroad. *See Ritchie v. Coldwater Cmty. Schools*, 947 F.Supp.2d 791, 824 (W.D. Mich. 2013) (rejecting overbreadth challenge based only on claimant's own first amendment activity (citing *de la O v. Housing Auth. of El Paso*, 417 F.3d 495, 505-06 (5th Cir. 2005) (rejecting overbreadth claim because it "is predicated on plaintiff's own supposed injury resulting from the alleged unconstitutionality of the [housing authority] regulations"), *abrogated on other grounds*, *Regan Nat'l Adv. of Austin, Inc. v. City of Austin*, No. 19-50354, 2020 WL 5015455, at *5 n.3 (5th Cir. Aug. 25, 2020)))); *see also Musser*, 194 Ariz. at 32-33 ("While Musser has conceived of some applications of the statute, he has provided no indication that any likelihood exists that the state would use the statute to reach such activities").

Moreover, Stuart's argument relies significantly on references to what transpired during the trial, for which Stuart chose to submit only a partial transcript. [Stuart Br. at 27, 29] As such, his argument also fails for lack of record support. *Baumert*, 118 Ariz. at 260-61 ("Faced with an incomplete transcript the Superior Court abused its discretion by not affirming the municipal trial court").

---

[15] The Stuart brief fails to cite anything in the record establishing that he urged the trial court that *Kaiser* is somehow inapplicable in this case.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

### 3. Conflict of Interest.

Stuart maintains that his due process rights were violated because he was prosecuted by the Scottsdale city attorney's office despite a disqualifying conflict of interest that should have precluded that office's participation in this case. [Stuart Br. at 32-39]  According to Stuart's brief, that conflict of interest was attributable to a lawsuit that Stuart filed against Lane, Washburn, and the city of Scottsdale, thus exposing them to possible financial liability. [*Id.* at 34 ("Because the State was seeking to defend city of Scottsdale policies, and to protect the Mayor, the city attorney and the City from financial liability for its actions against [Stuart], the Scottsdale prosecutor had an undeniable conflict of interest")]  Stuart insists that, as a result, the city attorney's office disregarded its obligation to pursue the public's interest in justice in favor of assisting the city attorney, mayor, and the city itself to escape the financial consequences that would be result if Stuart's lawsuit succeeded. [*Id.*]

As presented in Stuart's brief, his argument, in effect, assumes that he is permitted to create a purported conflict of interest by initiating a lawsuit and then use that to secure a disqualification in a different litigated matter.  If there is any authority – case law, statute, treatise, law review article, or anything else – that adopts that view, it will not be found in Stuart's brief.  What authority there is warrants rejection of Stuart's idea that he should be allowed to engineer a disqualification based on a purported conflict of interest that he manufactured. *Cf. Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App. 1977) (recognizing that, if a party can obtain disqualification of a judge merely by having a lawsuit filed against that judge, "the orderly administration of judicial proceedings would be severely hampered").[16]

---

[16]  The Stuart brief's failure to identify any persuasive authority suggesting that a litigant is permitted to create a conflict of interest and then benefit from his self-creation is itself grounds for rejecting Stuart's argument. *In re $26,980.00 U.S. Currency*, 199 Ariz. 291, 299, ¶ 28 (App. 2000) (stating that arguments "offered without elaboration or citation to any . . . legal authority" are not considered on appeal); *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 503 (App. 1992) (stating that "[a]rguments unsupported by any authority will not be considered on appeal").

During the oral argument, Stuart, in effect, disavowed what his brief says regarding the purported conflict of interest arising out of the desire of Washburn, Lane, and the city to avoid the financial consequences of an adverse outcome in Stuart's lawsuit.  Stuart said that, instead, the conflict was attributable to Washburn setting up "a scheme" to have Stuart arrested, which then occurred, and the prosecutor's subsequent failure to "exercise[] objectivity" in favor of vindicating Washburn's decision to have Stuart arrested.  [See FTR Recording (10/29/20) at approx. 10:42 and following]  Stuart conceded that he presented this issue twice in the proceeding below by asking for an evidentiary hearing, only to be denied both times.  [*Id.*]  Stuart's brief (at 51) identifies no authority supporting his contention that the trial court erred by denying the requested evidentiary hearing, and as such, the issue warrants no consideration on appeal. *In re $26,980.00 U.S. Currency*, 199 Ariz. 291, 299, ¶ 28 (App. 2000) (arguments "offered without elaboration or citation to any . . . legal authority" are not considered on appeal); *Ness*, 174 Ariz. at 503 (stating that "[a]rguments unsupported by any authority will not be considered on appeal"); *see also Nunes v. Industrial Comm'n*, No. 2 CA-IC

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                11/13/2020

Apart from that, Stuart's argument succeeds only upon a showing that the Scottsdale city attorney's office failed to pursue "justice and society's interest in justice."  [Stuart Br. at 34; see also *id.* at 35 (stating that the prosecutor "pursu[ed] the prosecution ahead of his obligations to seek justice on behalf of the public")]  If Stuart did not have an unqualified right to speak at the city council meeting as he imagines, then the prosecution of Stuart was no failure to pursue justice. To put it differently, Stuart's argument equates the pursuit of justice with the adoption of his self-interested and erroneous view of first amendment law.  Surely, therefore, to state Stuart's argument is to reject it.

### 4.  Prosecutorial Vindictiveness.

Stuart contends that a reversal of his conviction is warranted because he was the victim of a vindictive prosecution.  That argument fails for any, if not all, of the following reasons:

(i)  Prosecutorial vindictiveness is a violation of due process that occurs when the government "retaliat[es] against a defendant for exercising a constitutional or statutory right."  *State v. Verdugo*, No. 2 CA-CR 2019-0112-PR, 2019 WL 3064921, at *1, ¶6 (Ariz. Ct. App. July 12, 2019) (citation and internal quotation marks omitted); *see also State v. Tsosie*, 171 Ariz. 683, 685 (App. 1992) (defining prosecutorial vindictiveness as "prosecutorial action taken to penalize [a defendant] for invoking legally protected rights").  The Stuart brief shows neither by the record nor by applicable authority that the refusal to sit down on a bench as directed by a police officer intent on issuing a citation amounted to the exercise of a protected legal right.

(ii)  The Stuart brief asserts (at 42), that "[t]he evidence from trial . . . proves both a vindictive motive and creates a presumption of vindictiveness."  Those assertions are unsupported by a citation to anything in the record, and thus, they warrant no consideration on appeal.  *State v. One Single Family Residence at 1810 East Second Ave., Flagstaff, Ariz.*, 193 Ariz. 1, 2 n.2 (App. 1997) (declining to consider facts stated in Appellant's brief that were not supported by citations to the record); *Matter of Estate of Killen*, 188 Ariz. 562, 563 n.1 (App. 1996) (disregarding appellant's statement of facts because it was not "supported by

---

2018-0012, 2019 WL 1349587, at *1, ¶4 (Ariz. Ct. App. Mar. 25, 2019) (recognizing that self-represented appellant is "held to the same standards as an attorney" and waives argument not supported with citations to relevant authority).

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

appropriate references to the record").  And, as here, the mere assertion of a self-interested conclusion does not qualify as its own proof.[17]

(iii)  Stuart's argument relies on evidence produced at the trial.  [*Id.* at 39, 42]  Stuart's "failure to submit a complete record on appeal precludes review of the sufficiency of the evidence" in support of his contentions.  *Baumert*, 118 Ariz. at 260.  To put it differently, here, there is no basis in fact that would warrant second-guessing the trial court's determination that Stuart failed to make a case for prosecutorial vindictiveness.  *See Karr*, 221 Ariz. at 320, ¶2 ("[W]e do not weigh the evidence; that is the function of [the trier-of-fact]"); *see also State v. Collins*, 104 Ariz. 449, 450 (1969) ("If reasonable men may fairly differ as to whether certain evidence establishes a fact in issue then such evidence must be considered as substantial").

**5.  Speedy Trial.**

Stuart maintains that his conviction must be overturned because he was not tried within the time required by Ariz. R. Crim. P. 8.2 and because his right to a speedy trial under the sixth amendment to the United States constitution was violated.  [Stuart Br. at 42-55]

While the proceeding below was pending, Stuart filed four different motions to dismiss what he insisted was an impermissibly delayed trial, each of which was denied.  [See State's Resp. Mem. at 4 & Exhs. 1, 3, 5-7, 10]  The first two of those motions were denied based on the trial judge's factual finding that Stuart was substantially responsible for the delays, in large part because of the numerous motions that he filed, which demanded the time and attention of both the court and the prosecution.  [*Id.* at Exh. 5]  Nothing in the record suggests that either of the other two denials reconsidered or otherwise disputed that view.

This court, like all appellate courts, does not conduct its own, independent evaluation of of a trial court's fact findings.  *Karr*, 221 Ariz. at 320 ("[W]e do not weigh the evidence; that is the

---

[17]  The Stuart brief's only citation in support of the contention that "*evidence* from the trial" (emphasis added) established prosecutorial vindictiveness consists of a reference to the prosecution's closing argument.  [Stuart Br. at 39, 42]  A closing argument is not evidence.  *State v. Gonzales*, 105 Ariz. 434, 437 (1970) ("[C]losing arguments are not evidentiary in nature").  Otherwise, neither this court, nor any other appellate court, has an obligation to search the record to ascertain whether an appellant's contention about evidence in the record is supported.  *Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 343 (App. 1984) ("We are not required to assume the duties of an advocate and search voluminous records and exhibits to substantiate appellant's claims"); *Hubbs v. Costello*, 22 Ariz. App. 498, 501 (1974) ("This Court is not under any obligation to search voluminous records to ascertain if [evidence supporting appellant's claim] exists"); *see also Ace Auto. Prods., Inc. v. Van Duyne*, 156 Ariz. 140, 143 (App. 1987) ("It is not incumbent upon the court to develop an argument for a party").

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                        11/13/2020

function of [the trier-of-fact]");  *see also City of Glendale v. Bradshaw*, 114 Ariz. 236, 238 (1977) (stating that "a review and a weighing of the possible effect of the evidence . . . is not within our domain"); *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶11 (App. 2009) (stating that "[w]e will not reweigh the evidence or substitute our evaluation of the facts").  Instead, the facts are viewed in any reasonable way that supports a trial judge's determination.  *See e.g., Rivera*, 226 Ariz. at 327, ¶2 (App. 2011) ("We view the facts in the light most favorable to sustaining the convictions" (citation and internal quotation marks omitted)); *State v. Paredes*, 167 Ariz. 609, 612 (App. 1991) (motion to suppress:  "[W]e must view the evidence in the light most favorable to upholding the trial court's ruling").  At most, the record establishes only that reasonable people could disagree about whether Stuart's failure to be tried as quickly as he would have liked was self-induced.  And "[i]f reasonable men may fairly differ as to whether certain evidence establishes a fact in issue then such evidence must be considered as substantial" [*State v. Collins*, 104 Ariz. 449, 450 (1969)], which here means that substantial evidence (i.e., Stuart's responsibility for the trial delays) supports the rulings denying Stuart's motions to dismiss based on the asserted denial of his speedy trial rights.[18]

Apart from that, the Stuart brief fails to establish that he was adversely prejudiced by any delay for which the State could be considered solely or even principally responsible.  To be sure, that brief lists an assortment of physical, mental, financial, procedural, and evidentiary conditions that, Stuart insists, were brought on by the delay and, thus, affected his ability to present a defense.  But, in the proceeding below, none of the judges who considered Stuart's motions to dismiss concluded that he had presented credible evidence of adverse conditions severe enough to prejudice his defense.    And, appellate courts do not second-guess trial courts' factual determinations.  *Karr*, 221 Ariz. at 320 ("[W]e do not weigh the evidence; that is the function of [the trier-of-fact]"); *see also Doria J. v. Department of Child Safety*, No. 1 CA-JV 19-0030, 2019

---

[18]  The Stuart brief (at 44-45) also maintains that the State moved to dismiss the charge for violating section 19-13 without prejudice and then, after the motion was granted, refiled the charge "solely to avoid Rule 8.2 issues."  In support of that contention, the Stuart brief relies exclusively on four pages of text that appear in his Response to State's Motion to Dismiss Count 2 (S.R.C. §19-13) Without Prejudice (filed 10/129/19).  Nowhere in any of those four pages is there a citation to any factual support for the motivation that Stuart would have ascribed to the State, and thus, the contention warrants no consideration on appeal.  *One Single Family Residence*, 193 Ariz. at 2 n.2 (declining to consider facts stated in Appellant's brief that were not supported by citations to the record); *Killen*, 188 Ariz. at 563 n.1 (disregarding appellant's statement of facts because it was not "supported by appropriate references to the record").  Nevertheless, even if one were to give Stuart the benefit of the doubt (to which he is not entitled [see authorities cited in section C, above], the most that can be said is that the record supports an inference either way, i.e., the dismissal was motivated by a desire to avoid rule 8.2 issues, and the dismissal was not motivated by that desire.  As a matter of well-settled law, all such conflicting inferences are resolved against the defendant.  *E.g. Karr*, 221 Ariz. at 320, ¶2 (citing *State v. Greene*, 192 Ariz. 431, 436, ¶12 (1998)).

Docket Code 506                                Form L512                                      Page 21

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                    11/13/2020

WL 4440385, at *3, ¶14 (Ariz. Ct. App. Sept. 17, 2019) ("We do not reweigh evidence on appeal and will not second-guess the fact-finder's evaluation of the evidence").[19]

Moreover, the Stuart brief overlooks that prejudice, for purposes of the analysis here, consists of more than a self-interested claim to that effect. Prejudice also requires a showing that, but for the purportedly prejudicial conditions that Stuart listed, the outcome of the trial would have been different. *See State v. Vasko*, 193 Ariz. 142, 147, ¶22 (App. 1998) (stating that, when a speedy trial violation is alleged, the defendant must show "a reasonable probability" that the conviction would not have resulted without the violation); *see also State v. Riley*, 248 Ariz. 154, 186, ¶117 (2020) (stating that, even in the event of fundamental error going to the foundation of the case or a deprivation of a right essential to the defense, to prove prejudice, defendant must show "a reasonable jury could have come to a different verdict"); *see generally United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (recognizing that the "possibility of prejudice is not sufficient to support respondents' position that their speedy trial rights were violated").[20]

In any event, to maintain that Stuart's defense was impeded by the delay in bringing the case to trial is to misanalyze the case. Correctly understood, the State was required to prove only two facts: (i) a police officer, while on duty, instructed Stuart to "sit down on a nearby bench" while a citation was written, and (ii) Stuart refused to do so. Stuart has disputed neither fact.[21] Thus, all of the purportedly disabling conditions on which Stuart bases his claim of adverse prejudice are beside the point: because Stuart conceded all that the State was required to prove, a reasoned conclusion that, but-for even one of those assertedly prejudicial conditions, an acquittal would have resulted, is not possible.

---

[19] Stuart's claimed maladies and other conditions consist of asserted mental and psychological injuries, including hospitalization; asserted degradation of mental skills and impeded ability to mount a defense; police testimony purportedly coached by outside attorneys; inadequate notice of the facts supporting the charges against him; purported destruction of evidence by the State; obstruction of access to evidence; cover-up and concealment of conflicts of interest; purported concealment that jurisdiction was lacking; claimed loss of memory by officers; excessive costs; and asserted degradation of quality of life. [Stuart Br. at 45-46]

[20] The court is mindful of the four-factor test recognized in *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972). Here, a discussion of all four factors is not required because "[t]he law is well-established in this state that a conviction will not be reversed unless the record shows an error prejudicial to some substantial right of the defendant," and "[t]he historic test for whether the error is prejudicial is whether the defendant has shown a reasonable probability that the verdict would have been different if the error had not been committed." *Vasko*, 193 Ariz. at 147, ¶22. Thus, because Stuart has failed to establish as a reasonable probability that an acquittal would have resulted if not for the asserted delay in bringing his case to trial, the inquiry ends without the need to address the *Barker* factors.

[21] See FTR Recording (10/29/20) at approx. 11:00.

Docket Code 506                          Form L512                          Page 22

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                              11/13/2020

Further, even if one were to assume, albeit erroneously, that what transpired at the city council meeting is relevant to the conviction here, Stuart's litany of conditions that purportedly prejudiced his defense remains inconsequential.  The State does not dispute that (i) Stuart attempted to speak in support of an election initiative, which included a solicitation of volunteers to aid that effort, (ii) after Stuart asserted his right to speak under the United States and Arizona constitutions, Lane denied him that opportunity and asked Stuart to step away from the podium, and (iii) when Stuart refused, Lane asked Scottsdale police officers to escort Stuart from the building.  In other words, the facts on which Stuart bases his claim that he was wrongfully charged and, thus, wrongfully convicted, are not contested, and thus, any evidence that Stuart wanted to but was unable to present, and anything else that Stuart wanted to undertake in aid of his defense, were either irrelevant or, at best, cumulative, which does not warrant overturning his conviction. *Cf. State ex rel. LaSota v. Arizona Licensed Bev. Ass'n,* 128 Ariz. 515, 523 (1981) ("The exclusion of repetitious or cumulative evidence does not require reversal by an appellate court" (citation omitted)).  To put it differently, if one were to assume that Stuart was impermissibly denied an opportunity to speak at the city council meeting, and thus, as a result, his removal from the building and arrest were unlawful, he did not need to establish as a complete defense any facts beyond what the State has conceded.[22]  In these circumstances, therefore, convening a trial in January 2020 did not, by any reasoned measure, impair the ability to present a defense.

**E.  Stuart's Recusal Motion.**

Stuart submitted a 56-page opening brief to which the State responded by filing a motion to strike for Stuart's failure to comply with Rule 8(a)(4) of the Superior Court Rules of Appellate Procedure (Criminal) (limiting opening memoranda to 15 pages).  To accommodate Stuart's request for what amounts to a limitless opportunity to say what he wanted to say, the court has decided to deny the motion to strike.[23]

At the same time, to permit this appeal to proceed in a speedy, efficient, and fair way, the court did not require the State to file a response to Stuart's 56-page submission except as to the speedy trial issues.  Consistent with this division's practice, the parties were provided with a preliminary draft ruling in advance of the oral argument so they could know, without having to guess, what this judge was thinking, thus allowing them time to plan how they might best address the concerns that the draft ruling revealed.  When doing so, this judge explained that he was willing to be persuaded that some or all of his tentative thinking was incorrect.  Because of that, and

---

[22]  This validity of this conclusion is reinforced by the fact that Stuart's right to speak argument [see section D(1)] must be considered on this appeal despite his submission of only a partial trial transcript.

[23]  At Stuart's request, this court also convened an oral argument, which wound up lasting almost two hours.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                      11/13/2020

because the draft ruling was merely preliminary, this judge also explained that the final version might not resemble the draft.[24]

At the outset of the oral argument, Stuart asked this judge to recuse himself by accusing him of being biased in favor of the State.  Stuart based that request exclusively on his reading of the preliminary draft ruling that he was provided.

"Judges are presumed to be impartial." *State v. Smith*, 203 Ariz. 75, 79, ¶13 (2002); *State v. Henry*, 189 Ariz. 542, 546 (997) (same).  Moreover, "the bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case."  *Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App. 1977); *see also Simon v. Maricopa Med. Center*, 255 Ariz. 55, 63, ¶29, 234 P.3d 623, 631 (App. 2010) (same).

Further, although the draft concluded that Stuart's conviction should be affirmed, adverse rulings do not support a claim of judicial bias.  *Simon v. Maricopa Med. Center*, 255 Ariz. 55, 63, ¶29, 234 P.3d 623, 631 (App. 2010) (stating that superior court's consistent pattern of adverse rulings does not demonstrate bias); *State v. Curry*, 187 Ariz. 623, 631, 931 P.2d 1133, 1141 (App.1996) (recognizing that disagreements over rulings are insufficient to support recusal); *see also Litekey v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion").  And if that is true, then surely a preliminary, tentative, draft ruling that a judge is willing to reconsider does not establish bias.

Nevertheless, Stuart maintains that providing a draft ruling without first requiring a response from the State (except regarding the speedy trial issue) displayed favoritism.  That contention ignores:

(i)  The State was not required to submit a response.  Rule 8(a)(1), Superior Court Rules of Appellate Procedure (Criminal).

(ii)  Requiring the State to respond to Stuart's 56-pages would have made no difference.  This court is permitted to affirm the trial court's decision for reasons that no one else considered.  *See Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986) ("We will affirm the trial court's decision if it is correct for any reason"); *see also State v. Perez*, 141 Ariz. 459, 464 (1984) (stating that trial court ruling will be affirmed if it "was legally correct for any reason"); *see generally Earl v. State*, No. 1 CA-CV 15-0470, 2016 WL 7104893, at *3, ¶10 (Ariz. Ct. App. Dec. 6, 2016)

---

[24]  Indeed, the oral argument has caused a rethinking of several issues.  As a result, in not insignificant ways, this ruling differs from the draft.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                                      11/13/2020

(recognizing that the trial court was attempting to proceed efficiently, and thus, finding no error in trial court's decision to grant motion to dismiss without requiring moving party to elaborate the reasons); *cf. Harris v. Brachtl*, No. CA-CV 16-0486, 2017 WL 1406396, at *2, ¶¶7-8 (Ariz. Ct. App. Apr. 20, 2017) (affirming trial court's decision to dismiss complaint on court's own motion).

(iii) Perhaps most important, Stuart conceded during the oral argument that he was not adversely prejudiced because the court did not wait for a complete response from the State.[25] The decision to proceed without requiring a comprehensive response to Stuart's 56-pages from the State was, more than anything, an accommodation to Stuart because, by applicable rule, he was limited to a 15-page brief. Rule 8(a)(4), Superior Court Rules of Appellate Procedure (Criminal).

**IT IS ORDERED:**

1. The State of Arizona's motion to strike Stuart's 56-page appellate brief for failing to comply with Rule 8(a)(4) of the Superior Court Rules of Appellate Procedure (Criminal) is denied.

2. The Stuart motion for recusal is denied.

3. The judgment of the Scottsdale city court in *State v. Stuart* (case no. SC 2017003568) is affirmed.

4. All other pending motions are moot and require no court action.

5. This case is remanded to the Scottsdale city court for any further proceedings that may be necessary.

6. No matters remain pending in connection with this appeal. This is a final order. See Rule 12(b), Superior Court Rules of Appellate Procedure (Criminal).

_____

Honorable Douglas Gerlach
Judge of the Superior Court

_____
[25] See FTR Recording (10/29/20) at approx. 11:21.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

LC2020-000239-001 DT                              11/13/2020

NOTICE: LC cases are not under the e-file system. As a result, when a party files a document, the system does not generate a courtesy copy for the Judge. Therefore, you will have to deliver to the Judge a conformed courtesy copy of any filings.