Scot L. Claus (#014999)
Vail C. Cloar (#032011)
Holly M. Zoe (#033333)
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
[Firm Email: courtdocs@dickinsonwright.com]
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Stuart,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>　　　　　Defendants. | Case No.: 2:17-cv-01848-DJH (JZB)<br><br>**DEFENDANTS' REPLY IN SUPPORT SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT** |

In terms of a case that craves application of claim and issue preclusion, this case is a paradigm. A court of competent jurisdiction has already determined that Mr. Stuart had no right to hijack the February 7, 2017 City Council meeting for his own agenda. [Doc. 282, Ex. 2 at 4–7.] That decision was not only made, but was upheld on appeal by the Arizona courts. *State v. Stuart*, 1 CA-CR 20-0620, 2021 WL 5571772, at *1 (App. Nov. 30, 2021), *review denied* (June 3, 2022). There is no manner in which Mr. Stuart can argue that Defendants violated his constitutional rights by stopping his hijacking attempt without trampling on the state court's prior rulings.

Further, Mr. Stuart has brought so many claims against the City and its agents arising from the same nucleus of operative facts that even he cannot keep them straight. Plainly stated, Mr. Stuart's theory is that, beginning sometime in 2017, the City began retaliating against Mr.

1

Stuart due to his First Amendment conduct. In this action, Mr. Stuart alleges he was unlawfully arrested in retaliation for that conduct; in *Stuart II*, Mr. Stuart alleged a host of other actions this City took purportedly in an effort to retaliate against him based on his 2017 conduct, as well as having an official policy or custom of violating the Constitution. [*Stuart II*, Doc. 193 ¶¶ 13, 25, 108–160, 174–180.]

Far from simply alleging that conduct, Mr. Stuart pushed these theories throughout *Stuart II*. For example, in opposing the City's motion for summary judgment in *Stuart II*, he argued specifically that the City had a practice of violating the public's ability to "exercis[e] their free speech rights." [*Stuart II*, Doc. 139 at 8.] He also specifically argued that Mr. Washburn was a "final policymaker" for the City such that Mr. Washburn's actions gave rise to *Monell* liability against the City. [*Id.* at 12–13.] Indeed, Mr. Stuart cited his own testimony about his arrest underlying this case at length in opposing summary judgment. [*Id.* at 11.]

Mr. Stuart has already lost on the issues he seeks to continue to litigate before this Court. There is no way for Mr. Stuart to re-litigate those issues under the doctrines of claim and issue preclusion, and summary judgment is the only appropriate resolution.

**I.    Mr. Stuart mischaracterizes the state court criminal case rulings.**

Rather than acknowledge the state court's conclusions on the very issues pending before this Court, Mr. Stuart fixates on a host of perceived technical flaws that in his view undermine those conclusions. For example, Mr. Stuart argues that the state court's ruling concluding that his First Amendment rights were not violated is invalid because it was vacated by recusal or rendered void by a lack of subject matter jurisdiction [Doc. 299 at 7–8]; he asserts that the issues on appeal in the state court proceeding were different than those before this Court [Doc. 299 at 8–9]; and he claims that there was no probable cause for his arrest at the podium [Doc. 299 at 8–9]. Stuart's cherry-picked (and factually flawed) view of history is belied entirely by demonstrable facts, and Mr. Stuart ultimately offers no compelling argument

as to why the state court ruling dated November 13, 2020 [Doc. 282, Ex. 10], is not dispositive.

### A. Mr. Stuart is incorrect that the justice court's rulings are invalid.

As an initial point, Mr. Stuart totally misconstrues the White Tanks Justice Court's ruling concerning subject matter jurisdiction over the counts he was charged with. Contrary to Mr. Stuart's argument, the court concluded that while it lacked subject matter jurisdiction over a violation arising out of the *Scottsdale City Code*, it *had* subject matter jurisdiction over the *state law* criminal trespassing count. [Doc. 299-1 at 22.] It further concluded that while venue *for trial* is proper in the justice precinct where the violation is alleged to have occurred, venue *for pre-trial matters* was proper in the White Tanks Justice Court. [*Id.*] Thus, Mr. Stuart is simply wrong that the state court ruling finding that his First Amendment rights were not violated is vacated or void because of a lack of subject matter jurisdiction. Indeed, Mr. Stuart appealed the orders in his prosecution all the way to the United States Supreme Court. At each step, his conviction was affirmed. *Stuart v. Arizona*, 143 S. Ct. 573 (2023). The Arizona Court of Appeals determined that "[p]olice officers removed Stuart from a Scottsdale City Council meeting after he refused to comply with city officials' requests to refrain from soliciting ballot-initiative signatures during the public comment portion of the meeting. Because Stuart refused to follow the officers' repeated commands, he was convicted in the city court under Scottsdale City Code ('Code') § 19-13." *State v. Stuart*, 1 CA-CR 20-0620, 2021 WL 5571772, at *1 (App. Nov. 30, 2021). Plainly, no court has ever declared the November 13, 2020 ruling a nullity, nor has Mr. Stuart offered any compelling argument why it should be treated as such.

Similarly, the fact that Judge McMurray was ultimately recused did not vacate his rulings, or permit Stuart to pretend his rulings never happened.[1] Although it is difficult to find authority on this issue, those courts that have considered the question have logically concluded that recusal does not strip orders made before recusal of their power, or "allow the moving party to erase what has happened in the litigation and start over." *Mondy v. Magnolia Advanced Materials, Inc.*, 815 S.E.2d 70, 79 (Ga. 2018). Mr. Stuart's argument is meritless.

**B.     The superior court's appellate ruling precludes Mr. Stuart's claims.**

Even if the Court were inclined to disregard Judge McMurray's ruling, yet another state court ruling bars Mr. Stuart's claims. The Court will recall that Mr. Stuart was convicted of failure to obey a police officer. Because Mr. Stuart appealed his conviction before a court of limited jurisdiction, the superior court (Judge Gerlach) produced an appellate ruling holding that Mr. Stuart had no constitutional rights that were infringed, and affirming his conviction for failure to obey a police officer. The affirmance of that appeal reached the same conclusion—that Mr. Stuart's removal had nothing to do with the viewpoint he was trying to express:

> The record here establishes that the refusal to allow Stuart to speak in support of his election initiative was driven **exclusively** by the limit that A.R.S. § 38-431.01(H) imposes. Other than Stuart's self-interested protests to the contrary, nothing in the record suggests that the city's desire to comply with applicable law was unreasonable. **And, as explained above, the record also establishes that the refusal to allow Stuart to speak was not driven because of a disagreement with the substance of what Stuart wanted to say**. In other words, in the circumstances of this case, the refusal to allow Stuart to urge support at a city council meeting for what was a political issue and to solicit volunteers to join the effort was **both reasonable and viewpoint-neutral**.

*State v. Stuart,* LC2020-000239-001 DT, *11 (November 13, 2020) (emphasis added and internal citations omitted) [Doc. 282, Ex. 10 at 11.] Stated differently, the superior court *has*

---

[1] Plaintiff cites "Exhibit W" for the proposition that Judge McMurray had personal knowledge of matters in this case. That exhibit, however, reflects nothing of the sort.

4

1  *already held* that Defendants' conduct complied with longstanding Ninth Circuit authority
2  regarding regulation of speech, and disruptive speakers, at public meetings. [Doc. 282, Ex. 10
3  at 10 (citing *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010)).] Thus, "Because
4  Stuart was not denied a constitutional right to speak, his conduct at the council meeting
5  became disruptive, and citizens who disrupt public meetings may be removed without
6  infringing on their constitutional rights." [*Id.* at 14 (citing *White v. City of Norwalk*, 900 F.2d
7  1421, 1426 (9th Cir. 1990)).]

       Faced with that unequivocal ruling, Mr. Stuart tries to run from it. Mr. Stuart urges that the primary issues in the case before this Court are whether there was "probable cause" to arrest him at the podium, whether he was retaliated against for "protected speech," and whether Mr. Stuart's removal was based on viewpoint discrimination. [Doc. 299 at 9.] In appealing that conviction, Mr. Stuart raised, argued, and *lost* on all of his arguments related to purported retaliation, viewpoint discrimination, and the question of the constitutionally protected nature of his speech. [Doc. 282, Ex. 10, at 8–13.] Although Mr. Stuart now urges that those were not the "primary" issues in that case, his current characterization cannot be reconciled with the arguments he made to the court. Indeed, Mr. Stuart argued before the superior court that he had an unfettered "right to speak" and that preventing him from speaking violated his "right to speak under the United States and Arizona constitutions." [*Id*. at 8.] He specifically argued that Mayor "Lane's order to move away from the speaker's podium" and the order of the Officers were "themselves unlawful." [*Id*.] He also "contend[ed] that . . . he was a victim of a vindictive prosecution," which necessarily required a showing that the government "retaliate[s] against a defendant for exercising a constitutional or statutory right." [*Id*. at 19.] The Superior Court rejected each of Mr. Stuart's arguments. [*Id*. at 11.]

       It is beyond cavil that to succeed on a First Amendment retaliation claim, a plaintiff must demonstrate they had a First Amendment right to partake in the speech they did that purportedly fueled the retaliation. *See, e.g.*, *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir.

5

1  2022) (explaining that a First Amendment retaliation plaintiff must demonstrate that he was
2  "engaged in constitutionally protected activity" (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d
3  540, 542–43 (9th Cir. 2010)). And to overcome the doctrine of qualified immunity, a plaintiff
4  must demonstrate the violation of not just a constitutionally protected right, but one that was
5  clearly established. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991) ("The plaintiff
6  bears the burden of proof that the right allegedly violated was clearly established at the time of
7  the alleged misconduct.").

8  Mr. Stuart's appeal of his conviction is dispositive on these issues. In the state court
9  appeal, Mr. Stuart urged that refusing to let him speak during the February 7, 2017 meeting
10 was an infringement on his First Amendment rights. [Doc. 282, Ex. 10 at 8.] The superior
11 court completely rejected that argument. It concluded that "in the circumstances of this case,
12 the refusal to allow Stuart to urge support at a city council meeting for what was a political
13 issue and to solicit volunteers to join the effort *was both reasonable and viewpoint-neutral.*"
14 [*Id.* at 11.] Second, just as in this case, Stuart urged that "merely because Stuart wished to utter
15 words, his proposed speech had content, and thus, to deny him the opportunity to speak those
16 words was an impermissible content-based speech restriction." [*Id.*] But the superior court also
17 rejected that argument, explaining that there was absolutely no evidence that Mr. Stuart was
18 not allowed to speak because anyone opposed his viewpoint; indeed, it explained that "all the
19 evidence is to the contrary." [*Id.* at 12.] Stated simply and unequivocally, the superior court
20 held that "[b]ecause Mr. Stuart was not denied a constitutional right to speak, his conduct at
21 the council meeting became disruptive, and citizens who disrupt public meetings may be
22 removed without infringing on their constitutional rights." [*Id.* at 14.] Further, because there
23 was no legal right to speak, the superior court rejected Mr. Stuart's claim of retaliation. [*Id.*]

24 Mr. Stuart's claims in this case require that he have had a cognizable, clearly
25 established, constitutional right to attempt to hijack the February 7, 2017 City Council
26 meeting. That is necessary to establish his retaliation claim against any of the remaining

6

Defendants. *Boquist*, 32 F.4th at 775. But there is no way for Mr. Stuart to avoid the application of issue preclusion on that issue when a state court of competent jurisdiction has already determined he had no right to engage in that conduct.

   **C.**  **Mr. Stuart's probable cause arguments are flawed.**

   Finally, with respect to Mr. Stuart's probable cause arguments, even Mr. Stuart acknowledges that he sought to challenge the existence of probable cause in the state court proceeding. In any event, it is impossible to conclude that Officers Glenn and Clear lacked probable cause to cite him for trespassing when he continued to occupy space he was told he could not, doing something he was not permitted to do. Indeed, that is *specifically* what officers are *required* to do in such circumstances once a speaker has been declared disruptive. *See* Scottsdale Police Department General Order 2014, https://public.powerdms.com/SCOTT/tree/documents/914894.

   Mr. Stuart has proffered no colorable reason as to why issue preclusion does not apply to Mr. Stuart's claims in light of the state court rulings. In any event, Mr. Stuart's claims fail here precisely as they did before the state court, and Defendants are entitled to qualified immunity as a matter of law.

**II.** **Mr. Stuart cannot re-litigate his right to speak, retaliation, or *Monell* liability in light of Judge Teilborg's ruling.**

   Mr. Stuart's response reflects a fundamental misapprehension of the doctrines of claim and issue preclusion. Mr. Stuart posits that there is a lack of identity of the claims between *Stuart II* and this case because, according to him, the claims in *Stuart II* arise out a different set of events. To make such an assertion, Mr. Stuart ignores that his theory in all of his cases has been that the City, its agents, and its elected officials have undertaken and continued to pursue a years-long course of action to violate his civil and other rights because of his attempts to speak on February 7, 2017. Although Mr. Stuart now urges that those issues were irrelevant to *Stuart II*, and therefore not decided in that case, he cannot escape the fact that his own

7

pleading (and arguments seeking to avoid summary judgment) in *Stuart II* repeatedly urged that the defendants were undertaking action to retaliate against Stuart for his protected First Amendment activity. "Statements made in pleading are considered judicial admissions and are 'conclusively binding on the party who made them.'" *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031, 1041 (D. Ariz. 2019) (quoting *Christian Legal Soc. v. Martinez*, 561 U.S. 661, 716 (2010)). And, when one drops an alleged claim in silence, "he may not, after judgment in that suit, maintain a separate suit on that dropped claim." *Clark v. Yosemite*, 785 F.2d 781, 786 (9th Cir. 1986) (citing *Casto v. Arkansas-Louisiana Gas Co.*, 597 F.2d 1323, 1326 (10th Cir. 1979)).

Stuart does not—because he cannot—deny that he alleged retaliation based upon activity protected by the First Amendment in *Stuart II* based on the same February 7, 2017 conduct. [*See, e.g.*, *Stuart II*, Doc. 93, ¶¶ 132–33, 152, 154, 158.] Instead, to avoid the application of claim preclusion, Mr. Stuart attempts to persuade this Court to take a myopic view of *Stuart II*, ignore the allegations he actually pled, and conclude that *Stuart II* arises out of a set of events that are wholly unconnected to those giving rise to this case. Reduced to its core, Mr. Stuart continues his quest to split whatever claims he had arising out of the events of February 7, 2017 into subatomic pieces, such that he can pursue each piece in serial litigation. But he is not permitted to split his claims into infinitely smaller, asymptotic pieces. *See* Restatement (Second) of Judgments § 24.

To the contrary, rather than permit a litigant to bring serial litigation arising out of the same events, tweaking the legal theories as he goes, the doctrine of claim preclusion requires the Court to consider the transaction as a whole, and not the particular harms alleged. *Id.* cmt. c ("a judgment based on the act usually prevents the person from maintaining another action for any of the harms not sued for in the first action"). The law is no different just because a plaintiff alleges a constitutional harm. *See Clark*, 785 F.2d at 786–87 (holding federal § 1983 claims were barred by prior state law claims arising from the same set of facts underlying

8

earlier state court action); *Isaac v. Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983) (concluding that § 1983 claim arose out of same transaction despite slight factual differences); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110–11 (2d Cir. 2000) (rejecting § 1983 claim because claims arose from same factual nucleus and "a plaintiff cannot avoid the effects of res judicata by "splitting" his claim into various suits, based on different legal theories").

Stuart's theory in this case, *Stuart II*, and *Stuart III* all boil down to the (fictive) construct that, because of what transpired on February 7, 2017, the City of Scottsdale has improperly arrested and prosecuted him for trying to exercise his First Amendment rights. Those claims could have, and should have, been brought in one suit. The fact that Mr. Stuart may not have focused on particular facts before Judge Teilborg in *Stuart II* is irrelevant—it is instead that he had the *opportunity* to reach the merits of a particular allegation that gives rise to their preclusive effect. *Clark*, 785 F.2d at 786 ("an opportunity to reach the merits is sufficient to invoke a preclusive effect"). Thus, even if Mr. Stuart had a valid claim in the first instance for First Amendment retaliation (and he does not in light of the superior court's ruling on his appeal), he could have vindicated that right in the *Stuart II* litigation and therefore claim preclusion applies. His choice to actually litigate the question does not affect its preclusive effect.

With respect to qualified immunity, Judge Teilborg already determined that Stuart's claims against virtually identical cast of defendants is barred by qualified immunity, and that there was no evidence of any constitutional deprivation, much less a municipal policy of such a deprivation. (*Stuart II*, Doc. 151 at 8–9, Doc. 119.) It defies credulity to suggest that any ruling in this case in Mr. Stuart's favor would not be in direct conflict with Judge Teilborg's conclusions.

But there is even more. The Ninth Circuit affirmed Judge Teilborg in all respects, holding that the district court "correctly granted qualified immunity to the Individual Defendants," and that "there was no material evidence that any of [the Defendants] had

9

violated the Stuarts' clearly established constitutional rights." *Stuart v. City of Scottsdale*, 2023 WL 4932105, at *1 (9th Cir. Aug. 2, 2023). The Ninth Circuit further confirmed that "Scottsdale did not ratify any unconstitutional decisions and Defendant Washburn was not a final policymaker." *Id*. To the extent that Mr. Stuart wanted to limit the Ninth Circuit's holding, he was obligated to do so before that Court, or to seek clarification. *Clark*, 785 F.2d at 786. Thus, even if Mr. Stuart dropped his allegations regarding First Amendment retaliation in *Stuart II* (and he did not), he is barred from raising those claims again as a matter of law. *Id.*

### III. Conclusion

Mr. Stuart invites this Court to err by permitting claims that have already been litigated, or could have been litigated, to proceed, potentially resulting in contradictory judgments and wasted judicial resources. There is no basis under state or federal law for Mr. Stuart's position, and the Court should decline the invitation.

RESPECTFULLY SUBMITTED this 1st day of March 2024.

DICKINSON WRIGHT, PLLC

By: */s/ Scot L. Claus*
    Scot L. Claus
    Vail C. Cloar
    Holly M. Zoe
    1850 N. Central Avenue, Suite 1400
    Phoenix, Arizona 85004
    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 1, 2024, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Sheila Rath*

4877-0028-4328 v6 [53387-7]