Scot L. Claus (#014999)
Vail C. Cloar (#032011)
Holly M. Zoe (#033333)
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
[Firm Email:  courtdocs@dickinsonwright.com]
*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Stuart,<br><br>                   Plaintiff,<br><br>v.<br><br>City of Scottsdale, et al.,<br><br>                   Defendants. | Case No.: 2:17-cv-01848-DJH (JZB)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY GROUNDS** |

The fundamental premise for Plaintiff's entire case is a fiction. Plaintiff was not prevented from exercising a First Amendment right on February 7, 2017. Plaintiff was not "arrested for exercising his First Amendment rights" on February 7, 2017. Plaintiff was not "retaliated against" for expressing his views on February 7, 2017. Instead, as has already been determined by the Arizona state court in resolving what it deemed a "core issue":

> The Court concludes that the City of Scottsdale **did not violate the Defendant's First Amendment Rights** when it prevented the Defendant from presenting information during the public comment period of a Scottsdale City Council Meeting . . . . Here, the decision to limit the Defendants presentation was within the Council's discretion . . . because the Defendant **very clearly intended to highjack the public comment period** to petition for signatures and to present numerous materials on topics unrelated to the jurisdiction or, or intended to harass, the Scottsdale City Council.

(Doc. 252-7 at pp. 2-3 (emphasis added)).[1] Indeed, the same court concluded that Mr. Stuart had attempted to "highjack the meeting by electioneering in violation of reasonable time, place, and manner restrictions" and that Mr. Stuart intended "to harass, taunt, and disrupt the City Council in violation of the statute's time, place, and manner restrictions." (*Id*. at 4, 7).

The elaborate tale that Mr. Stuart has woven in an attempt to undermine these historic truths is ***not supported by admissible evidence***. Instead, Mr. Stuart has manufactured a bizarre amalgam of blatant misrepresentation of the record, flights of fantasy, unadorned (and unsupported) speculation, and entirely illogical conclusions.[2]

At bottom, Mr. Stuart has not fulfilled ***his burden*** to demonstrate the existence of a "clearly established federal right" that the moving defendants allegedly violated. Nor has Plaintiff met his burden of providing competent, admissible evidence rebutting the under oath testimony (and documentary evidence) presented with Defendants' Motion demonstrating that none of them infringed upon Mr. Stuart's clearly established federal protected rights.

**A.     Plaintiff Has Not Met His Legal or Evidentiary Burdens to Avoid Summary Judgment**.

**1.     Plaintiff has not met his legal burden**.

Once Defendants raised qualified immunity as a defense, Plaintiff bore "the burden of showing that the rights allegedly violated are 'clearly established.'" *Maples v. Pinal County*, 453 F. Supp. 3d 1314, 1320 (D. Ariz. 2020) (quoting *LSO Ltd. v. Stroh*, 205 F.3d 1146, 1157

---

[1] Mr. Stuart's assertion that this state court ruling is not entitled to preclusive effect because it was purportedly "void" (Doc. 298 at 10) is utterly baseless for the reasons explained in Defendants' Reply in Support of Supplement to Motion for Summary Judgment. Indeed, as discussed in that brief, the superior court reached precisely the same conclusions as the justice court in rejecting Mr. Stuart's arguments—the same ones he raises in this case.

[2] Mr. Stuart's Response (Doc. 298) is littered with wild claims purportedly supported by "evidence." The testimony and documents Mr. Stuart cites as evidence, however, provide absolutely no support for his assertions. The entirety of this Reply could be filled analyzing the lack of evidentiary support for Mr. Stuart's assertions. Rather than detail each and every evidentiary failure, this Reply focuses on those instances where the absence of evidentiary support compels the entry of summary judgment.

(9th Cir. 2000)). To do so, Plaintiff was required to come forward with cases that "clearly prohibit the officer's conduct *in the particular circumstances before him*." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (emphasis added). The resulting rule "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*'" *Id.* (emphasis added). This "demanding standard" requires a high "degree of specificity." *Mullenix v. Luna,* 136 S.Ct. 305, 309 (2015).

The law is clear that Mr. Stuart cannot rely on histrionics, hyperbole, or claims that "officials [failed to act] in accordance with abstract norms of morality and human decency." *Id*. In this regard, *Maples* in instructive. Despite facts that would have almost certainly caused any reasonable person to notice the decedent in that case was in danger, the claims were still subject to dismissal because the plaintiffs had "not identified any case that would have provided fair warning to defendants that their actions were unconstitutional." *Maples*, 453 F. Supp. 3d at 1321.

Likewise, Plaintiff was required to demonstrate the existence of authority limited to "***the particular circumstances***" of this case and analogous to the "situation" each defendant "confronted." *Wesby*, 583 U.S. at 63. Plaintiff has not done so.

**a)** **Luis Santaella**. Mr. Santaella was a Deputy City Attorney who acted as a legal advisor to members of the Scottsdale Police Department, who Mr. Stuart asserts "set in motion" a series of events culminating in his arrest (Doc. 298 at 7.) But the only conduct Mr. Stuart asserts he actually undertook was sharing a letter that the then City Attorney, Bruce Washburn, wrote to Mr. Stuart on January 30, 2017 with police officers. Plaintiff has cited not a single case reflecting an analogous situation whatsoever. He certainly has not cited binding authority standing for the proposition that a citizen had a "clearly established right" to prevent a municipal attorney from sharing a letter. In other words, there was no authority that informed Mr. Santaella, in the "situation" he "confronted" should have refrained from sharing a letter with Scottsdale Police Officers. *Wesby*, 563 U.S. at 68.

1     **b)**     **Bruce Washburn**. Mr. Washburn was the Scottsdale City Attorney in 2017. He wrote Mr. Stuart a letter on January 30, 2017 in which he informed Mr. Stuart that Arizona law prohibited the use of City resources to attempt to influence an election. (Doc. 298-1, at 3). Mr. Washburn's letter also informed Mr. Stuart that state law permitted the City to allow a call to the public *only* on items that were within the jurisdiction of the Council. (*Id.*) Mr. Washburn invited Mr. Stuart to speak on any "other matters that are within the Council's jurisdiction." (*Id.*).[3] Plaintiff has not cited a single case in which a municipal attorney was accused of violating federal rights by sending a letter to a citizen explicating the proscriptions imposed by state statutes. He certainly has not cited authority which put Mr. Washburn "on fair notice" that sending a letter containing a legal analysis of state law (and also expressly inviting the addressee to make "comments to other matters within the jurisdiction" of a public body) violated the addressee's federal rights. The absence of any authority makes abundant sense: the City's attorneys must remain free to express their legal opinions on matters involving the City, including but not limited to their construction the state statutes—whether right or wrong.[4] *al-Kidd*, 563 U.S. at 743. ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

---

[3] While Mr. Stuart also suggests that Mr. Washburn somehow "conspired" with Mayor Lane and others to effectuate Mr. Stuart's arrest, Mr. Washburn's declaration establishes he did not know that Mr. Stuart would be arrested and did not ask Officer Cleary to effectuate the arrest. (Doc. 251-1 at ¶¶ 6, 7, 13-15). Because Mr. Stuart has not (and cannot) rebut the declaration testimony of Mr. Washburn, he quibbles with the form of Mr. Washburn's declaration. However, Mr. Washburn's declaration complies with 28 U.S.C. § 1746, which requires that a declaration be made "under penalty of perjury." *Id*. The Ninth Circuit has recognized for nearly 20 years that a declaration does not have to follow "Section 1746 . . . with precision." So long as the complaint is "signed under penalty of perjury," the declaration is admissible *See Taylor v. Milligan,* 2016 WL 10933022,*1 (N.D. Cal. 2016) (citing *Schroeder v. McDonalds*, 55 F.3d 454, 460 n.10 (9th Cir. 1995)). Here, Mr. Washburn demonstrates in his declaration that he is testifying based upon his personal knowledge, and he states explicitly that the declaration is submitted "under penalty of perjury." *Id*. Mr. Washburn also ratified the veracity of his declaration during his deposition. (Doc. 298-11 at 225:5–24).

[4] Of course, Mr. Washburn was correct. A.R.S. § 38-431.01 expressly limits the ability of a "public body" to "make an open call to the public during a public meeting, subject to

   **c)**   **Officers Glenn and Cleary**. Officers Glenn and Cleary attended the February 7, 2017 Council Meeting to provide security for the meeting and, while doing so, were governed by Scottsdale Police Department General Order 2014. That order unquestionably provides that the Mayor controls the meeting, and is empowered to declare a speaker disruptive. Mr. Stuart has not challenged that order, nor does he analyze it at all. It defies credulity to suggest officers who follow a general order, lawful on its face, are not entitled to qualified immunity.

   Mr. Stuart has cited *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) and *Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013) as authorities informing the impropriety of the Officers' conduct, but those cases actually demonstrate that the Officers' conduct was appropriate. For example, in *Norse*, the Ninth Circuit determined the defendant officer who attended the subject council meeting and arrested the plaintiff was entitled to qualified immunity. 629 F.3d at 978. Indeed, the *Norse* court held that, because the plaintiff had violated the "Rules of Decorum, . . . [a] reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Id*.

   Here, Mr. Stuart does not dispute *at all* that General Order 2014 required the Officers to assist the Mayor in maintaining order during the meeting. Mr. Stuart similarly does not dispute that the then-existing Rules of Council Procedure *required* the Mayor to maintain order and preserve decorum at the City Council Meeting. Against this backdrop, Mr. Stuart has not (and cannot dispute—because it is captured on video) that he persisted in badgering,

---

reasonable time, place and manner restrictions, to allow individuals to address the public body on any issue *within the jurisdiction of the public body*." *Id*. (emphasis added). In addition, A.R.S. § 9-500.14 prohibited a "city or town" from allowing "use" of "its resources, including the use . . . of . . . facilities, . . . equipment, materials, buildings or any other thing of value of the city or town, for the purpose of influencing the outcomes of elections," which by definition included "supporting or opposing a ballot measure." Existing Arizona Attorney General Opinions confirmed that the foregoing prohibition applied with equal force to "measures that have not yet qualified for the ballot as well as measures that have qualified for the ballot." Ariz. Op. Atty. Gen. No. I00-020 (Sept. 11, 2000).

- 5 –

interrupting, and arguing with the Mayor to the point where the Mayor asked Mr. Stuart to desist multiple times, and then when Mr. Stuart repeatedly refused, the Mayor declared Mr. Stuart to be disrupting the meeting. Just as in *Norse*, the undisputed facts show that Officers Glenn and Cleary were confronted with an individual who had clearly violated the applicable rules of decorum, and were required by General Order 2014 to preserve order at the meeting. Under these "particular circumstances," far from informing Officers Glenn and Cleary that removing Mr. Stuart from the podium violated Mr. Stuart's "clearly established" rights, *Norse* instructed Officers Glenn and Cleary that their conduct was manifestly appropriate.

Similarly, in *Acosta*, officers removed the plaintiff from a city council meeting while he was at the podium because a local ordinance precluded those addressing the council from engaging in "insolent" behavior, and the Mayor had determined that the Plaintiff had violated that ordinance. The Ninth Circuit determined that the officers were entitled to qualified immunity *even though* the court determined that the subject ordinance that guided the officers' behavior was unconstitutionally overbroad. 718 F.3d at 824 ("In the present case, qualified immunity still protects the officers even though we find the statute upon which they relied facially unconstitutional.").[5] Far from constituting authority that Officers Glenn and Cleary should have believed prohibited their conduct, the *Acosta* court observed that Ninth Circuit "precedent had previously *upheld restrictions on speech* at city council meetings where the speech was actually disruptive" and that "this remains the law." *Id.* (citing *City of Norwalk*, 900 F.2d. at 1425, *Kindt v. Santa Monica Rent Control Bd*, 67 F.3d 266, 270 (9th Cir. 1995)).

Mr. Stuart also cites *Beck v. City of Oakland*, 527 F.3d 853 (9th Cir. 2008) and *Velasquez v. City of Long Beach*, 793 F.3d 1010, 1020 (9th Cir. 2015), but those cases have nothing to do with public meetings; instead, they pertain to the First Amendment right to

---

[5] In contrast, the Arizona Court of Appeals **upheld** the superior court's "specific[] finding [that] Code § 19-13 [was] constitutional as drafted and applied." *Stuart*, 2021 WL 5571772, at *1.

- 6 –

verbally disapprove of an officer's conduct, and the unsurprising proposition that an officer cannot effectuate an arrest "for personal motives, particularly in response to real or perceived slights to their dignity." *Beck*, 527 F.3d at 871. Here however, Mr. Stuart has not alleged that Officers Glenn and Cleary acted based upon "personal motives" or "perceived slights." Nor does Mr. Stuart assert that Officers Glenn and Cleary, themselves, had any "retaliatory motive"—indeed, there is no evidence either officer cared one bit what Mr. Stuart was trying to talk about.[6]

Mr. Stuart also urges that the *Epona, LLC v. County of Ventura*, 876 F.3d 1214 (9th Cir. 2017) constituted a "clearly established" legal authority that should have guided Officers Glenn and Cleary on February 7, 2017. However, *Epona* did not exist on February 7, 2017—it was not decided until December 2017. *Id*. By dint of physics, *Epona* could not have guided the Officers' decision-making. In any event, *Epona* had nothing to do with a council meeting. Instead, *Epona* dealt with a constitutional challenge to the counties' "non-coastal zoning ordinance"—particularly, the denial of a permit application. 876 F.3d at 1218.

Finally, Mr. Stuart devotes a significant amount of real estate to his "specific intent crime" theory as a basis to deny qualified immunity to Officers Glenn and Cleary. (Doc. 298 at 12-14). However, Arizona does "not distinguish between general and specific intent crimes." *State v. Brown,* 204 Ariz. 405, 410, ¶ 19 (App. 2003). Thus, Mr. Stuart's argument is predicated on a misapplication of Arizona law. And, in any event, Mr. Stuart refused to leave the podium and told Officer Cleary he would need to be arrested: it is difficult to identify a more specific intent possessed by Mr. Stuart. (Doc. 298-14 at 92:4–18).

---

[6] Similarly inapplicable are *Hartman v. Moore*, 547 U.S. 250 (2006) and *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012), which Mr. Stuart appears to argue apply to all defendants based on the theory that all of the defendants engaged in his "arrest." (Doc. 298 at 17). However, Mr. Stuart has adduced no admissible evidence that Mayor Lane, Bruce Washburn, or Luis Santaella were involved in—or even knew of—Mr. Stuart's arrest until after it occurred. In any event, *Lacey* and *Hartman* do not apply to the "particular circumstances" of this case.

**d)** **Mayor Lane**. Mayor Lane was, by definition, the "Presiding Officer" at the February 7, 2017 City Council Meeting. (Doc. 251-9, at 6). As the Presiding Officer, Mayor Lane was *required* to "conduct the proceedings of all meetings of the Council in accordance with" the Council Rules of Procedure. (*Id*.). He was further *required* to "preserve decorum and decide all questions of order, subject to appeal to the Council." (*Id*. at 12).[7] The record amply reveals (*see* Doc 251-3 at 2-3)—and the Arizona courts have already determined—that Mr. Stuart abjectly breached all rules of decorum during the February 7, 2017 Council Meeting. *Stuart,* LC2020-000239-001 DT, *4-7.

Mr. Stuart has failed to cite any authority that existed as of February 7, 2017 which would have led Mayor Lane to reasonably conclude that fulfilling his mandated role as Presiding Officer violated any clearly established rights held by Mr. Stuart. Instead, Mr. Stuart repeatedly cites several cases for the broad proposition that his right to be free from "viewpoint discrimination" was "clearly established." (Doc. 298 at 14-16).[8] Two fundamental problems undermine Mr. Stuart's reliance on such authority. First, the Arizona courts have already conclusively established—and the record before the Court confirms—that Mr. Stuart was not prohibited from expressing a "viewpoint." Indeed, the superior court has already determined that "the refusal to allow Stuart to urge support . . . was both reasonable and

---

[7] Pursuant to § 10.5 of the Council Rules of Procedure, Mr. Stuart was also *required* to "observe the same rules of order and decorum applicable to members of the Council and staff." (Doc 251-9 at 12).

[8] Two of the cases cited by Mr. Stuart are outside the Ninth Circuit. Therefore, it is dubious that such cases constituted binding authority of which the Mayor should have been aware. In any event, they are wholly distinguishable. In *Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017), it was undisputed that the plaintiff "was speaking on an approved topic" when he was ejected from the meeting. *Id*. Not so here. Moreover, it cannot be disputed that Mayor Lane **repeatedly invited** Mr. Stuart to speak on topics within the jurisdiction of the Council and which did not constitute electioneering, but Mr. Stuart repeatedly refused. *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) is even farther afield. There, the "President" of the City Council ejected *another council member* from a public meeting who "expressed at length his strong objections to the budget." *Id*. at 400. Simply put, *Monteiro* is entirely dissimilar from this case, and cannot be deemed to have the involved the "particular circumstances" Mayor Lane "confronted" on February 7, 2017. *Wesby*, 583 U.S. at 63.

- 8 –

viewpoint-neutral." *Stuart,* LC2020-000239-001 DT, *11. Instead, Mr. Stuart attempted to "highjack the meeting by electioneering in violation of reasonable time, place, and manner restrictions." *Id.* at *4, 7. Mayor Lane repeatedly invited Mr. Stuart to express any "viewpoint" he wished. On this point, the state court noted: "[i]t should be remembered that, at the council meeting, the only subject about which Stuart was denied an opportunity to speak was support for his election initiative. Once at the meeting, Stuart chose only to try debating Lane about his right to speak in support of that initiative and, despite being allowed to speak on other subjects, effectively chose not to attempt doing so before he was, in effect, ruled out of order." (Archived Video of Scottsdale Council Meeting https://scottsdale.granicus.com/player/clip/7853?view_id=106&redirect=true&h=4ac9d6393cb0f0e5e187305654cdd222 at 22:30 through 26:05). *Stuart,* LC2020-000239 DT at *8 n.9.

Mr. Stuart cites only two Ninth Circuit cases involving meetings of public bodies: *Norse* and *Acosta*, but those two cases did not involve the "particular circumstances" Mayor Lane "confronted" on February 7, 2017. *Wesby*, 583 U.S. at 63. Here, Mayor Lane simply reminded Mr. Stuart that **Arizona law** prohibited **any** speaker either "for or against" a ballot measure from using City resources to advocate for such measure. *Stuart,* LC2020-000239 DT at *12. Neither *Norse* nor *Acosta* deal with such circumstance at all. Those cases neither hold nor suggest that it is improper for the Presiding Officer of a council meeting to attempt to ensure that state law is followed, even if that means that the Presiding Officer must remind speakers of the proscriptions contained in state law. Nor did *Norse* or *Acosta* stand for the proposition that the Presiding Officer should know that it was constitutionally impermissible to prevent a speaker from "hijacking" a Council meeting and permit that speaker to engage in unrelenting belligerence.

To the contrary, it is clearly established that "the Council does not violate the first amendment when it restricts public speakers to the subject at hand." *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). It was further "clearly established" that disruption in a

1  meeting may take many forms, "by speaking too long, by being unduly repetitious, or by
2  extended discussion of irrelevancies" in a manner that keeps the meeting from operating. *Id*.
3  at 1426. Finally, it was "clearly established" on February 7, 2017 that when a speaker is
4  disruptive, the presiding officer of the meeting does not violate the First Amendment by
5  requiring the speaker to desist. *Id*.; *see also Kindt*, 67 F.3d 271–72. Because Mr. Stuart has
6  failed to demonstrate the existence of binding authority sufficiently particularized to the facts
7  of this case which put each Defendant on fair notice that their conduct violated Mr. Stuart's
8  "clearly established" federal rights, summary judgment is mandated. *Wesby*, 583 U.S. at 63.

### 2. Plaintiff has not met his evidentiary burden.

Even if the Court were inclined to look beyond the legal deficiencies in this case, although it need not, Mr. Stuart has failed to carry his evidentiary burden. It is axiomatic that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence presented by the parties must be admissible," and "[c]onclusory, speculative testimony . . . is insufficient to raise genuine issues of fact and defeat summary judgment." *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 320 (C.D. Cal. 2004).

As an initial point, this Court's standard scheduling order required Plaintiff to "include a pin citation to the specific page(s) proving" the facts asserted by the Plaintiff to be true. (Doc. 182 at ¶ 7). The Court also expressly prohibited Plaintiff from "attaching exhibits of deposition testimony, trial testimony, and city council meeting transcripts in full instead of relevant excerpts." (Doc. 255 at 2). Mr. Stuart complied with neither mandate. Plaintiff's failure is fatal because he was required "to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).

There are dozens of instances where Mr. Stuart makes a proclamation purported to be supported by citations to the record, but then a review of the record reveals not just a lack of

support, but the absence of any tangential relation to the assertion made by Mr. Stuart. And, Mr. Stuart attached full deposition transcripts rather than relevant excerpts, further impairing the ability of the Court or Defendants to identify the evidence Mr. Stuart purports to rely on.

      **a)**      **Bruce Washburn**. Mr. Stuart asserts that Mr. Washburn "contacted Santaella about the [January 30th] letter and instructed him to tell police that Stuart was prohibited from speaking," and cites page 32 of Mr. Santaella's deposition[9] (Doc. 298-12) as purportedly "proving" that asserted fact. (Doc. 298 at 19). However, when one reviews page 32 of Mr. Santaella's deposition, Mr. Washburn *is not even mentioned*. There is certainly no reference to any "instruction" or "prohibition."

Along those same lines, Mr. Stuart asserts that Mr. Washburn "told Lane that he could prevent Stuart from speaking" and cites pages 78 and 79 of Mr. Washburn's deposition (Doc. 298-11) to support this assertion. Yet, pages 78 and 79 do not even include a reference to Mayor Lane. Instead, on those pages, Mr. Stuart asked Mr. Washburn questions about a statute and the difference between the "Attorney General and the County Attorney."

Mr. Stuart also claims that Mr. Washburn "refused to explain" the factual basis for Paragraph 4 of his Declaration, and cites page 226 of Mr. Washburn's deposition as alleged proof. (Doc. 298 at 6). However, on page 226, Mr. Washburn provided the precise basis for Paragraph 4 of his Declaration: "my memory is that you had stated that you intended to give the ballot initiative update repeatedly, and that the ballot initiative update you had solicited people to sign the petition. That's my memory." (Doc. 298-11 at 226:2-6).

Nor did Mr. Washburn testify (as claimed in the Response) that he "deliberately refused to follow Arizona law." (Doc. 298 at 6). Those words exist nowhere on the pages cited by Mr. Stuart. (Doc. 298-11 at 79:8–16). And Mr. Washburn did not "admit that Stuart's proposed speech was within the jurisdiction of the City Council." (Doc. 298 at 6–7). The

---

[9] During depositions, Plaintiff refused to agree that a "form" objection would be sufficient to preserve all evidentiary objections. (Doc. 298-15 at 25:2–21). Thus, a number of Defendants' deposition objections were full evidentiary objections out of an abundance of caution.

- 11 –

section of Mr. Washburn's deposition cited by Mr. Stuart (pp. 193 and 194) do not even mention any "proposed speech." Instead, the questions and answers on the cited pages refer to hypothetical "initiatives" and "charter amendments."

Mr. Stuart's most profound misstatement of the record involves his reliance on Exhibit T—a collection of *redacted* emails. Mr. Stuart cites Exhibit T to support his assertion that "Washburn contacted several people, including high-level police, and made them aware of the letter prior to February 7, 2017." (Doc. 298 at 19.)  Mr. Stuart goes on to assert that "Washburn contacted Santaella about Stuart's plan to speak again on February 7, 2017, and instructed Santaella to prevent Stuart from speaking." (*Id*.). However, Exhibit T does not contain ***a single word*** supporting Mr. Stuart's story. Exhibit T is a redacted email thread; the only unredacted portion is Mr. Stuart's February 7, 2017 email to Mr. Washburn. The Court has determined that the remainder of Exhibit T is protected by the attorney-client privilege (Doc. 294), and Mr. Stuart's confabulation is entirely unfounded. Mr. Stuart's mistaken belief that jury would be permitted to draw a negative inference based upon the mere existence of attorney-client privileged email communications is contrary to reason and law. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) ("[C]ourts have declined to impose adverse inferences on invocation of the attorney-client privilege"). Thus, every single purported "fact" Mr. Stuart "draws" from Exhibit T is nothing more than the product of his imagination and rank speculation.

Mr. Stuart's attempt to create a question of fact through the citation to an ***unsigned*** declaration of John Washington (Doc. 298 at 7) regarding Mr. Washburn's conversations with police officers is both cynical and ineffectual. Although Mr. Stuart apparently *wishes* that Mr. Washington would testify consistent with the declaration Mr. Stuart prepared, Mr. Washington ***did not sign*** the declaration proffered by Mr. Stuart. (*See* Doc. 298-16 at 7). Mr.

Washington's unsigned and unsworn declaration is not competent evidence by any measure and cannot create a disputed issue of material fact.[10]

      **b)**    **Luis Santaella.** As with Mr. Washburn, Plaintiff has entirely manufactured the purported testimony of Luis Santaella. For instance, Mr. Stuart claims that Mr. Santaella "admitted that he contacted Cleary about Stuart's speech" and cites pages 33, 34, 39, and 40 of Mr. Santaella's deposition (Doc. 298-12) to support his claim. (Doc. 298 at 7). However, Mr. Santaella admitted no such thing. On pages 33 and 34 of Mr. Santaella's deposition, he was not even asked questions about his "contact" with Officer Cleary; he was instead asked questions about "A.R.S. 9-500.14" and his understanding of statutory definitions. (Doc. 298-12 at 33:4-34:25, 39:2-40:4).

      **c)**    **Officer Cleary.** Plaintiff's attempt to create an issue of triable of fact with respect to Officer Cleary relies similarly on the perpetuation of a false narrative unsupported by the "evidence" Mr. Stuart cites. For instance, Mr. Stuart claims that Officer Cleary admitted he was "seeking to stop Stuart from speaking on February 7." (Doc. 298 at 9). To support this absurd proposition Mr. Stuart cites pages 17 and 18 of Mr. Cleary's deposition (Doc 298-14). However, Mr. Cleary *actually testified*: "I have no concern or care what you say at City Council meetings ever." (Doc 298-14 at 18:3-7). In fact, when asked if it was Officer Cleary's "understanding" that "updating the city on the progress" of a valid initiative was "illegal," Mr. Cleary emphatically answered "no." (*Id*. 19:16-20:2). Similarly false is Mr. Stuart's claim that Officer "Cleary admitted at deposition that he arrested Stuart based on a civil dispute about free speech." (Doc. 298 at 9). To be sure, the phrase "civil dispute" does not exists in the Cleary deposition *at all*—and failure to obey a police officer is unquestionably a criminal offense. Furthermore, Officer Cleary explained why Mr. Stuart was actually arrested: "the Mayor told you to step away from the podium more than once. I

---

[10] Even if Mr. Washington had signed his declaration, testimony regarding sporadic instances of conduct he observed would not be admissible to prove the Mayor's conduct in conformity with those specific instances pursuant to Rule 404(b)(1) of the Federal Rules of Evidence.

- 13 –

told you to step away from the podium more than once, and you were arrested subsequent to those orders." (Doc. 298-14 at 85:7-85:10.) Indeed, as Officer Cleary revealed, Mr. Stuart insisted that he "had to be arrested" to be forced to cede the podium. (*Id*. 86:11-86:16.)

      **d)**    **Officer Glenn**. Mr. Stuart cites pages 9, 17, 18, 22, and 123 of the interview transcript of Officer Glenn (Doc. 298-9) to support the flawed assertion that "Santaella told them (Officers Glenn and Cleary) that Stuart was prohibited from speaking about the SOP at public comment." (Doc. 298 at 7.) However, Mr. Santaella's name **does not even appear a single time** on pages 9, 17, 18, or 22 of that transcript. And, while Mr. Santaella *is* mentioned on page 123, there is not a single word describing the contents of any claimed communication regarding Mr. Stuart or "speaking about the SOP at public comment." (Doc 298-9 at 123:1–25). Rather, the testimony provided by Mr. Stuart reveals that Officer Glenn directly rebutted Mr. Stuart's skewed proposition:

> Q:    So on January 30, Luis Santaella contacted you to say hey, we don't want Mark Stuart to speak at open public comment; is that correct?
>
> A:    *That's not correct*.

(Doc. 298-9 at 20:16-20:20 (emphasis added).)

      **e)**    **Mayor Lane**. By now, the Court should sense a pattern, and virtually every "fact" Mr. Stuart asserts with respect to Mayor Lane has no evidentiary support. Mr. Stuart claims that "Defendant Lane contacted Washburn asked him to find a way to silence Stuart's speech about the SOP at public comment," and cites pages 8, 12, 19, 20-22, and 24 of Mayor Lane's testimony from Mr. Stuart's criminal trial (Doc. 298-5) as purported support. (Doc. 298 at 2). However, Mr. Washburn's name *does not even appear* on pages 8, 12, 19, and 21. Mr. Washburn's name (or, at least, the role of "parliamentarian") does appear on pages 20, 22, and 24, but his name arises only in connection with "concerns" the Mayor possessed and a letter that Mr. Washburn ***wrote to Mr. Stuart***—there is no reference at all to "find[ing] a way

- 14 –

to silence" Mr. Stuart. (Doc. 298-5 at 20:1-20:9; 22:4-22:17).[11] Indeed, Officer Cleary categorically refuted the notion that Mayor Lane told him that Mr. Stuart's speech would not be permitted, testifying, "[t]hat's never been said anywhere ever." (Doc. 298-14 at 126:25–127:12).

Mr. Stuart claims that Mayor Lane "admitted" on page 63 of his deposition "that [paragraph] five [of his Declaration] was false." (Doc. 298 at 6:18). However, on pages 63 and 64 of his deposition, Mayor Lane was not even asked about paragraph 5 of this Declaration. Instead, he was asked to admit that "paragraph 7 is false," to which he had a one-word answer: "no." (Doc. 298-13 at 63:6-63:10).

Mr. Stuart has not confined himself to misstating the contents of transcripts. He also misstates (or creates out of whole cloth) the content of other documents on which he purports to rely. For example, Mr. Stuart claims that "on February 7, 2017, Washburn and Lane invented a jurisdictional speech requirement for public comment," and cites Response Exhibits B and V as purported support for this proposition. (Doc. 298 at 4). But Exhibits B and V do not support Mr. Stuart's claim at all. Exhibit V is an agenda of January 24, 2017 meeting and contains nothing supporting the assertion of an "invention" of a jurisdictional requirement. Indeed, the Arizona Legislature actually imposed a jurisdictional requirement on the ambit of the call to the public. *See* A.R.S. §38-431.01 (I) (formally subsection H). And, Exhibit B is five pages of correspondence, none of which support Mr. Stuart's construct.

---

[11] Mr. Stuart also cites page 41 of the criminal trial testimony (Doc. 298-10) of Robert Littlefield (who did not serve in 2017) in an attempt to demonstrate that "Lane did not want to hear Stuart's views." (Doc. 298 at 14). But Littlefield *cannot* testify about the state of mind of another person pursuant to Rule 602 of the Federal Rules of Evidence. *See*, *e.g.*, *Combs v. Cordish Co.*, No. 14-0227, 2018 WL 1464033, at *12 (W.D. Mo. Mar. 23, 2018). The transcript reveals that Mr. Littlefield was asked precisely about his "belief" about what the Mayor purportedly "didn't like." (Doc. 298-10 at 42). His testimony is patently inadmissible, and therefore cannot create a triable issue of fact. *Cambridge Elecs. Corp.*, 227 F.R.D. at 320.

**CONCLUSION**

Plaintiff has not met his legal or evidentiary burden to avoid the application of qualified immunity. For all of the reasons stated above, in their Motion (Doc. 251) and in their Supplement (Doc. 282), and reply thereto, the Court should determine that the Individual Defendants are entitled to qualified immunity and enter summary judgment in their favor.

RESPECTFULLY SUBMITTED this 1st day of March, 2024.

DICKINSON WRIGHT, PLLC

By: */s/ Scot L. Claus*
    Scot L. Claus
    Vail C. Cloar
    Holly M. Zoe
    1850 N. Central Avenue, Suite 1400
    Phoenix, Arizona 85004
    *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Sheila Rath*

4890-4012-3559 v5 [53387-7]