**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark E Stuart, | No. CV-17-01848-PHX-DJH (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Before the Court is Plaintiff Mark Stuart's ("Plaintiff") Motion to Retax Costs. (Doc. 334). Plaintiff asks this Court to deny Defendants their taxable costs. (*Id.*) He argues that all the factors for refusal of granting taxable costs weigh in his favor. (*Id.*) Previously, this Court found that Plaintiff was liable to Defendants for taxable costs of $7,551.15. (Doc. 333 at 1). The City of Scottsdale and other Defendants[1] (collectively knowns as "Defendants") have filed a Response in opposition to the motion. (Doc. 335). The Court, for reasons set out below, denies Plaintiff's Motion to Retax Costs and finds in favor of Defendants.

## I.    Background[2]

The course of events kicked off when Plaintiff started the Save Our Preserve

---

[1] The other Defendants include former Mayor of Scottsdale Jim Lane, former Scottsdale City Attorney Bruce Washburn, Scottsdale Assistant City Attorney Luis Santaella, Scottsdale Police Officer Tom Cleary, Scottsdale Police Officer Jason Glenn, and the City of Scottsdale.

[2] Though the parties are well aware of the underlying facts, and the Court will not repeat them in their entirety, a summary of them is necessary for context of this Motion and Order.

("SOP") ballot initiative to advocate against the construction of the Desert Discovery Center ("DDC"). (Doc. 5 at 5–13). Plaintiff spoke out against the City of Scottsdale's construction of the DDC and recruited volunteers for his SOP ballot initiative at a city council meeting on January 17, 2017. (Doc. 298 at 2). Plaintiff also petitioned for signatures and votes at the January 17th meeting. (*Id.*) He then proceeded to announce his intent to initiate an investigation into the misuse of city funds and to promote the building of the DDC as an election issue. (*Id.*) The Plaintiff was warned that his actions at these city council meetings amounted to influencing the outcome of an election, something strictly prohibited by A.R.S. § 9-500.14(A). (Doc. 298-1 at 3 (quoting A.R.S. § 9-500.14(A)). Plaintiff's conduct also fell within the ambit of A.R.S. § 38-431.01(I), otherwise known as the Open Meeting Law.[3] The City of Scottsdale's attorney explained to the Plaintiff that because the SOP was an election issue, the city council meetings were not a proper forum for Plaintiff to discuss the SOP or to elicit signatures and support for the SOP. (Doc. 298-1 at 3). The Plaintiff was encouraged, however, to discuss other topics that were within the city council's purview and jurisdiction at these meetings. (*Id.*) Taking issue with not being allowed to present about the SOP at city council meetings, Plaintiff refused to comply or take heed of the statutes governing which topics can be addressed during the meetings. (*Id.*) Intending to not comply with the rules during the February 17, 2017, meeting, Plaintiff emailed a copy of his SOP presentation to Mayor Lane and the City of Scottsdale's attorney. (Doc. 298-2 at 5–21). When Plaintiff's presentation began at the meeting, Mayor Lane reminded Plaintiff that his comments were brushing up against the confines of the Open Meeting Law and A.R.S. § 9-500.14(A). *See* Archived Video of February 7, 2017, City Council Meeting, at

---

[3] A public body may make an open call to the public during a public meeting, subject to reasonable time, place and manner restrictions, to allow individuals to address the public body on any issue within the jurisdiction of the public body. At the conclusion of an open call to the public, individual members of the public body may respond to criticism made by those who have addressed the public body, may ask staff to review a matter or may ask that a matter be put on a future agenda. However, members of the public body shall not discuss or take legal action on matters raised during an open call to the public unless the matters are properly noticed for discussion and legal action. A.R.S. § 38-431.01(I).

23:00–23:30 ("February Video").[4]  Ignoring Mayor Lane's comments and warning, Plaintiff proceeded to give his presentation.  (*Id.*)  Two officers present at the meeting for security purposes told Plaintiff that if he did not sit down, he would be arrested for trespassing.  (Doc. 251-2 at 7).  Because Plaintiff paid no attention to this instruction, he was placed under arrest and escorted out of the building.  (*Id.* at 7, 8).  Plaintiff was charged with criminal trespass in the second degree under A.R.S. § 13-1503(A) and failure to obey a police officer under Scottsdale City Code ("S.C.C") § 19-13.[5]  (Doc. 251-2 at 2–9).  After this ordeal, Plaintiff brought a suit against Defendants in June of 2017.  (Doc. 1).

This Court found in favor of Defendants and dismissed with prejudice Plaintiff's First Amended Complaint ("FAC") alleging nineteen Counts.[6]  (Doc. 5; Doc. 163; Doc. 164).  An appeal filed by the Plaintiff followed and the Ninth Circuit affirmed this Court on all Counts except Counts Two and Nine.  (Doc. 170).  Count Two was a First Amendment interference and retaliation claim against the Defendants and brought in relation to the Plaintiff's arrest at the February 17th meeting.  (Doc. 5 at ¶¶ 90–95).  Count Nine was a *Monell* claim arising under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).  Defendants eventually moved for summary judgment against Plaintiff on Counts Two and Four.  (Doc. 322). Defendants argued they were entitled to qualified immunity for Count Two and that claim preclusion prevented this

---

[4] *See* City of Scottsdale City Council Meeting Information and Video Network at https://ww2.scottsdaleaz.gov/scottsdale-video-network/council-video-archives/2017-archives (last visited March 6, 2025).

[5] A.R.S. § 13-1503(A) states: "A.  A person commits criminal trespass in the second degree by knowingly entering or remaining unlawfully in or on any nonresidential structure or in any fenced commercial yard.  B. Criminal trespass in the second degree is a class 2 misdemeanor."

[6] The following encompasses the entirety of the nineteen-count complaint: 42 U.S.C. § 1983—unlawful seizure; 42 U.S.C. § 1983—unlawful arrest; 42 U.S.C. § 1983—excessive force; 42 U.S.C. § 1983—prior restraints on free speech; 42 U.S.C. § 1983—conspiracy to violate constitutional rights; 42 U.S.C. § 1983—violation of Fifth and Fourteenth Amendment rights; 42 U.S.C. § 1983—discriminatory enforcement; 42 U.S.C. § 1983—challenging the unconstitutionality of Council Rule of Procedure 10.5; 42 U.S.C. § 1983—unconstitutional policies; and Counts 11-19 are all under Arizona law.

1    Court from deciding Count Nine.  (*Id.* at 11,12).  This Court agreed with Defendants and

2    granted summary judgment in their favor.  (*Id.* at 42).  Following Defendants' submission

3    of a Bill of Costs (Doc. 326), the Clerk entered Judgment on Taxation of Costs in the

4    amount of $7,551.15.  (Doc. 333).[7]  Plaintiff then filed a Motion to Retax Costs, arguing

5    that the Taxation of Costs Judgment should be modified and Defendants denied their

6    taxable costs under the applicable Ninth Circuit five-factor test.  (Doc. 334); *Escriba v.*

7    *Foster Poultry Farms, Inc.,* 743 F.3d 1236 (9th Cir. 2014).

8    **II.   Legal Standard**

9          Rule 54(d)(1) of the Federal Rule of Civil Procedure provides that "costs—other

10   than attorney[] fees—shall be allowed to the prevailing party." On its face, "the rule

11   creates a presumption in favor of awarding costs to a prevailing party, but vests in the

12   district court discretion to refuse to award costs." *Ass'n of Mexican–American Educ. v.*

13   *State of Cal.*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc).  This discretion, however, is

14   not without limits.  *Id.*  "A district court must 'specify reasons' for its refusal to award

15   costs." *Id.*  Appropriate reasons for denying costs include: (1) the substantial public

16   importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the

17   chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and

18   (5) the economic disparity between the parties.  *Id.* at 592–93.  This is not "an exhaustive

19   list of 'good reasons' for declining to award costs," but rather a starting point for

20   analysis.  *Id.* at 593.  Costs are properly denied when a plaintiff "would be rendered

21   indigent should she be forced to pay" the amount assessed.  *Stanley v. Univ. of S. Cal.*,

22   178 F.3d 1069, 1080 (9th Cir. 1999).

23   / / /

24   / / /

---

25   [7]  Plaintiff has appealed the Court's judgment in favor of Defendants (Docs. 327, 337).
26   The Court nonetheless retains jurisdiction to rule on the Motion to Retax Costs
     (Doc. 334) under Rule 54(d)(1), which will become part of the Court's judgment.  *See*
27   *California Union Ins. Co. v. Am. Diversified Sav. Bank*, 948 F.2d 556, 567 (9th Cir.
     1991) (affirming denial of motion to retax, where the district court clerk taxed costs after
28   a notice of appeal had been filed and noting that "an order fixing costs in the district
     court, while an appeal was pending, 'should be considered an inseparable part' of the
     pending appeal" ).

III.    **Discussion**

      **1.  The substantial public importance of the case**

      The Ninth Circuit has found substantial public importance in cases that carry implications beyond the immediate parties involved. *Ass'n of Mexican–American Educ.*, 231 F.3d at 593. For instance, in *Association of Mexican-American Educators*, plaintiffs raised an issue of substantial public importance because "the action affect[ed] tens of thousands of Californians and the state's public school system as a whole." *Id.* Similarly, in *Escriba*, the court noted evidence suggesting that the plaintiff's claim under the Family and Medical Leave Act was of the type that could "establish the parameters of what constitutes sufficient employee notice" and furthermore "potentially had a much broader application to the workplace." 743 F.3d at 1248 (cleaned up).

      Plaintiff argues that this litigation raised issues of substantial public importance. (Doc. 334 at 3). Mainly, he argues, this case was about the Defendants violating his First Amendment rights during a City Council meeting. (*Id.*) Defendants on the other hand, argue, that this litigation was not about First Amendment issues or anything of importance to the public, but rather, about Plaintiff's personal vendetta against the City of Scottsdale. (Doc. 335 at 2). The Court finds that the first prong does not favor Plaintiff. Although Plaintiff argues that his circulation of the SOP ballot initiative during a public city council meeting is at the core of protected First Amendment speech, the Court finds that is simply not what happened in this instance. (Doc. 334 at 3). Instead, Plaintiff violated Arizona law and was arrested at the city council meeting after ample warning for violating, not one, but two Arizona statutes. *See* A.R.S. § 38-431.01(I); *See* A.R.S. § 9-500.14.[8] Plaintiff, through his actions, was not protecting a vital public right or crusading in favor of the First Amendment, but rather, as the Defendants put it, acting to, "vindicate his own purported injuries following a single City Council meeting." (Doc. 335 at 2).

---

[8] A.R.S. § 9-500.14 states that "[a] city or town shall not spend or use its resources, including the use or expenditure of monies, accounts, credit, facilities, vehicles, postage, telecommunications, computer hardware and software, web pages, personnel, equipment, materials, buildings or any other thing of value of the city or town, for the purpose of influencing the outcomes of elections." A.R.S. § 9-500.14(A).

1    This is not enough for the case to be of substantial public importance. Therefore, this

2    prong does not favor Plaintiff.

3        **2.  The closeness and difficulty of the issues in the case**

4        Courts have found close and difficult issues justifying the denial of costs under a

5    variety of circumstances. For instance, a party may have raised an issue of first

6    impression within a Circuit. *See e.g.*, *Mansourian v. Bd. of Regents of Univ. of*

7    *California at Davis*, 566 F. Supp. 2d 1168, 1172 (E.D. Cal. 2008). A case may be close

8    and difficult because it necessarily turns on a close factual or legal determination. *See*

9    *e.g.*, *Draper v. Rosario*, 836 F.3d 1072, 1088 (9th Cir. 2016); *Escriba*, 743 F.3d at 1248.

10    Surviving summary judgment, though not determinative, is also evidence of a close and

11    difficult issue. *Compare Economus v. City & Cnty. of San Francisco*, No. 18-CV-01071-

12    HSG-DMR, 2019 WL 3293292, at *3 (N.D. Cal. July 5, 2019), report and

13    recommendation adopted, No. 18-CV-01071-HSG, 2019 WL 3290761 (N.D. Cal. July

14    22, 2019) (noting that "[t]he fact that Defendants prevailed at the summary judgment

15    stage does not mean the issues presented were not close or difficult") with *Hamilton v.*

16    *Yavapai Cmty. Coll. Dist.*, No. CV-12-08193-PCT-GMS, 2022 WL 504474, at *2 (D.

17    Ariz. Feb. 18, 2022) (concluding that the "case was far from an easy one" because "[t]he

18    litigation lasted for the better part of a decade, and several of Plaintiff's claims survived

19    motions to dismiss, for judgment on the pleadings, and for summary judgment").

20        Here, Plaintiff's claims did not raise an issue of first impression within the Ninth

21    Circuit. *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270–71 (9th Cir. 1995)

22    (stating that plaintiff was rightfully ejected from public rent control board meeting and

23    that such speech restrictions are reasonable time, manner, place restrictions). Nor did

24    Plaintiff's claims survive summary judgment. (Doc. 322). Plaintiff argues that his First

25    Amendment claims were meritorious and that the extensive amount of discovery

26    conducted by both sides favors his argument. (Doc. 334 at 5, 6). This is simply not the

27    case. Plaintiff's claims were not meritorious and, in fact, flew in the face of law that had

28    existed for twenty years and made clear which conduct was proscribed and which was

1    allowed.  *See* A.R.S. § 9-500.14.  This factor does not favor Plaintiff's position.

2          **3.  The chilling effect on future similar actions**

3          Litigation is not without its risks and "liability for costs is a normal incident of

4    defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).  Yet the Ninth Circuit

5    recognizes a countervailing policy to not unduly discourage "civil rights litigants who are

6    willing to test the boundaries of our laws." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069,

7    1080 (9th Cir. 1999).  Plaintiff's attempts to frame this litigation as tethered in First

8    Amendment civil rights is not well-taken.  He argues that he and others will be prohibited

9    from protecting their free speech rights in the future if he must pay tax costs to

10   Defendant.  (Doc. 334 at 6).  But this argument sidesteps this action's main issue:

11   whether Plaintiff was lawfully arrested.  Plaintiff, no matter how much he frames it

12   otherwise, was arrested for violating Arizona law after being warned not to do so

13   repeatedly.  (Doc. 322 at 5); A.R.S. § 13-1503A.[9]  The officers who arrested him were

14   found by this Court to have done so on probable cause.  (Doc. 322 at 41–42). Further

15   undermining Plaintiff's argument is that while Plaintiff's speech was suppressed, it was

16   done so lawfully.  (Doc. 282 at 3; Doc. 322 at 22–23).  This much was determined by the

17   State Court judgment and was the reason why this Court applied collateral estoppel to

18   prevent Plaintiff from relitigating the First Amendment issue.  (Doc. 282 at 3; Doc. 322 at

19   22–23). The restrictions on Plaintiff's speech were found to be proper time, place, and

20   manner restrictions under the Constitution.  (Doc. 282 at 3).  Unlike Plaintiff's

21   contentions that making him pay tax costs would allow the City of Scottsdale to trample

22   on free speech rights, Plaintiff's free speech rights were never in jeopardy by the

23   enforcement of the constitutional time, place, manner restrictions under which he was

24   arrested.  This prong also does not favor Plaintiff.

25         **4.  The plaintiff's limited financial resources**

26         "Costs are properly denied when a plaintiff 'would be rendered indigent should

27

28   ─────────────────────
     [9]  A.R.S. § 13-1503A provides that "[a] person commits criminal trespass in the second
     degree by knowingly entering or remaining unlawfully in or on any nonresidential
     structure or in any fenced commercial yard." A.R.S. § 13-1503A.

                                          - 7 -

she be forced to pay' the amount assessed." *Escriba*, 743 F.3d at 1248 (quoting *Stanley v. Univ. of S. Cal.*, 179 F.3d 1079, 1080). A plaintiff seeking to avoid paying costs is not required to "provide any evidence of her financial situation, but she does have the burden of demonstrating that [the] general presumption in favor of Defendants' costs does not apply." *Greene v. Buckeye Valley Fire Dep't*, No. CV-11-02351-PHX-NVW, 2013 WL 12160997, at *1 (D. Ariz. July 16, 2013). Furthermore, a plaintiff's mere declaration of financial hardship may be insufficient to carry the burden. *Id.*

Plaintiff alleges that he has no significant savings or a substantial income stream. (Doc. 334 at 7). He says he has been looking for work for quite some time, but due to his advanced age, has not received any offers for work. (*Id.*) Defendants counter these assertions by pointing out that Plaintiff had the financial wherewithal to bankroll this litigation for seven years. (Doc. 335 at 4). The Court understands that Plaintiff's mere declarations are not enough to sway this prong in his favor, but also notes that he is not required to provide evidence of his financial situation. However, he does have to show that paying these tax costs would render him indigent. *Escriba*, 743 F.3d at 1248 (quoting *Stanley v. Univ. of S. Cal.*, 179 F.3d 1079, 1080). Plaintiff owns a home with equity of $20,000 and has the employable skill of being a carpenter. (Doc. 334-1 at 2). Although it might place a financial strain on Plaintiff to pay these costs, it would not meet the standard of strain—being indigent—required under the law. The Court finds that this prong does not favor Plaintiff.

### 5. The economic disparity between the parties

As a general principle, "financial disparity almost always exists between individual plaintiffs litigating against . . . large defendants such as corporations or governments." *Van Horn v. Dhillon*, No. 08-CV-01622-LJO-DLB, 2011 WL 66244, at *4 (E.D. Cal. Jan. 10, 2011). Accordingly, "disparity alone is insufficient to overcome the presumption in favor of awarding costs." *Ayala v. Pac. Mar. Ass'n*, No. C08-0119-TEH, 2011 WL 6217298, at *2 (N.D. Cal. Dec. 14, 2011).

There is without a doubt economic disparity between the Defendants and Plaintiff.

Defendants' assertion that taxpayer dollars were expended to fight this litigation against Plaintiff does not change the outcome or analysis under this prong. (Doc. 335 at 5). It is unfortunate that seven years of litigation ensued after the filing of this suit by Plaintiff, but as Defendants noted in their briefing, there is certainly economic disparity when a government entity is pitted against a non-government entity litigant. (*Id.*) Thus, though this prong favors Plaintiff, not only because the City of Scottsdale is a government entity, but because Plaintiff earns his living mainly as a carpenter actively seeking work and his main asset is his home, it is insufficient to overcome the presumption favoring an award of costs to Defendants. (Doc. 334 at 8; Doc. 334-1 at 2).

**IV.    Conclusion**

Overall, Plaintiff has not shown that this is the type of extraordinary case that warrants Plaintiff being excused from paying tax costs to Defendant. Out of the five, only one factor favors Plaintiff and that is the economic disparity between the parties. *See supra* Section III. 5. That factor alone, especially when economic disparity will always exist between a government entity and a non-government entity litigant, does not warrant excusing Plaintiff from paying tax costs in this case. Therefore, the Court will deny Plaintiff's Motion to Retax Costs.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Retax Costs (Doc. 334) is **DENIED.** The Taxation Judgment (Doc. 33) in the amount of $7,551.15 in taxable costs is affirmed in its entirety.

Dated this 6th day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge